**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 3 1 2023

TAMMY H. DOWNS, CLERK

By:_____
                    DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**BIO GEN, LLC, DRIPPERS VAPE SHOP, LLC,
THE CIGARETTE STORE LLC d/b/a SMOKER
FRIENDLY, and SKY MARKETING
CORPORATION d/b/a HOMETOWN HERO,**                    **PLAINTIFFS**

v.                    Case No. _____4:23-cv-718-BRW_____

**THE STATE OF ARKANSAS; GOVERNOR**                    **DEFENDANTS**
**SARAH HUCKABEE SANDERS,
in her official capacity; ATTORNEY GENERAL
JOHN TIMOTHY GRIFFIN,**                    This case assigned to District Judge _Wilson_
**in his official capacity; TODD MURRAY,**       and to Magistrate Judge ___Ray_____
**SONIA FONTICIELLA, DEVON HOLDER,
MATT DURRETT, JEFF PHILLIPS,
WILL JONES, TERESA HOWELL,
BEN HALE, CONNIE MITCHELL, DAN TURNER,
JANA BRADFORD, FRANK SPAIN, TIM BLAIR,
KYLE HUNTER, DANIEL SHUE, JEFF ROGERS,
DAVID ETHREDGE, TOM TATUM, II,
DREW SMITH, REBECCA REED MCCOY,
MICHELLE C. LAWRENCE, DEBRA BUSCHMAN,
TONY ROGERS, NATHAN SMITH, CAROL CREWS,
KEVIN HOLMES, CHRIS WALTON,
and CHUCK GRAHAM, each in his or her official capacity
as a prosecuting attorney for the State of Arkansas;
ARKANSAS DEPARTMENT OF FINANCE
AND ADMINISTRATION; ARKANSAS
TOBACCO CONTROL BOARD; ARKANSAS
DEPARTMENT OF AGRICULTURE; and
ARKANSAS STATE PLANT BOARD**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Bio Gen, LLC ("Bio Gen"), Drippers Vape Shop, LLC ("Drippers"), The

Cigarette Store LLC d/b/a Smoker Friendly ("Smoker Friendly"), and Sky Marketing

Corporation d/b/a Hometown Hero ("Sky Marketing") (collectively, "Plaintiffs"), by

counsel, for their Complaint against Defendants, The State of Arkansas ("Arkansas"),

Governor Sarah Huckabee Sanders in her official capacity ("Governor Sanders"), Attorney

1

General John Timothy Griffin in his official capacity, Todd Murray, Sonia Fonticiella, Devon Holder, Matt Durrett, Jeff Phillips, Will Jones, Teresa Howell, Ben Hale, Connie Mitchell, Dan Turner, Jana Bradford, Frank Spain, Tim Blair, Kyle Hunter, Daniel Shue, Jeff Rogers, David Ethredge, Tom Tatum, II, Drew Smith, Rebecca Reed McCoy, Michelle C. Lawrence, Debra Buschman, Tony Rogers, Nathan Smith, Carol Crews, Kevin Holmes, Chris Walton, and Chuck Graham, each in his or her official capacity as a prosecuting attorney for the State of Arkansas ("Prosecutors"); Arkansas Department of Finance and Administration, Arkansas Tobacco Control Board, Arkansas Department of Agriculture; and Arkansas State Plant Board (collectively, "Defendants"), state as follows:

### INTRODUCTORY STATEMENTS

1.      This is a lawsuit challenging Act 629 of the 94th General Assembly of Arkansas, which attempts to recriminalize certain hemp-derived cannabinoid products and obstruct the shipment and transportation of the same, in direct conflict with well-established federal laws encouraging the redevelopment of a domestic supply chain of hemp and hemp products in Arkansas and across the country. Act 629 purports to declare an emergency need to prohibit certain products, but instead destroys the ability to cultivate hemp of any kind, creates insurmountable confusion, and goes on to add a sham dysfunctional regulatory framework effective only if and when the initial portion of the law gets enjoined.

2.      The Plaintiffs in this case cultivate, wholesale, distribute, and retail hemp plants and hemp-derived products in and out of Arkansas who, until August 1, 2023, had benefitted for several years from operating within a legal market through a supply chain of thousands of farmers, processors, wholesalers, and retail shops throughout Arkansas

and most of the nation. These Arkansas businesses will suffer immediate, irreparable financial harm, and many will be forced to close and/or lay off employees.

3.    On December 20, 2018, President Donald Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill"). The 2018 Farm Bill established a framework for the domestic supply chain of hemp and hemp products in three important ways. First, it permanently decoupled hemp from marijuana under the Controlled Substances Act and exempted hemp-derived tetrahydrocannabinol (THC) from its definition. Second, it deliberately expanded the definition of "hemp" to include "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 16390(1). Third, it expressly prohibited individual states from interfering with the transportation and shipment of hemp and hemp products through interstate commerce.

4.    In general, as courts throughout the country have affirmed, the only relevant statutory metric in analyzing whether a product is to be considered hemp or marijuana under the 2018 Farm Bill is the concentration of Delta-9 THC on a dry weight basis. If the product has 0.3 percent Delta-9 THC or less on a dry weight basis, then it is hemp. If the product contains more than 0.3 percent Delta-9 THC, it is marijuana.

5.    The 2018 Farm Bill's re-establishment of a domestic supply chain of hemp and hemp products has led to a robust hemp-derived cannabinoid market in Arkansas and across the country. (*See* Act 981 of the 91st General Assembly of Arkansas creating a framework for the research, growth, and sale of industrial hemp in Arkansas; Act 504 of the 92nd General Assembly of Arkansas removing a broad definition of hemp from the

State's controlled substances; 2021 changes opening hemp market for non-research, commercial purposes[1]).

6. The existing hemp-derived cannabinoid market that farmers, small business owners, and consumers have built and relied on over the last five years would be eliminated under Act 629 because the new law impermissibly narrows the definition of hemp to recriminalize the possession, manufacturing, transportation, and shipment of certain popular hemp-derived cannabinoid products. This would lead to thousands of lost jobs around the state and turn farmers, business owners, and consumers – including Plaintiffs – into criminals overnight, despite no change in federal law.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

9. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201, 2202.

10. This action is also brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

## THE PARTIES

11. Bio Gen is an Arkansas limited liability company with its principal place of business located in Fayetteville, Arkansas. Bio Gen is a hemp farm producing crops for

---

[1] https://www.agriculture.arkansas.gov/plant-industries/feed-and-fertilizer-section/hemp-home/industrial-hemp-research-pilot-program-overview/ (last visited July 31, 2023).

itself in addition to providing a variety of hemp flowers and consulting services to other Arkansas farmers.

12.    Drippers is an Arkansas limited liability company with its principal place of business located in Greenbrier, Arkansas. Drippers is a retail store offering, among other things, hemp extract products to Arkansas consumers and businesses.

13.    Smoker Friendly is a Colorado limited liability company registered as an Arkansas foreign limited liability company with its principal place of business located in Boulder, Colorado. Smoker Friendly operates close to 300 retail stores across thirteen states, 58 of which are in Arkansas, offering, among other things, hemp extract products to Arkansas consumers and businesses.

14.    Sky Marketing is a Texas corporation with its principal place of business located in Austin, Texas. Sky Marketing is a distributor of, among other things, hemp products, wholesaling to Arkansas businesses in addition to retailing directly to Arkansas consumers.

15.    The State of Arkansas is named as a Defendant due to the General Assembly's passage of Act 629 and various state actors who implemented, seek to implement, or are authorized under the enactment to implement Act 629.

16.    Governor Sanders is charged with the executive authority of state government for the State of Arkansas, including the administration and enforcement of the laws of Arkansas.  Governor Sanders is sued in her official capacity due to her signing of Act 629 into law and her role as chief executive overseeing law enforcement.

17.    Attorney General John Timothy "Tim" Griffin is charged with enforcing the laws of Arkansas. Attorney General Griffin is sued in his official capacity due to his enforcement responsibilities regarding Act 629.

5

18.    Todd Murray is the Prosecuting Attorney for the First Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

19.    Sonia Fonticiella is the Prosecuting Attorney for the Second Judicial District. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, including Act 629.

20.    Devon Holder is the Prosecuting Attorney for the Third Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

21.    Matt Durrett is the Prosecuting Attorney for the Fourth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

22.    Jeff Phillips is the Prosecuting Attorney for the Fifth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

23.    Will Jones is the Prosecuting Attorney for the Sixth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

24.    Teresa Howell is the Prosecuting Attorney for the Seventh Judicial District. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, including Act 629.

25.    Ben Hale is the Prosecuting Attorney for the Eighth Judicial District - North. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

26.    Connie Mitchell is the Prosecuting Attorney for the Eighth Judicial District – South. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, including Act 629.

27.    Dan Turner is the Prosecuting Attorney for the Ninth Judicial District – East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

28.    Jana Bradford is the Prosecuting Attorney for the Ninth Judicial District – West. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, including Act 629.

29.    Frank Spain is the Prosecuting Attorney for the Tenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

30.    Tim Blair is the Prosecuting Attorney for the Eleventh Judicial District – East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

31.    Kyle Hunter is the Prosecuting Attorney for the Eleventh Judicial District – West. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

32.    Daniel Shue is the Prosecuting Attorney for the Twelfth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

33.    Jeff Rogers is the Prosecuting Attorney for the Thirteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

34.    David Ethredge is the Prosecuting Attorney for the Fourteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

35.    Tom Tatum, II is the Prosecuting Attorney for the Fifteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

36.    Drew Smith is the Prosecuting Attorney for the Sixteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

37.    Rebecca Reed Mccoy is the Prosecuting Attorney for the Seventeenth Judicial District. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, including Act 629.

38.    Michelle C. Lawrence is the Prosecuting Attorney for the Eighteenth Judicial District – East. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

39.    Debra Buschman is the Prosecuting Attorney for the Eighteenth Judicial District – West. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, including Act 629.

40.    Tony Rogers is the Prosecuting Attorney for the Nineteenth Judicial District – East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

41.    Nathan Smith is the Prosecuting Attorney for the Nineteenth Judicial District – East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

42.     Carol Crews is the Prosecuting Attorney for the Twentieth Judicial District. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, including Act 629.

43.     Kevin Holmes is the Prosecuting Attorney for the Twenty-First Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

44.     Chris Walton is the Prosecuting Attorney for the Twenty-Second Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

45.     Chuck Graham is the Prosecuting Attorney for the Twenty-Third Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, including Act 629.

46.     Arkansas Department of Finance and Administration ("DFA") is an agency of the State of Arkansas with oversight and administrative responsibilities over the Arkansas Tobacco Control Board.

47.     Arkansas Tobacco Control Board ("ATCB") is a division of DFA. ATCB is responsible for enforcing various provisions of Act 629.

48.     The Arkansas Department of Agriculture is an agency of the State of Arkansas with oversight and administrative responsibilities over the Arkansas State Plant Board.

49.    The Arkansas State Plant Board is a division of the Arkansas Department of Agriculture. The Arkansas State Plant Board is responsible for enforcing various provisions of Act 629.

50.    On information and belief, Defendants will each exercise their discretion and legal authority to implement and enforce Act 629 when it goes into effect on August 1, 2023.

51.    Plaintiffs intend to seek an emergency temporary restraining order to prevent the enforcement of Act 629 pending the outcome of this litigation.

## FACTS COMMON TO ALL COUNTS

52.    On February 7, 2014, President Barack Obama signed into law the Agricultural Act of 2014, Pub. L. No. 113-79 (the "2014 Farm Bill"). The 2014 Farm Bill provided that, "[n]otwithstanding the Controlled Substances Act . . . or any other Federal law, an institution of higher education . . . or a State department of agriculture may grow or cultivate industrial hemp," provided it is done "for purposes of research conducted under an agricultural pilot program or other agricultural or academic research" and those activities are allowed under the relevant state's laws. 7 U.S.C. § 5940(a).

53.    The 2014 Farm Bill defines "industrial hemp" as the "plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(a)(2).

54.    The 2014 Farm Bill defines an "agricultural pilot program" as a "pilot program to study the growth, cultivation, or marketing of industrial hemp . . . in States that permit the growth or cultivation of industrial hemp under the laws of the state in a manner that[:] ensures that only institutions of higher education and State departments

of agriculture are used to grow or cultivate industrial hemp[;] requires that sites used for growing or cultivating industrial hemp in a State be certified by, and registered with, the State department of agriculture[;] and authorizes State departments of agriculture to promulgate regulations to carry out the pilot program in the States in accordance with the purposes of [Section 7606 of the 2014 Farm Bill]." 7 U.S.C. § 5940(a)(2).

55.    The 2014 Farm Bill made the federal government's intentions clear: hemp with low levels of Delta-9 THC is to be treated as an agricultural commodity once again in the United States.

56.    In response to the 2014 Farm Bill, Arkansas passed Act 981 in 2017 with the intent to move Arkansas "to the forefront of industrial hemp production, development, and commercialization of hemp products . . . ." Act 981 permitted the state to adopt rules to administer an industrial hemp research program and to license persons to grow industrial hemp for research in Arkansas.[2]

57.    On December 20, 2018, President Donald Trump signed into law the 2018 Farm Bill. A copy of the 2018 Farm Bill is attached in pertinent part as **Exhibit 1**.

58.    The 2018 Farm Bill permanently removed hemp and THCs in hemp from the Controlled Substances Act and required the United States Department of Agriculture ("USDA") to be the sole federal regulator of hemp production, leaving no role for the Drug Enforcement Agency ("DEA").

59.    The 2018 Farm Bill expanded the definition of hemp by defining it as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof ***and all***

---

[2]    A    copy    of    House    Bill    1778    can    be    found    at: https://www.arkleg.state.ar.us/Home/FTPDocument?path=%2FACTS%2F2017R%2FP ublic%2FACT981.pdf (last visited July 31, 2023).

***derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not,*** with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1) (emphasis added). Thus, the 2018 Farm Bill's expansion broadly redefined hemp as including all products derived from hemp, so long as the Delta-9 THC concentration is not more than 0.3 percent on a dry weight basis, and it is agnostic on manufacturing processes.

60.     The Conference Report for the 2018 Farm Bill made it clear that Congress intended to preclude a state from adopting a more restrictive definition of hemp: "state and Tribal governments are authorized to put more restrictive parameters on the production of hemp, ***but are not authorized to alter the definition of hemp*** or put in place policies that are less restrictive." Conference Report for Agricultural Improvement Act of 2018, p. 738 (emphasis added). A true and accurate copy of the relevant pages from the Conference Report is attached as **Exhibit 2**.

61.     The 2014 Farm Bill made clear that Congress intended the exploration of a possible market for hemp as an agricultural commodity, and the expanded definition of hemp in the 2018 Farm Bill made clear that Congress intended for the hemp industry to be innovative in exploring, creating and sustaining viable submarkets beyond grain and fiber to incorporate consumable products as well, limited only by the delta-9 THC concentration levels.

62.     The 2018 Farm Bill required the USDA to issue regulations and guidelines for states to implement the relevant hemp portions of the 2018 Farm Bill as well as regulations and guidelines for states that choose not to regulate the production of hemp in their borders. The fact that a farmer could grow hemp under a federal license if a state

chose not to create its own regulatory program demonstrates Congress' resolve to re-establish a domestic supply chain of hemp and hemp products. 7 U.S.C. § 1639r(a)(1)(A).

63.    According to the USDA's Final Rule, "produce" is a common agricultural term that means "[t]o grow hemp plants for market, or for cultivation for market, in the United States." 7 C.F.R. § 990.1.

64.    The Final Rule further demonstrated that the 2018 Farm Bill preserved the authority of individual states to regulate the act of producing hemp if they chose to do so (e.g. set back requirements, performance based sampling), but individual states could not alter the definition of hemp or regulate in a manner that reaches beyond production. In other words, the 2018 Farm Bill permits states to regulate the production, i.e., cultivation, of hemp if they chose to do so, but nothing more.

65.    Significantly, the 2018 Farm Bill expressly prohibits states from blocking the transportation or shipment of hemp and hemp products produced in accordance with the 2018 Farm Bill:

> SEC. 10114. INTERSTATE COMMERCE.
>
> (a) Rule of Construction. Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.
>
> (b) Transportation of Hemp and Hemp Products. No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

66.    This explicit protection for hemp and hemp products in interstate commerce would be rendered meaningless if individual states were permitted to criminalize certain hemp and hemp products and frustrate the overarching goal of the

2014 and 2018 Farm Bills, which is to treat hemp and hemp products like a commodity once again.

67.     The overarching goal of treating hemp and hemp products like a commodity is further illustrated by the USDA specifically adding hemp to the Agricultural Technical Advisory Committee ("ATAC") for Trade in Tobacco, Cotton, and Peanuts.[3] There are a total of six (6) ATACs that advise the Secretary of Agriculture and the U.S. Trade Representative about a variety of agricultural trade matters.

68.     Furthermore, the General Counsel for the USDA has authored a memorandum discussing the prohibition on states restricting the transportation or shipment of hemp, concluding that any state law purporting to do so has been preempted by Congress. A true and accurate copy of the USDA Memorandum is attached as **Exhibit 3**.

69.     In short, the 2018 Farm Bill (1) broadly defined hemp as including all extracts and derivatives whether growing or not, (2) legalized all hemp products with a Delta-9 THC concentration of not more than 0.3 percent on a dry weight basis, (3) is agnostic on the manufacturing processes for finished hemp products, and (4) mandated that no state or Indian tribe could prohibit the transportation or shipment of hemp and hemp products in interstate commerce.

### Arkansas's Act 629 is Unconstitutional

70.     In 2019, in response to the 2018 Farm Bill, Arkansas passed Act 504 which decoupled hemp from marijuana by removing a broad definition of hemp including all

---

[3]     *See*     https://www.federalregister.gov/documents/2023/06/13/2023-12649/amendment-notice-of-intent-for-agricultural-policy-advisory-committee-apac-and-the-related (last visited July 31, 2023).

such hemp containing not more than 0.3 percent of tetrahydrocannabinol on a dry weight basis from the State's Uniform Controlled Substances Act.[4]

71.    Then, in 2021, Arkansas amended its hemp program to remove the requirement that a research plan be provided in order to obtain a hemp license, thus officially opening up a full commercial market.

72.    The hemp-derived cannabinoid market in Arkansas that had operated smoothly for years is now threatened with extinction after Governor Sanders signed Act 629 into law on April 11, 2023.

73.    Although Act 629 properly excluded hemp derived-cannabinoid products from the State's definition of marijuana, it impermissibly narrows the definition of hemp by recriminalizing certain popular hemp-derived cannabinoid products.  In fact, Act 629 goes so far as to recriminalize all hemp products "produced as a result of a synthetic chemical process" – including Delta-8 *and* Delta-9 THC; despite no such "synthetic" distinction permitted under federal law and despite there being no definition for "synthetic" in Arkansas law or Act 629. Act 629 goes even a step further to recriminalize "[a]ny other psychoactive substance derived [from hemp]," which would encompass cannabidiol ("CBD"), which is understood to be "psychoactive" by industry experts (as are caffeine and sugar).

74.    Act 629 further interferes with the interstate transportation and shipment of hemp and hemp products in direct violation of the express language of the 2018 Farm Bill. On its face, if one cannot possess certain hemp and hemp products declared legal

---

[4]    A copy of House Bill 1518 can be found at https://www.arkleg.state.ar.us/Home/FTPDocument?path=%2FACTS%2F2019R%2FP ublic%2FACT504.pdf (last visited July 31, 2023).

under federal law, then one cannot transport or ship it, either. Act 629 attempts, but fails, to cure this defect by inserting the following opaque (and internally conflicting) provisions:

> This section does not prohibit the continuous transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths percent (0.3%) on a dry weight basis, produced in accordance with 7 U.S.C. § 20 16390 et seq.

(*Id.*, Section 7 at 5-64-215(d).)

> This subchapter does not prohibit in any form the continuous transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total delta-9 tetrahydrocannabinol concentration of not more than three-tenths percent (0.3%) on a dry weight basis, ***from one licensed hemp producer in another state to a licensed hemp handler in another state***.

(*Id.*, Section 10 at 20-56-412(d) (emphasis added).)

The latter provision specifies which types of licensees *outside* of Arkansas are permitted to transport through the state, in further direct violation of the 2018 Farm Bill's interstate commerce protections.

75.    Act 629 contains twenty sections. Section 17 of Act 629 explains that "Sections 6-14 of this act shall become effective only upon the certification of the Arkansas Attorney General that the State of Arkansas is currently enjoined from enforcing Sections 2-5 of this Act relating to delta-8 tetrahydrocannabinol and delta-10 tetrahydrocannabinol, but no earlier than August 1, 2023."

76.    The interstate commerce provisions quoted above are in Section 7 and Section 10, meaning they are not currently effective. As a result, no such protection on the

transportation of hemp exists in Act 629, and the interstate commerce of hemp and hemp products would be unduly burdened as employees would have to route around Arkansas due to the ever-present risk of arrest by transporting the hemp products through the state.

77.    Sky Marketing and Smoker Friendly order, transport, and ship hemp-derived cannabinoid products like Delta-8 THC into and through Arkansas, either directly or through third-party distributors. Under Act 629, their employees face criminal liability for transporting and shipping hemp products if they failed to demonstrate the products were "in continuous transportation" and "produced in accordance with 7 U.S.C. § 1639o et seq."

78.    As a result of Act 629, Plaintiffs are in jeopardy of criminal prosecution for selling, possessing, transporting, or shipping certain hemp-derived cannabinoid products if law enforcement personnel act on Act 629, and they are being precluded from selling, transporting, and shipping an agricultural commodity despite controlling and preemptive federal law.

## COUNT I: DECLARATORY JUDGMENT FOR VIOLATION OF THE 2018 FARM BILL

79.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

80.    An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the lawfulness of hemp products.

81.    Act 629 places Plaintiffs in jeopardy of criminal prosecution and precludes Plaintiffs from shipping, transporting, wholesaling, packaging, processing, and retailing hemp extract products deemed legal by federal law.

82.    Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs request a declaration that Act 629 violates the 2018 Farm Bill and is preempted by federal law.

83.    The 2018 Farm Bill legalized all hemp products with a Delta-9 THC concentration of not more than 0.3 percent on a dry weight basis and prohibited states from curtailing the transport and shipment of hemp or hemp products through interstate commerce.

84.    Act 629 violates both of these aspects of the 2018 Farm Bill. It attempts to revise federal law to reclassify certain hemp-derived cannabinoids as illegal controlled substances and interferes with the free flow of interstate transportation and shipment of hemp products.

85.    Act 629 imposes an impermissible narrower definition of hemp than mandated by the federal government in the 2018 Farm Bill, despite Congress's declaration that states are not permitted to modify the definition of hemp, and despite Arkansas's new definition having the effect of banning hemp production entirely. If states were permitted to selectively criminalize parts of the hemp plant, it renders the protections Congress provided to hemp and hemp products in the stream of commerce meaningless.

86.    Moreover, by carving certain hemp-derived cannabinoids out from the definition of hemp, Act 629 attempts to adopt a definition that conflicts with the federal standard, which includes all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a Delta-9 THC concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis (such as Delta-8 THC).

87.    Act 629 runs counter to the plain and unambiguous reading of the 2018 Farm Bill as well as its intent as evidenced by a letter from the then-Chairman of the House Agriculture Committee Congressman David Scott and the then-House Appropriations Subcommittee on Agriculture, Rural Development, Food and Drug Administration, and Related Agencies to the United States Department of Justice and the DEA:

> Congress did not intend the 2018 Farm Bill to criminalize any stage of legal hemp processing, and we are concerned that hemp grown in compliance with a USDA-approved plan could receive undue scrutiny from the DEA as it is being processed into a legal consumer-facing product under this IFR. That is why the 2018 Farm Bill's definition of hemp was broadened from the 2014 Farm Bill's version to include derivatives, extracts and cannabinoids. It was our intent that derivatives, extracts and cannabinoids would be legal if these products were in compliance [with] all other Federal regulations.

A true and accurate copy of Congressmen's Scott and Bishop, Jr.'s letter is attached as **Exhibit 4**.

88.    Act 629 is also in direct conflict with the DEA's own determinations that Delta-8 THC and every other hemp-derived cannabinoid product with no more than 0.3 percent Delta-9 THC on a dry weight basis is considered hemp and ***not*** a controlled substance under federal law.

89.    On June 24, 2021, during a recorded Florida Department of Agriculture and Consumer Services webinar, DEA representative Sean Mitchell stated:

> I also just want to expand beyond delta-8. There's delta-8, there's delta-10, there's all kind of different uh cannabinoids that uh are associated with cannabis sativa l that are kind of out there and making the rounds. So what I want to say, and I'll be very, very deliberate and clear. At this time, I repeat again, at this time, per the

Farm Bill, the only thing uh that is a controlled substance is delta-9 THC greater than 0.3% based on a dry weight basis.[5]

90.    On August 19, 2021, the Alabama Board of Pharmacy requested the control status of Delta-8 THC under the Controlled Substances Act. On September 15, 2021, the DEA concluded that ". . . cannabinoids extracted from the cannabis plant that have a $\Delta$ 9 -THC concentration of not more than 0.3 percent on a dry weight basis meet the definition of 'hemp' and thus are not controlled under the CSA." Furthermore, according to the response, the DEA considers unlawful "synthetic" THC products to be those that are "produced from non-cannabis materials." A true and accurate copy of the DEA's response to the Alabama Board of Pharmacy is attached as **Exhibit 5**.

91.    Furthermore, DEA's official promulgations in the Federal Register, at 21 C.F.R. § 1308.11(31)(ii), declares that: "(ii) Tetrahydrocannabinols does not include any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639o."

92.    In addition, by criminalizing hemp derivatives like Delta-8 THC, Act 629 prohibits the transport of hemp products in and through Arkansas in direct contradiction of Section 10114 of the 2018 Farm Bill.

93.    Federal law preempts Act 629 that is in conflict with the 2018 Farm Bill pursuant to the Supremacy Clause of the Constitution of the United States and conflicts of laws principles. U.S. Const. art. VI, cl. 2.

---

[5] *See Town Hall with USDA and DEA Dated June 29, 2021, available at* https://tinyurl.com/mr2n28hx, at 9:00 minutes (last visited July 31, 2023).

94.     Plaintiffs have been, and will be, harmed by Act 629, as they are unable to transport, manufacture, possess, or sell hemp products that have been declared to be legal under federal law.

## COUNT II: DECLARATORY JUDGMENT FOR VIOLATION OF THE COMMERCE CLAUSE

95.     Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

96.     As explained above, hemp-derived cannabinoids, such as Delta-8 THC, are hemp products declared legal by the 2018 Farm Bill.

97.     Act 629's prohibition on the possession of hemp-derived cannabinoids, and its express prohibition on the transportation of all such hemp products unless from a licensed producer to a licensed handler, is a substantial burden on interstate commerce in violation of the Commerce Clause of the Constitution of the United States as there is no federal license to transport finished hemp products. U.S. Const. art. I, § 8, cl. 3.

98.     Plaintiffs have been, and will be, harmed by Act 629, as they are unable to transport in and through Arkansas hemp-derived cannabinoids products that have been declared legal under federal law.

## COUNT III: REGULATORY TAKING

99.     Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

100.    Perhaps anticipating that Act 629 is unconstitutional, Section 17 recriminalizes certain hemp-derived products by automatically imposing an onerous regulatory scheme if Sections 2-5 are enjoined:

> Sections 6-14 of this act shall become effective only upon the certification of the Arkansas Attorney General that the State of Arkansas is currently enjoined from enforcing Sections 2-5 of this act

relating to delta-8 tetrahydrocannabinol and delta-10 tetrahydrocannabinol, but no earlier than August 1, 2023.

101.    Defendants' intent to chill dissent is clear: if members of the hemp industry are successful in defeating the unconstitutional provisions in Sections 2-5 of Act 629, then Defendants will penalize the industry by enforcing an even more restrictive regulatory scheme found in Sections 6-14.

102.    The problem with Defendants' regulatory scheme, however, is that its provisions are also unconstitutional. The scheme results in an impermissible regulatory taking because it effectively creates a total ban of hemp containing any amount of tetrahydrocannabinol.

103.    Specifically, contingent Section 10 permits the sale of hemp-derived products, but it states that a hemp-derived product "shall **not** be combined with or contain any of the following: . . . any amount of tetrahydrocannabinol." (*Id.*, at p. 9, lns. 10-18 (emphasis added)). This effectively bans all hemp-derived products containing THC, even if the product contains 0.3 percent or less Delta-9 THC as encompassed by the broad definition of hemp under the 2018 Farm Bill. 7 U.S.C. § 1639o(1). For example, popular full spectrum CBD products—long since accepted as legal and highly popular with adult consumers—would be criminalized under this approach.

104.    Act 629's key provisions are preempted by federal law because its emergency nature infringes on Plaintiffs' constitutional rights so as to amount to a regulatory taking under the Constitution of the United States. Plaintiffs have made substantial investments in their businesses based on the established regulatory scheme that existed in Arkansas prior to Act 629. As of August 1, 2023, Plaintiffs' investments, inventory, and entire segments of their businesses will be deemed worthless. Farmers

with plants in the ground awaiting harvest, including BioGen, have no other course of remedy but to bring this lawsuit.

105.    Act 629 infringes upon the investment-backed expectations and industries in which Plaintiffs, and other Arkansas citizens, have built their livelihoods. For this same reason, the regulatory scheme in Act 629 amounts to a deprivation of all, or substantially all, beneficial economic use of Plaintiffs' hemp lines of business in Arkansas.

106.    By way of Act 629's infringement upon Plaintiffs' businesses, it has overly burdened Plaintiffs and taken their property without just compensation.

### COUNT IV: VOID FOR VAGUENESS

107.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

108.    The Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution prohibit criminal enforcement of statutory and regulatory requirements that are unconstitutionally vague and do not give fair warning of their requirements. U.S. Const. Amend. V, XIV.

109.    For instance, contingent Section 6 of Act 629 bans hemp containing any "psychoactive substance," a term which is undefined and overly broad so as to potentially ban any hemp-derived cannabinoid product, including CBD isolate with no THC.

110.    Act 629 is further void for vagueness because "psychoactive substance" is undefined and does not have a known definition in the industry. It is also internally inconsistent because it attempts to permit hemp-derived products containing "delta-9 tetrahydrocannabinol greater than three tenths percent (.3%)" and in the next section precludes "marijuana" under the exact same definition. (*Id.* Section 10 at p. 5-6, lns. 36-17.)

111.    Act 629 fails to give a person of ordinary intelligence fair notice as to what contemplated conduct is forbidden and what is permitted with regard to the possession, transportation, and shipment of the products it seeks to ban. Plaintiffs and the end-users in the stream of commerce will be left to guess at the meaning of the new law. "A law is unconstitutionally vague under due process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited." *Arkansas Tobacco Control Bd. v. Sitton*, 166 S.W.3d 550, 553 (Ark. 2004).

112.    For instance, Sections 6-14 of Act 629 would not become effective unless and until the Attorney General certifies that Sections 2-5 are enjoined. At the same time, Section 18 provides that Section 6, which criminalizes the possession of "a product derived from industrial hemp that was produced as a result of a synthetic chemical process that converted the industrial hemp or a substance contained in the industrial hemp into Delta-8, Delta-9, Delta-6a, 10a, or Delta-10 tetrahydrocannabinol including their respective acetate esters," becomes effective on or after August 1, 2023 for persons who are twenty-one years of age or older. Section 17 and 18 of Act 629 are internally inconsistent, and a person of average intelligence cannot know whether possession, transportation, or shipment of hemp-derived products is subject to criminal sanctions or when Act 629 is even effective.

113.    The confusion only abounds when viewing Sections 6, 17, and 18 in context of Section 5. Section 5 of Act 629 amends Ark. Code Ann. § 5-64-215(a)(2)(B)—a section of the criminal code identifying Schedule VI substances—to specifically exclude THC contained in hemp-derived cannabidiol that is not more than three-tenths of one percent (0.3%) of delta-9 THC in the hemp-derived cannabidiol on a dry weight basis as verified by a nationally accredited laboratory for quality, purity, and accuracy standards that is

not approved by the FDA for marketing as a medication. In other words, Section 5 excludes hemp-derived products from Schedule VI, while Section 6 specifically includes them in Schedule VI. Section 17 makes Section 6 effective only upon a certification by the Attorney General that Sections 2-5 are enjoined, and Section 18 provides that Section 6 becomes effective on August 1, 2023 for adults.

114.    Act 629 exposes Plaintiffs to criminal prosecution, and when and to what extend Act 629 applies to Plaintiffs is difficult for even a well-trained lawyer to understand. As enacted, Act 629 is unconstitutionally vague.

<u>**COUNT V: INJUNCTIVE RELIEF**</u>

115.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

116.    Plaintiffs are likely to succeed on the merits of their challenge to Act 629 given that it openly conflicts with the 2018 Farm Bill and the Supremacy and Commerce Clauses of the Constitution of the United States, constitutes an impermissible regulatory taking, and is void for vagueness in violation of the Due Process Clause of the Fifth and Fourteenth Amendments.

117.    Unless enjoined in its entirety, Act 629 already has, and will continue to, cause harm to Plaintiffs by placing them in jeopardy of criminal prosecution and depriving them the ability to cultivate, wholesale, distribute, and retail hemp plants and hemp-derived products that are declared legal by federal law.

118.    Plaintiffs have no adequate remedy at law and face irreparable harm unless this Court enjoins Act 629 in its entirety as described herein. Plaintiffs' irreparable harm includes rendering their inventory of hemp crops and hemp-derived products utterly

worthless, exposing them to criminal liability, and inhibiting them from transporting or shipping commodities declared legal under the 2018 Farm Bill.

119.    Plaintiffs are likely to succeed on the merits of this action.

120.    The severability clause found in Section 19 of Act 629 does not cure the irreparable harm Plaintiffs will continue to suffer because it is impossible to sever any of its operative provisions in such a manner to comport with federal law. *See Combs v. Glens Falls Ins. Co.*, 237 Ark. 745, 748, 375 S.W.2d 809, 811 (1964).

121.    The balance of harms weighs in favor of Plaintiffs, as the injunction will not harm Defendants; it will simply place Defendants back into compliance with federal law.

122.    An injunction is in the public's interests, as Arkansas is not permitted to ignore federal law or criminalize conduct that has been declared legal under federal law.

123.    Plaintiffs are entitled to a temporary restraining order, later to be made a permanent injunction, with respect to Act 629.

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)    Set this matter for a prompt hearing on Plaintiffs' request for a temporary restraining order;

(b)    Enter judgment in their favor and against Defendants;

(c)    Declare Act 629 void in its entirety and declare all hemp plants and hemp-derived cannabinoid products that comply with the federal definition of hemp, such as Delta-8, as legal under federal law, which preempts Arkansas' effort to recriminalize them through Act 629; and

(d)    Issue a temporary restraining order or preliminary injunction, later to be made permanent, enjoining Defendants (including other persons in concert or participation with them, including but not limited to law enforcement personnel and

prosecutors' offices) from enforcing Act 629 in its entirety and from taking any steps to enforce, criminalize, or prosecute the sale, possession, manufacture, financing, distribution, or transportation of hemp-derived cannabinoids that do not exceed 0.3 percent Delta-9 THC on a dry weight basis;

(e)     Award Plaintiffs their costs and attorneys' fees incurred in bringing this action; and

(f)     Award Plaintiffs all other just and proper relief.

Dated: July 31, 2023

Respectfully submitted,

Abtin Mehdizadegan (2013136)
Allison Scott (2020205)
Joseph Stepina (2020124)
Hall Booth Smith, P.C.
200 River Market Avenue, Suite 500
Little Rock, AR 72201
(501) 214-3499
(501) 604-5566
abtin@hallboothsmith.com
jstepina@hallboothsmith.com
ascott@hallboothsmith.com

- and -

Justin Swanson
Paul Vink
Bose McKinney & Evans, LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5404
(317) 223-0404
jswanson@boselaw.com
pvink@boselaw.com
*Pro hac vice applications forthcoming*

***Attorneys for Plaintiffs***

PUBLIC LAW 115–334—DEC. 20, 2018

# AGRICULTURE IMPROVEMENT ACT OF 2018

★ **(Star Print)**



132 STAT. 4490          PUBLIC LAW 115–334—DEC. 20, 2018

Public Law 115–334
115th Congress

## An Act

Dec. 20, 2018
[H.R. 2]

To provide for the reform and continuation of agricultural and other programs of the Department of Agriculture through fiscal year 2023, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Agriculture
Improvement Act
of 2018.

7 USC 9001 note.

### SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) SHORT TITLE.—This Act may be cited as the "Agriculture Improvement Act of 2018".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Definition of Secretary.

TITLE I—COMMODITIES

Subtitle A—Commodity Policy

Sec. 1101. Definition of effective reference price.
Sec. 1102. Base acres.
Sec. 1103. Payment yields.
Sec. 1104. Payment acres.
Sec. 1105. Producer election.
Sec. 1106. Price loss coverage.
Sec. 1107. Agriculture risk coverage.
Sec. 1108. Repeal of transition assistance for producers of upland cotton.

Subtitle B—Marketing Loans

Sec. 1201. Extensions.
Sec. 1202. Loan rates for nonrecourse marketing assistance loans.
Sec. 1203. Economic adjustment assistance for textile mills.
Sec. 1204. Special competitive provisions for extra long staple cotton.
Sec. 1205. Availability of recourse loans.

Subtitle C—Sugar

Sec. 1301. Sugar policy.

Subtitle D—Dairy Margin Coverage and Other Dairy Related Provisions

Sec. 1401. Dairy margin coverage.
Sec. 1402. Reauthorizations.
Sec. 1403. Class I skim milk price.
Sec. 1404. Dairy product donation.

Subtitle E—Supplemental Agricultural Disaster Assistance

Sec. 1501. Supplemental agricultural disaster assistance.

Subtitle F—Noninsured Crop Assistance

Sec. 1601. Noninsured crop assistance program.

Subtitle G—Administration

Sec. 1701. Regulations.
Sec. 1702. Suspension of permanent price support authority.

PUBLIC LAW 115–334—DEC. 20, 2018      132 STAT. 4491

Sec. 1703. Payment limitations.
Sec. 1704. Adjusted gross income limitations.
Sec. 1705. Farm Service Agency accountability.
Sec. 1706. Implementation.
Sec. 1707. Exemption from certain reporting requirements for certain producers.

TITLE II—CONSERVATION

Subtitle A—Wetland Conservation

Sec. 2101. Wetland conversion.
Sec. 2102. Wetland conservation.
Sec. 2103. Mitigation banking.

Subtitle B—Conservation Reserve Program

Sec. 2201. Conservation reserve.
Sec. 2202. Conservation reserve enhancement program.
Sec. 2203. Farmable wetland program.
Sec. 2204. Pilot programs.
Sec. 2205. Duties of owners and operators.
Sec. 2206. Duties of the Secretary.
Sec. 2207. Payments.
Sec. 2208. Contracts.
Sec. 2209. Eligible land; State law requirements.

Subtitle C—Environmental Quality Incentives Program and Conservation
Stewardship Program

Sec. 2301. Repeal of conservation programs.
Sec. 2302. Purposes of environmental quality incentives program.
Sec. 2303. Definitions under environmental quality incentives program.
Sec. 2304. Establishment and administration of environmental quality incentives
           program.
Sec. 2305. Environmental quality incentives program plan.
Sec. 2306. Limitation on payments under environmental quality incentives pro-
           gram.
Sec. 2307. Conservation innovation grants and payments.
Sec. 2308. Conservation stewardship program.
Sec. 2309. Grassland conservation initiative.

Subtitle D—Other Conservation Programs

Sec. 2401. Watershed protection and flood prevention.
Sec. 2402. Soil and water resources conservation.
Sec. 2403. Emergency conservation program.
Sec. 2404. Conservation of private grazing land.
Sec. 2405. Grassroots source water protection program.
Sec. 2406. Voluntary public access and habitat incentive program.
Sec. 2407. Wildlife management.
Sec. 2408. Feral swine eradication and control pilot program.
Sec. 2409. Report on small wetlands.
Sec. 2410. Sense of Congress relating to increased watershed-based collaboration.

Subtitle E—Funding and Administration

Sec. 2501. Commodity Credit Corporation.
Sec. 2502. Delivery of technical assistance.
Sec. 2503. Administrative requirements for conservation programs.
Sec. 2504. Temporary administration of conservation programs.

Subtitle F—Agricultural Conservation Easement Program

Sec. 2601. Establishment and purposes.
Sec. 2602. Definitions.
Sec. 2603. Agricultural land easements.
Sec. 2604. Wetland reserve easements.
Sec. 2605. Administration.

Subtitle G—Regional Conservation Partnership Program

Sec. 2701. Establishment and purposes.
Sec. 2702. Definitions.
Sec. 2703. Regional conservation partnerships.
Sec. 2704. Assistance to producers.
Sec. 2705. Funding.
Sec. 2706. Administration.

PUBLIC LAW 115–334—DEC. 20, 2018

Sec. 2707. Critical conservation areas.

Subtitle H—Repeals and Technical Amendments

PART I—REPEALS

Sec. 2811. Repeal of Conservation Corridor Demonstration Program.
Sec. 2812. Repeal of cranberry acreage reserve program.
Sec. 2813. Repeal of National Natural Resources Foundation.
Sec. 2814. Repeal of flood risk reduction.
Sec. 2815. Repeal of study of land use for expiring contracts and extension of authority.
Sec. 2816. Repeal of Integrated Farm Management Program Option.
Sec. 2817. Repeal of clarification of definition of agricultural lands.

PART II—TECHNICAL AMENDMENTS

Sec. 2821. Technical amendments.
Sec. 2822. State technical committees.

TITLE III—TRADE

Subtitle A—Food for Peace Act

Sec. 3101. Labeling requirements.
Sec. 3102. Food aid quality assurance.
Sec. 3103. Local sale and barter of commodities.
Sec. 3104. Minimum levels of assistance.
Sec. 3105. Food aid consultative group.
Sec. 3106. Issuance of regulations.
Sec. 3107. Oversight, monitoring, and evaluation.
Sec. 3108. Assistance for stockpiling and rapid transportation, delivery, and distribution of shelf-stable prepackaged foods.
Sec. 3109. Consideration of impact of provision of agricultural commodities and other assistance on local farmers and economy.
Sec. 3110. Allowance for distribution costs.
Sec. 3111. Prepositioning of agricultural commodities.
Sec. 3112. Annual report regarding food aid programs and activities.
Sec. 3113. Deadline for agreements to finance sales or to provide other assistance.
Sec. 3114. Minimum level of nonemergency food assistance.
Sec. 3115. Termination date for micronutrient fortification programs.
Sec. 3116. John Ogonowski and Doug Bereuter Farmer-to-Farmer program.

Subtitle B—Agricultural Trade Act of 1978

Sec. 3201. Agricultural trade promotion and facilitation.

Subtitle C—Other Agricultural Trade Laws

Sec. 3301. Growing American Food Exports.
Sec. 3302. Food for Progress Act of 1985.
Sec. 3303. Bill Emerson Humanitarian Trust Act.
Sec. 3304. Promotion of agricultural exports to emerging markets.
Sec. 3305. Cochran fellowship program.
Sec. 3306. Borlaug International Agricultural Science and Technology Fellowship program.
Sec. 3307. International Agricultural Education Fellowship program.
Sec. 3308. International food security technical assistance.
Sec. 3309. McGovern-Dole International Food for Education and Child Nutrition program.
Sec. 3310. Global Crop Diversity Trust.
Sec. 3311. Local and regional food aid procurement projects.
Sec. 3312. Foreign trade missions.

TITLE IV—NUTRITION

Subtitle A—Supplemental Nutrition Assistance Program

Sec. 4001. Requirements for online acceptance of benefits.
Sec. 4002. Re-evaluation of thrifty food plan.
Sec. 4003. Food distribution program on Indian reservations.
Sec. 4004. Simplified homeless housing costs.
Sec. 4005. Employment and training for supplemental nutrition assistance program.
Sec. 4006. Improvements to electronic benefit transfer system.
Sec. 4007. Review of supplemental nutrition assistance program operations.
Sec. 4008. Retail incentives.

PUBLIC LAW 115–334—DEC. 20, 2018      132 STAT. 4493

Sec. 4009. Required action on data match information.
Sec. 4010. Incentivizing technology modernization.
Sec. 4011. Interstate data matching to prevent multiple issuances.
Sec. 4012. Requirement of live-production environments for certain pilot projects relating to cost sharing for computerization.
Sec. 4013. Quality control improvements.
Sec. 4014. Evaluation of child support enforcement cooperation requirements.
Sec. 4015. Longitudinal data for research.
Sec. 4016. Authorization of appropriations.
Sec. 4017. Assistance for community food projects.
Sec. 4018. Emergency food assistance program.
Sec. 4019. Nutrition education.
Sec. 4020. Retail food store and recipient trafficking.
Sec. 4021. Public-private partnerships.
Sec. 4022. Technical corrections.

Subtitle B—Commodity Distribution Programs

Sec. 4101. Commodity distribution program.
Sec. 4102. Commodity supplemental food program.
Sec. 4103. Distribution of surplus commodities to special nutrition projects.
Sec. 4104. Food donation standards.

Subtitle C—Miscellaneous

Sec. 4201. Seniors farmers' market nutrition program.
Sec. 4202. Purchase of fresh fruits and vegetables for distribution to schools and service institutions.
Sec. 4203. Service of traditional foods in public facilities.
Sec. 4204. Healthy food financing initiative.
Sec. 4205. The Gus Schumacher nutrition incentive program.
Sec. 4206. Micro-grants for food security.
Sec. 4207. Buy American requirements.
Sec. 4208. Healthy fluid milk incentives projects.

TITLE V—CREDIT

Subtitle A—Farm Ownership Loans

Sec. 5101. Modification of the 3-year experience eligibility requirement for farm ownership loans.
Sec. 5102. Conservation loan and loan guarantee program.
Sec. 5103. Limitations on amount of farm ownership loans.
Sec. 5104. Relending program to resolve ownership and succession on farmland.

Subtitle B—Operating Loans

Sec. 5201. Limitations on amount of operating loans.
Sec. 5202. Microloans.
Sec. 5203. Cooperative lending pilot projects.

Subtitle C—Administrative Provisions

Sec. 5301. Beginning farmer and rancher individual development accounts pilot program.
Sec. 5302. Loan authorization levels.
Sec. 5303. Loan fund set-asides.
Sec. 5304. Use of additional funds for direct operating microloans under certain conditions.
Sec. 5305. Equitable relief.
Sec. 5306. Socially disadvantaged farmers and ranchers; qualified beginning farmers and ranchers.
Sec. 5307. Emergency loan eligibility.

Subtitle D—Miscellaneous

Sec. 5401. Technical corrections to the Consolidated Farm and Rural Development Act.
Sec. 5402. State agricultural mediation programs.
Sec. 5403. Compensation of bank directors.
Sec. 5404. Sharing of privileged and confidential information.
Sec. 5405. Facility headquarters.
Sec. 5406. Removal and prohibition authority; industry-wide prohibition.
Sec. 5407. Jurisdiction over institution-affiliated parties.
Sec. 5408. Definition of institution-affiliated party.
Sec. 5409. Prohibition on use of funds.

132 STAT. 4494        PUBLIC LAW 115–334—DEC. 20, 2018

Sec. 5410. Expansion of acreage exception to loan amount limitation.
Sec. 5411. Repeal of obsolete provisions; technical corrections.
Sec. 5412. Corporation as conservator or receiver; certain other powers.
Sec. 5413. Reporting.
Sec. 5414. Study on loan risk.
Sec. 5415. GAO report on ability of the Farm Credit System to meet the agricultural credit needs of Indian tribes and their members.
Sec. 5416. GAO report on credit service to socially disadvantaged farmers and ranchers.

TITLE VI—RURAL DEVELOPMENT

Subtitle A—Improving Health Outcomes in Rural America

Sec. 6101. Combating substance use disorder in rural America; prioritizations.
Sec. 6102. Distance learning and telemedicine.
Sec. 6103. Refinancing of certain rural hospital debt.

Subtitle B—Connecting Rural Americans to High Speed Broadband

Sec. 6201. Access to broadband telecommunications services in rural areas.
Sec. 6202. Expansion of middle mile infrastructure into rural areas.
Sec. 6203. Modifications to the Rural Gigabit Program.
Sec. 6204. Community Connect Grant Program.
Sec. 6205. Outdated broadband systems.
Sec. 6206. Default and deobligation; deferral.
Sec. 6207. Public notice, assessments, and reporting requirements.
Sec. 6208. Environmental reviews.
Sec. 6209. Use of loan proceeds to refinance loans for deployment of broadband service.
Sec. 6210. Smart utility authority for broadband.
Sec. 6211. Refinancing of telephone loans.
Sec. 6212. Federal broadband program coordination.
Sec. 6213. Transition rule.
Sec. 6214. Rural broadband integration working group.

Subtitle C—Miscellaneous

Sec. 6301. Exclusion of certain populations from definition of rural area.
Sec. 6302. Establishment of technical assistance program.
Sec. 6303. Rural energy savings program.
Sec. 6304. Northern Border Regional Commission reauthorization.
Sec. 6305. Definition of rural area for purposes of the Housing Act of 1949.
Sec. 6306. Council on Rural Community Innovation and Economic Development.

Subtitle D—Additional Amendments to the Consolidated Farm and Rural Development Act

Sec. 6401. Strategic economic and community development.
Sec. 6402. Expanding access to credit for rural communities.
Sec. 6403. Water, waste disposal, and wastewater facility grants.
Sec. 6404. Rural water and wastewater technical assistance and training programs.
Sec. 6405. Rural water and wastewater circuit rider program.
Sec. 6406. Tribal college and university essential community facilities.
Sec. 6407. Emergency and imminent community water assistance grant program.
Sec. 6408. Water systems for rural and native villages in Alaska.
Sec. 6409. Rural decentralized water systems.
Sec. 6410. Solid waste management grants.
Sec. 6411. Rural business development grants.
Sec. 6412. Rural cooperative development grants.
Sec. 6413. Locally or regionally produced agricultural food products.
Sec. 6414. Appropriate technology transfer for rural areas program.
Sec. 6415. Rural economic area partnership zones.
Sec. 6416. Intemediary relending program.
Sec. 6417. Access to information to verify income for participants in certain rural housing programs.
Sec. 6418. Providing for additional fees for guaranteed loans under the Consolidated Farm and Rural Development Act.
Sec. 6419. Rural Business-Cooperative Service programs technical assistance and training.
Sec. 6420. National Rural Development Partnership.
Sec. 6421. Grants for NOAA weather radio transmitters.
Sec. 6422. Rural microentrepreneur assistance program.
Sec. 6423. Health care services.
Sec. 6424. Rural innovation stronger economy grant program.

PUBLIC LAW 115–334—DEC. 20, 2018    132 STAT. 4495

Sec. 6425. Delta Regional Authority.
Sec. 6426. Rural business investment program.
Sec. 6427. Rural business investment program.

Subtitle E—Additional Amendments to the Rural Electrification Act of 1936

Sec. 6501. Amendments to section 2 of the Rural Electrification Act of 1936.
Sec. 6502. Loans for telephone service.
Sec. 6503. Cushion of credit payments program.
Sec. 6504. Extension of the rural economic development loan and grant program.
Sec. 6505. Guarantees for bonds and notes issued for electrification or telephone purposes.
Sec. 6506. Expansion of 911 access.
Sec. 6507. Cybersecurity and grid security improvements.

Subtitle F—Program Repeals

Sec. 6601. Elimination of unfunded programs.
Sec. 6602. Repeal of Rural Telephone Bank.
Sec. 6603. Amendments to LOCAL TV Act.

Subtitle G—Technical Corrections

Sec. 6701. Corrections relating to the Consolidated Farm and Rural Development Act.
Sec. 6702. Corrections relating to the Rural Electrification Act of 1936.

TITLE VII—RESEARCH, EXTENSION, AND RELATED MATTERS

Subtitle A—National Agricultural Research, Extension, and Teaching Policy Act of 1977

Sec. 7101. Purposes of agricultural research, extension, and education.
Sec. 7102. Matters related to certain school designations and declarations.
Sec. 7103. National Agricultural Research, Extension, Education, and Economics Advisory Board.
Sec. 7104. Specialty crop committee.
Sec. 7105. Renewable energy committee discontinued.
Sec. 7106. Veterinary services grant program.
Sec. 7107. Grants and fellowships for food and agriculture sciences education.
Sec. 7108. Agricultural and food policy research centers.
Sec. 7109. Education grants to Alaska Native serving institutions and Native Hawaiian serving institutions.
Sec. 7110. Next generation agriculture technology challenge.
Sec. 7111. Land-grant designation.
Sec. 7112. Nutrition education program.
Sec. 7113. Continuing animal health and disease research programs.
Sec. 7114. Carryover of funds for extension at 1890 land-grant colleges, including Tuskegee University.
Sec. 7115. Extension and agricultural research at 1890 land-grant colleges, including Tuskegee University.
Sec. 7116. Reports on disbursement of funds for agricultural research and extension at 1862 and 1890 land-grant colleges, including Tuskegee University.
Sec. 7117. Scholarships for students at 1890 institutions.
Sec. 7118. Grants to upgrade agricultural and food sciences facilities at 1890 land-grant colleges, including Tuskegee University.
Sec. 7119. Grants to upgrade agriculture and food sciences facilities and equipment at insular area land-grant institutions.
Sec. 7120. New Beginning for Tribal Students.
Sec. 7121. Hispanic-serving institutions.
Sec. 7122. Binational agricultural research and development.
Sec. 7123. Partnerships to build capacity in international agricultural research, extension, and teaching.
Sec. 7124. Competitive grants for international agricultural science and education programs.
Sec. 7125. Limitation on indirect costs for agricultural research, education, and extension programs.
Sec. 7126. Research equipment grants.
Sec. 7127. University research.
Sec. 7128. Extension service.
Sec. 7129. Supplemental and alternative crops; hemp.
Sec. 7130. New Era Rural Technology program.
Sec. 7131. Capacity building grants for NLGCA Institutions.
Sec. 7132. Agriculture advanced research and development authority pilot.

Sec. 7133. Aquaculture assistance programs.
Sec. 7134. Rangeland research programs.
Sec. 7135. Special authorization for biosecurity planning and response.
Sec. 7136. Distance education and resident instruction grants program for insular area institutions of higher education.

Subtitle B—Food, Agriculture, Conservation, and Trade Act of 1990

Sec. 7201. Best utilization of biological applications.
Sec. 7202. Integrated management systems.
Sec. 7203. Sustainable agriculture technology development and transfer program.
Sec. 7204. National training program.
Sec. 7205. National strategic germplasm and cultivar collection assessment and utilization plan.
Sec. 7206. National Genetics Resources Program.
Sec. 7207. National Agricultural Weather Information System.
Sec. 7208. Agricultural genome to phenome initiative.
Sec. 7209. High-priority research and extension initiatives.
Sec. 7210. Organic agriculture research and extension initiative.
Sec. 7211. Farm business management.
Sec. 7212. Urban, indoor, and other emerging agricultural production research, education, and extension initiative.
Sec. 7213. Centers of excellence at 1890 Institutions.
Sec. 7214. Clarification of veteran eligibility for assistive technology program for farmers with disabilities.
Sec. 7215. National Rural Information Center Clearinghouse.

Subtitle C—Agricultural Research, Extension, and Education Reform Act of 1998

Sec. 7301. National food safety training, education, extension, outreach, and technical assistance program.
Sec. 7302. Integrated research, education, and extension competitive grants program.
Sec. 7303. Support for research regarding diseases of wheat, triticale, and barley caused by Fusarium graminearum or by Tilletia indica.
Sec. 7304. Grants for youth organizations.
Sec. 7305. Specialty crop research initiative.
Sec. 7306. Food Animal Residue Avoidance Database program.
Sec. 7307. Office of Pest Management Policy.
Sec. 7308. Forestry products advanced utilization research.

Subtitle D—Food, Conservation, and Energy Act of 2008

PART I—AGRICULTURAL SECURITY

Sec. 7401. Agricultural biosecurity communication center.
Sec. 7402. Assistance to build local capacity in agricultural biosecurity planning, preparation, and response.
Sec. 7403. Research and development of agricultural countermeasures.
Sec. 7404. Agricultural biosecurity grant program.

PART II—MISCELLANEOUS

Sec. 7411. Grazinglands research laboratory.
Sec. 7412. Farm and Ranch Stress Assistance Network.
Sec. 7413. Natural products research program.
Sec. 7414. Sun grant program.

Subtitle E—Amendments to Other Laws

Sec. 7501. Critical Agricultural Materials Act.
Sec. 7502. Equity in Educational Land-Grant Status Act of 1994.
Sec. 7503. Research Facilities Act.
Sec. 7504. Agriculture and Food Research Initiative.
Sec. 7505. Extension design and demonstration initiative.
Sec. 7506. Repeal of review of agricultural research service.
Sec. 7507. Biomass research and development.
Sec. 7508. Reinstatement of matching requirement for Federal funds used in extension work at the University of the District of Columbia.
Sec. 7509. Renewable Resources Extension Act of 1978.
Sec. 7510. National Aquaculture Act of 1980.
Sec. 7511. Federal agriculture research facilities.

Subtitle F—Other Matters

Sec. 7601. Enhanced use lease authority program.

PUBLIC LAW 115–334—DEC. 20, 2018        132 STAT. 4497

Sec. 7602. Transfer of administrative jurisdiction over portion of Henry A. Wallace
          Beltsville Agricultural Research Center, Beltsville, Maryland.
Sec. 7603. Foundation for food and agriculture research.
Sec. 7604. Assistance for forestry research under the McIntire-Stennis Cooperative
          Forestry Act.
Sec. 7605. Legitimacy of industrial hemp research.
Sec. 7606. Collection of data relating to barley area planted and harvested.
Sec. 7607. Collection of data relating to the size and location of dairy farms.
Sec. 7608. Agriculture innovation center demonstration program.
Sec. 7609. Smith-Lever community extension program.
Sec. 7610. Mechanization and automation for specialty crops.
Sec. 7611. Experienced services program.
Sec. 7612. Simplified plan of work.
Sec. 7613. Review of land-grant time and effort reporting requirements.
Sec. 7614. Matching funds requirement.

TITLE VIII—FORESTRY

Subtitle A—Cooperative Forestry Assistance Act of 1978

Sec. 8101. Support for State assessments and strategies for forest resources.
Sec. 8102. State and private forest landscape-scale restoration program.

Subtitle B—Forest and Rangeland Renewable Resources Research Act of 1978

Sec. 8201. Repeal of recycling research.
Sec. 8202. Repeal of forestry student grant program.

Subtitle C—Global Climate Change Prevention Act of 1990

Sec. 8301. Repeals relating to biomass.

Subtitle D—Healthy Forests Restoration Act of 2003

Sec. 8401. Promoting cross-boundary wildfire mitigation.
Sec. 8402. Authorization of appropriations for hazardous fuel reduction on Federal
          land.
Sec. 8403. Repeal of biomass commercial utilization grant program.
Sec. 8404. Water Source Protection Program.
Sec. 8405. Watershed Condition Framework.
Sec. 8406. Authorization of appropriations to combat insect infestations and related
          diseases.
Sec. 8407. Healthy Forests Restoration Act of 2003 amendments.
Sec. 8408. Authorization of appropriations for designation of treatment areas.

Subtitle E—Repeal or Reauthorization of Miscellaneous Forestry Programs

Sec. 8501. Repeal of revision of strategic plan for forest inventory and analysis.
Sec. 8502. Semiarid agroforestry research center.
Sec. 8503. National Forest Foundation Act.
Sec. 8504. Conveyance of Forest Service administrative sites.

Subtitle F—Forest Management

Sec. 8601. Definition of National Forest System.

PART I—EXPEDITED ENVIRONMENTAL ANALYSIS AND AVAILABILITY OF CATEGORICAL
        EXCLUSIONS TO EXPEDITE FOREST MANAGEMENT ACTIVITIES

Sec. 8611. Categorical exclusion for greater sage-grouse and mule deer habitat.

PART II—MISCELLANEOUS FOREST MANAGEMENT ACTIVITIES

Sec. 8621. Additional authority for sale or exchange of small parcels of National
          Forest System land.
Sec. 8622. Forest Service participation in ACES program.
Sec. 8623. Authorization for lease of Forest Service sites.
Sec. 8624. Good neighbor authority.
Sec. 8625. Chattahoochee-Oconee National Forest land adjustment.
Sec. 8626. Tennessee wilderness.
Sec. 8627. Kisatchie National Forest land conveyance.
Sec. 8628. Purchase of Natural Resources Conservation Service property, Riverside
          County, California.
Sec. 8629. Collaborative Forest Landscape Restoration Program.
Sec. 8630. Utility infrastructure rights-of-way vegetation management pilot pro-
          gram.
Sec. 8631. Okhissa Lake rural economic development land conveyance.
Sec. 8632. Remote sensing technologies.

132 STAT. 4498          PUBLIC LAW 115–334—DEC. 20, 2018

PART III—TIMBER INNOVATION

Sec. 8641. Definitions.
Sec. 8642. Clarification of research and development program for wood building construction.
Sec. 8643. Wood innovation grant program.
Sec. 8644. Community wood energy and wood innovation program.

Subtitle G—Other Matters

Sec. 8701. Rural revitalization technologies.
Sec. 8702. Resource Advisory Committees.
Sec. 8703. Tribal forest management demonstration project.
Sec. 8704. Technical corrections.
Sec. 8705. Streamlining the Forest Service process for consideration of communications facility location applications.
Sec. 8706. Report on wildfire, insect infestation, and disease prevention on Federal land.
Sec. 8707. West Fork Fire Station.
Sec. 8708. Competitive forestry, natural resources, and environmental grants program.

TITLE IX—ENERGY

Sec. 9001. Definitions.
Sec. 9002. Biobased markets program.
Sec. 9003. Biorefinery assistance.
Sec. 9004. Repowering assistance program.
Sec. 9005. Bioenergy program for advanced biofuels.
Sec. 9006. Biodiesel fuel education program.
Sec. 9007. Rural Energy for America Program.
Sec. 9008. Rural Energy Self-Sufficiency Initiative.
Sec. 9009. Feedstock flexibility.
Sec. 9010. Biomass Crop Assistance Program.
Sec. 9011. Carbon utilization and biogas education program.

TITLE X—HORTICULTURE

Sec. 10101. Specialty crops market news allocation.
Sec. 10102. Local agriculture market program.
Sec. 10103. Organic production and market data initiatives.
Sec. 10104. Organic certification.
Sec. 10105. National organic certification cost-share program.
Sec. 10106. Food safety education initiatives.
Sec. 10107. Specialty crop block grants.
Sec. 10108. Amendments to the Plant Variety Protection Act.
Sec. 10109. Multiple crop and pesticide use survey.
Sec. 10110. Report on the arrival in the United States of forest pests through restrictions on the importation of certain plants for planting.
Sec. 10111. Report on plant biostimulants.
Sec. 10112. Clarification of use of funds for technical assistance.
Sec. 10113. Hemp production.
Sec. 10114. Interstate commerce.
Sec. 10115. FIFRA interagency working group.
Sec. 10116. Study on methyl bromide use in response to an emergency event.

TITLE XI—CROP INSURANCE

Sec. 11101. Definitions.
Sec. 11102. Data collection.
Sec. 11103. Sharing of records.
Sec. 11104. Use of resources.
Sec. 11105. Specialty crops.
Sec. 11106. Insurance period.
Sec. 11107. Cover crops.
Sec. 11108. Underserved producers.
Sec. 11109. Treatment of forage and grazing.
Sec. 11110. Administrative basic fee.
Sec. 11111. Enterprise units.
Sec. 11112. Continued authority.
Sec. 11113. Submission of policies and materials to board.
Sec. 11114. Crop production on native sod.
Sec. 11115. Use of national agricultural statistics service data to combat waste, fraud, and abuse.
Sec. 11116. Submission of information to corporation.

PUBLIC LAW 115–334—DEC. 20, 2018     132 STAT. 4499

Sec. 11117.  Continuing education for loss adjusters and agents.
Sec. 11118.  Program administration.
Sec. 11119.  Agricultural commodity.
Sec. 11120.  Maintenance of policies.
Sec. 11121.  Reimbursement of research, development, and maintenance costs.
Sec. 11122.  Research and development authority.
Sec. 11123.  Funding for research and development.
Sec. 11124.  Technical amendment to pilot programs.
Sec. 11125.  Education and risk management assistance.
Sec. 11126.  Repeal of cropland report annual updates.

TITLE XII—MISCELLANEOUS

Subtitle A—Livestock

Sec. 12101.  Animal disease prevention and management.
Sec. 12102.  Sheep production and marketing grant program.
Sec. 12103.  Feasibility study on livestock dealer statutory trust.
Sec. 12104.  Definition of livestock.
Sec. 12105.  National Aquatic Animal Health Plan.
Sec. 12106.  Veterinary training.
Sec. 12107.  Report on FSIS guidance and outreach to small meat processors.
Sec. 12108.  Regional Cattle and Carcass Grading Correlation and Training Centers.

Subtitle B—Agriculture and Food Defense

Sec. 12201.  Repeal of Office of Homeland Security.
Sec. 12202.  Office of Homeland Security.
Sec. 12203.  Agriculture and food defense.
Sec. 12204.  Biological agents and toxins list.
Sec. 12205.  Authorization of appropriations.

Subtitle C—Historically Underserved Producers

Sec. 12301.  Farming opportunities training and outreach.
Sec. 12302.  Urban agriculture.
Sec. 12303.  Tribal Advisory Committee.
Sec. 12304.  Beginning farmer and rancher coordination.
Sec. 12305.  Agricultural youth organization coordinator.
Sec. 12306.  Availability of Department of Agriculture programs for veteran farmers and ranchers.

Subtitle D—Department of Agriculture Reorganization Act of 1994 Amendments

Sec. 12401.  Office of Congressional Relations and Intergovernmental Affairs.
Sec. 12402.  Military Veterans Agricultural Liaison.
Sec. 12403.  Civil rights analyses.
Sec. 12404.  Farm Service Agency.
Sec. 12405.  Under Secretary of Agriculture for Farm Production and Conservation.
Sec. 12406.  Office of Partnerships and Public Engagement.
Sec. 12407.  Under Secretary of Agriculture for Rural Development.
Sec. 12408.  Administrator of the Rural Utilities Service.
Sec. 12409.  Rural Health Liaison.
Sec. 12410.  Natural Resources Conservation Service.
Sec. 12411.  Office of the Chief Scientist.
Sec. 12412.  Appointment of national appeals division hearing officers.
Sec. 12413.  Trade and foreign agricultural affairs.
Sec. 12414.  Repeals.
Sec. 12415.  Technical corrections.
Sec. 12416.  Termination of authority.

Subtitle E—Other Miscellaneous Provisions

PART I—MISCELLANEOUS AGRICULTURE PROVISIONS

Sec. 12501.  Acer access and development program.
Sec. 12502.  Protecting animals with shelter.
Sec. 12503.  Marketing orders.
Sec. 12504.  Establishment of food loss and waste reduction liaison.
Sec. 12505.  Report on business centers.
Sec. 12506.  Report on personnel.
Sec. 12507.  Report on absent landlords.
Sec. 12508.  Century farms program.
Sec. 12509.  Report on importation of live dogs.
Sec. 12510.  Tribal Promise Zones.

PUBLIC LAW 115–334—DEC. 20, 2018

Sec. 12511. Precision agriculture connectivity.
Sec. 12512. Improvements to United States Drought Monitor.
Sec. 12513. Dairy business innovation initiatives.
Sec. 12514. Report on funding for the National Institute of Food and Agriculture and other extension programs.
Sec. 12515. Prohibition on slaughter of dogs and cats for human consumption.
Sec. 12516. Labeling exemption for single ingredient foods and products.
Sec. 12517. South Carolina inclusion in Virginia/Carolina peanut producing region.
Sec. 12518. Forest Service hire authority.
Sec. 12519. Conversion authority.
Sec. 12520. Authorization of protection operations for the Secretary of Agriculture and others.

PART II—NATIONAL OILHEAT RESEARCH ALLIANCE

Sec. 12531. National oilheat research alliance.

Subtitle F—General Provisions

Sec. 12601. Baiting of migratory game birds.
Sec. 12602. Pima agriculture cotton trust fund.
Sec. 12603. Agriculture wool apparel manufacturers trust fund.
Sec. 12604. Wool research and promotion.
Sec. 12605. Emergency Citrus Disease Research and Development Trust Fund.
Sec. 12606. Extension of merchandise processing fees.
Sec. 12607. Reports on land access and farmland ownership data collection.
Sec. 12608. Reauthorization of rural emergency medical services training and equipment assistance program.
Sec. 12609. Commission on Farm Transitions—Needs for 2050.
Sec. 12610. Exceptions under United States Grain Standards Act.
Sec. 12611. Conference report requirement threshold.
Sec. 12612. National agriculture imagery program.
Sec. 12613. Report on inclusion of natural stone products in Commodity Promotion, Research, and Information Act of 1996.
Sec. 12614. Establishment of food access liaison.
Sec. 12615. Eligibility for operators on heirs property land to obtain a farm number.
Sec. 12616. Extending prohibition on animal fighting to the territories.
Sec. 12617. Exemption of exportation of certain echinoderms from permission and licensing requirements.
Sec. 12618. Data on conservation practices.
Sec. 12619. Conforming changes to Controlled Substances Act.

7 USC 9001 note.    **SEC. 2. DEFINITION OF SECRETARY.**

In this Act, the term "Secretary" means the Secretary of Agriculture.

# TITLE I—COMMODITIES

## Subtitle A—Commodity Policy

### SEC. 1101. DEFINITION OF EFFECTIVE REFERENCE PRICE.

Section 1111 of the Agricultural Act of 2014 (7 U.S.C. 9011) is amended—

(1) by redesignating paragraphs (8) through (25) as paragraphs (9) through (26), respectively; and

(2) by inserting after paragraph (7) the following:

"(8) EFFECTIVE REFERENCE PRICE.—The term 'effective reference price', with respect to a covered commodity for a crop year, means the lesser of the following:

"(A) An amount equal to 115 percent of the reference price for such covered commodity.

"(B) An amount equal to the greater of—

"(i) the reference price for such covered commodity; or

"(ii) 85 percent of the average of the marketing year average price of the covered commodity for the

132 STAT. 4908          PUBLIC LAW 115–334—DEC. 20, 2018

Protection Act (7 U.S.C. 7701 et seq.) and recommendations with respect to such challenges; and

(8) describing the coordination and collaboration occurring between the Animal and Plant Health Inspection Service and the Forest Service with respect to—

(A) identifying and prioritizing critical detection, surveillance, and eradication needs for tree and wood pests; and

(B) identifying the actions each agency takes within their respective missions to address identified priorities.

**SEC. 10111. REPORT ON PLANT BIOSTIMULANTS.**

(a) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit a report to the President and Congress that identifies any potential regulatory, non-regulatory, and legislative recommendations, including the appropriateness of any definitions for plant biostimulant, to ensure the efficient and appropriate review, approval, uniform national labeling, and availability of plant biostimulant products to agricultural producers.

(b) CONSULTATION.—The Secretary shall prepare the report required by subsection (a) in consultation with the Administrator of the Environmental Protection Agency, the several States, industry stakeholders, and such other stakeholders as the Secretary determines necessary.

(c) PLANT BIOSTIMULANT.—For the purposes of the report under subsection (a), the Secretary—

(1) shall consider "plant biostimulant" to be a substance or micro-organism that, when applied to seeds, plants, or the rhizosphere, stimulates natural processes to enhance or benefit nutrient uptake, nutrient efficiency, tolerance to abiotic stress, or crop quality and yield; and

(2) may modify the description of plant biostimulant, as appropriate.

**SEC. 10112. CLARIFICATION OF USE OF FUNDS FOR TECHNICAL ASSISTANCE.**

Section 11 of the Commodity Credit Corporation Charter Act (15 U.S.C. 714i) is amended in the last sentence by inserting after "activities" the following: "but excluding any amounts used to provide technical assistance under title X of the Agriculture Improvement Act of 2018 or an amendment made by that title".

**SEC. 10113. HEMP PRODUCTION.**

The Agricultural Marketing Act of 1946 (7 U.S.C. 1621 et seq.) is amended by adding at the end the following:

# "Subtitle G—Hemp Production

7 USC 1639o.

**"SEC. 297A. DEFINITIONS.**

"In this subtitle:

"(1) HEMP.—The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

"(2) INDIAN TRIBE.—The term 'Indian tribe' has the meaning given the term in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304).

"(3) SECRETARY.—The term 'Secretary' means the Secretary of Agriculture.

"(4) STATE.—The term 'State' means—

"(A) a State;

"(B) the District of Columbia;

"(C) the Commonwealth of Puerto Rico; and

"(D) any other territory or possession of the United States.

"(5) STATE DEPARTMENT OF AGRICULTURE.—The term 'State department of agriculture' means the agency, commission, or department of a State government responsible for agriculture in the State.

"(6) TRIBAL GOVERNMENT.—The term 'Tribal government' means the governing body of an Indian tribe.

## "SEC. 297B. STATE AND TRIBAL PLANS.

7 USC 1639p.

"(a) SUBMISSION.—

"(1) IN GENERAL.—A State or Indian tribe desiring to have primary regulatory authority over the production of hemp in the State or territory of the Indian tribe shall submit to the Secretary, through the State department of agriculture (in consultation with the Governor and chief law enforcement officer of the State) or the Tribal government, as applicable, a plan under which the State or Indian tribe monitors and regulates that production as described in paragraph (2).

"(2) CONTENTS.—A State or Tribal plan referred to in paragraph (1)—

"(A) shall only be required to include—

"(i) a practice to maintain relevant information regarding land on which hemp is produced in the State or territory of the Indian tribe, including a legal description of the land, for a period of not less than 3 calendar years;

"(ii) a procedure for testing, using post-decarboxylation or other similarly reliable methods, delta-9 tetrahydrocannabinol concentration levels of hemp produced in the State or territory of the Indian tribe;

"(iii) a procedure for the effective disposal of—

"(I) plants, whether growing or not, that are produced in violation of this subtitle; and

"(II) products derived from those plants;

"(iv) a procedure to comply with the enforcement procedures under subsection (e);

"(v) a procedure for conducting annual inspections of, at a minimum, a random sample of hemp producers to verify that hemp is not produced in violation of this subtitle;

"(vi) a procedure for submitting the information described in section 297C(d)(2), as applicable, to the Secretary not more than 30 days after the date on which the information is received; and

132 STAT. 4910          PUBLIC LAW 115–334—DEC. 20, 2018

"(vii) a certification that the State or Indian tribe has the resources and personnel to carry out the practices and procedures described in clauses (i) through (vi); and

"(B) may include any other practice or procedure established by a State or Indian tribe, as applicable, to the extent that the practice or procedure is consistent with this subtitle.

"(3) RELATION TO STATE AND TRIBAL LAW.—

"(A) NO PREEMPTION.—Nothing in this subsection preempts or limits any law of a State or Indian tribe that—

"(i) regulates the production of hemp; and

"(ii) is more stringent than this subtitle.

"(B) REFERENCES IN PLANS.—A State or Tribal plan referred to in paragraph (1) may include a reference to a law of the State or Indian tribe regulating the production of hemp, to the extent that law is consistent with this subtitle.

"(b) APPROVAL.—

"(1) IN GENERAL.—Not later than 60 days after receipt of a State or Tribal plan under subsection (a), the Secretary shall—

"(A) approve the State or Tribal plan if the State or Tribal plan complies with subsection (a); or

"(B) disapprove the State or Tribal plan only if the State or Tribal plan does not comply with subsection (a).

"(2) AMENDED PLANS.—If the Secretary disapproves a State or Tribal plan under paragraph (1)(B), the State, through the State department of agriculture (in consultation with the Governor and chief law enforcement officer of the State) or the Tribal government, as applicable, may submit to the Secretary an amended State or Tribal plan that complies with subsection (a).

"(3) CONSULTATION.—The Secretary shall consult with the Attorney General in carrying out this subsection.

"(c) AUDIT OF STATE COMPLIANCE.—

"(1) IN GENERAL.—The Secretary may conduct an audit of the compliance of a State or Indian tribe with a State or Tribal plan approved under subsection (b).

"(2) NONCOMPLIANCE.—If the Secretary determines under an audit conducted under paragraph (1) that a State or Indian tribe is not materially in compliance with a State or Tribal plan—

"(A) the Secretary shall collaborate with the State or Indian tribe to develop a corrective action plan in the case of a first instance of noncompliance; and

"(B) the Secretary may revoke approval of the State or Tribal plan in the case of a second or subsequent instance of noncompliance.

"(d) TECHNICAL ASSISTANCE.—The Secretary may provide technical assistance to a State or Indian tribe in the development of a State or Tribal plan under subsection (a).

"(e) VIOLATIONS.—

"(1) IN GENERAL.—A violation of a State or Tribal plan approved under subsection (b) shall be subject to enforcement solely in accordance with this subsection.

"(2) NEGLIGENT VIOLATION.—

PUBLIC LAW 115–334—DEC. 20, 2018        132 STAT. 4911

"(A) In general.—A hemp producer in a State or the territory of an Indian tribe for which a State or Tribal plan is approved under subsection (b) shall be subject to subparagraph (B) of this paragraph if the State department of agriculture or Tribal government, as applicable, determines that the hemp producer has negligently violated the State or Tribal plan, including by negligently—

"(i) failing to provide a legal description of land on which the producer produces hemp;

"(ii) failing to obtain a license or other required authorization from the State department of agriculture or Tribal government, as applicable; or

"(iii) producing Cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration of more than 0.3 percent on a dry weight basis.

"(B) Corrective action plan.—A hemp producer described in subparagraph (A) shall comply with a plan established by the State department of agriculture or Tribal government, as applicable, to correct the negligent violation, including—

"(i) a reasonable date by which the hemp producer shall correct the negligent violation; and

"(ii) a requirement that the hemp producer shall periodically report to the State department of agriculture or Tribal government, as applicable, on the compliance of the hemp producer with the State or Tribal plan for a period of not less than the next 2 calendar years.

"(C) Result of negligent violation.—A hemp producer that negligently violates a State or Tribal plan under subparagraph (A) shall not as a result of that violation be subject to any criminal enforcement action by the Federal Government or any State government, Tribal government, or local government.

"(D) Repeat violations.—A hemp producer that negligently violates a State or Tribal plan under subparagraph (A) 3 times in a 5-year period shall be ineligible to produce hemp for a period of 5 years beginning on the date of the third violation.

"(3) Other violations.—

"(A) In general.—If the State department of agriculture or Tribal government in a State or the territory of an Indian tribe for which a State or Tribal plan is approved under subsection (b), as applicable, determines that a hemp producer in the State or territory has violated the State or Tribal plan with a culpable mental state greater than negligence—

"(i) the State department of agriculture or Tribal government, as applicable, shall immediately report the hemp producer to—

"(I) the Attorney General; and

"(II) the chief law enforcement officer of the State or Indian tribe, as applicable; and

"(ii) paragraph (1) of this subsection shall not apply to the violation.

"(B) Felony.—

"(i) IN GENERAL.—Except as provided in clause (ii), any person convicted of a felony relating to a controlled substance under State or Federal law before, on, or after the date of enactment of this subtitle shall be ineligible, during the 10-year period following the date of the conviction—

"(I) to participate in the program established under this section or section 297C; and

"(II) to produce hemp under any regulations or guidelines issued under section 297D(a).

"(ii) EXCEPTION.—Clause (i) shall not apply to any person growing hemp lawfully with a license, registration, or authorization under a pilot program authorized by section 7606 of the Agricultural Act of 2014 (7 U.S.C. 5940) before the date of enactment of this subtitle.

"(C) FALSE STATEMENT.—Any person who materially falsifies any information contained in an application to participate in the program established under this section shall be ineligible to participate in that program.

"(f) EFFECT.—Nothing in this section prohibits the production of hemp in a State or the territory of an Indian tribe—

"(1) for which a State or Tribal plan is not approved under this section, if the production of hemp is in accordance with section 297C or other Federal laws (including regulations); and

"(2) if the production of hemp is not otherwise prohibited by the State or Indian tribe.

7 USC 1639q.    **"SEC. 297C. DEPARTMENT OF AGRICULTURE.—**

"(a) DEPARTMENT OF AGRICULTURE PLAN.—

"(1) IN GENERAL.—In the case of a State or Indian tribe for which a State or Tribal plan is not approved under section 297B, the production of hemp in that State or the territory of that Indian tribe shall be subject to a plan established by the Secretary to monitor and regulate that production in accordance with paragraph (2).

"(2) CONTENT.—A plan established by the Secretary under paragraph (1) shall include—

"(A) a practice to maintain relevant information regarding land on which hemp is produced in the State or territory of the Indian tribe, including a legal description of the land, for a period of not less than 3 calendar years;

"(B) a procedure for testing, using post-decarboxylation or other similarly reliable methods, delta-9 tetrahydrocannabinol concentration levels of hemp produced in the State or territory of the Indian tribe;

"(C) a procedure for the effective disposal of—

"(i) plants, whether growing or not, that are produced in violation of this subtitle; and

"(ii) products derived from those plants;

"(D) a procedure to comply with the enforcement procedures under subsection (c)(2);

"(E) a procedure for conducting annual inspections of, at a minimum, a random sample of hemp producers to verify that hemp is not produced in violation of this subtitle; and

"(F) such other practices or procedures as the Secretary considers to be appropriate, to the extent that the practice or procedure is consistent with this subtitle.

"(b) LICENSING.—The Secretary shall establish a procedure to issue licenses to hemp producers in accordance with a plan established under subsection (a).

"(c) VIOLATIONS.—

"(1) IN GENERAL.—In the case of a State or Indian tribe for which a State or Tribal plan is not approved under section 297B, it shall be unlawful to produce hemp in that State or the territory of that Indian tribe without a license issued by the Secretary under subsection (b).

"(2) NEGLIGENT AND OTHER VIOLATIONS.—A violation of a plan established under subsection (a) shall be subject to enforcement in accordance with paragraphs (2) and (3) of section 297B(e), except that the Secretary shall carry out that enforcement instead of a State department of agriculture or Tribal government.

"(3) REPORTING TO ATTORNEY GENERAL.—In the case of a State or Indian tribe covered by paragraph (1), the Secretary shall report the production of hemp without a license issued by the Secretary under subsection (b) to the Attorney General.

"(d) INFORMATION SHARING FOR LAW ENFORCEMENT.—

"(1) IN GENERAL.—The Secretary shall—

"(A) collect the information described in paragraph (2); and

"(B) make the information collected under subparagraph (A) accessible in real time to Federal, State, territorial, and local law enforcement.

"(2) CONTENT.—The information collected by the Secretary under paragraph (1) shall include—

"(A) contact information for each hemp producer in a State or the territory of an Indian tribe for which—

"(i) a State or Tribal plan is approved under section 297B(b); or

"(ii) a plan is established by the Secretary under this section;

"(B) a legal description of the land on which hemp is grown by each hemp producer described in subparagraph (A); and

"(C) for each hemp producer described in subparagraph (A)—

"(i) the status of—

"(I) a license or other required authorization from the State department of agriculture or Tribal government, as applicable; or

"(II) a license from the Secretary; and

"(ii) any changes to the status.

**"SEC. 297D. REGULATIONS AND GUIDELINES; EFFECT ON OTHER LAW.**    7 USC 1639r.

"(a) PROMULGATION OF REGULATIONS AND GUIDELINES; REPORT.—

"(1) REGULATIONS AND GUIDELINES.—

"(A) IN GENERAL.—The Secretary shall promulgate regulations and guidelines to implement this subtitle as expeditiously as practicable.

"(B) CONSULTATION WITH ATTORNEY GENERAL.—The Secretary shall consult with the Attorney General on the promulgation of regulations and guidelines under subparagraph (A).

"(2) REPORT.—The Secretary shall annually submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report containing updates on the implementation of this subtitle.

"(b) AUTHORITY.—Subject to subsection (c)(3)(B), the Secretary shall have sole authority to promulgate Federal regulations and guidelines that relate to the production of hemp, including Federal regulations and guidelines that relate to the implementation of sections 297B and 297C.

"(c) EFFECT ON OTHER LAW.—Nothing in this subtitle shall affect or modify—

"(1) the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.);

"(2) section 351 of the Public Health Service Act (42 U.S.C. 262); or

"(3) the authority of the Commissioner of Food and Drugs and the Secretary of Health and Human Services—

"(A) under—

"(i) the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.); or

"(ii) section 351 of the Public Health Service Act (42 U.S.C. 262); or

"(B) to promulgate Federal regulations and guidelines that relate to the production of hemp under the Act described in subparagraph (A)(i) or the section described in subparagraph (A)(ii).

7 USC 1639s.

"SEC. 297E. AUTHORIZATION OF APPROPRIATIONS.

"There are authorized to be appropriated such sums as are necessary to carry out this subtitle.".

7 USC 1639o note.

SEC. 10114. INTERSTATE COMMERCE.

(a) RULE OF CONSTRUCTION.—Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

(b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS.—No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

SEC. 10115. FIFRA INTERAGENCY WORKING GROUP.

Section 3(c) of the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. 13a(c)) is amended by adding at the end the following:

"(11) INTERAGENCY WORKING GROUP.—

"(A) DEFINITION OF COVERED AGENCY.—In this paragraph, the term 'covered agency' means any of the following:

"(i) The Department of Agriculture.

"(ii) The Department of Commerce.

"(b) REPORT.—Not later than 1 year after the date of enactment of the Agriculture Improvement Act of 2018, the Secretary shall submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report that includes—

"(1) a summary of the data sets identified under subsection (a);

"(2) a summary of the steps the Secretary would have to take to provide access to such data sets by university researchers, including taking into account any technical, privacy, or administrative considerations;

"(3) a summary of safeguards the Secretary employs when providing access to data to university researchers;

"(4) a summary of appropriate procedures to maximize the potential for research benefits while preventing any violations of privacy or confidentiality; and

"(5) recommendations for any necessary authorizations or clarifications of Federal law to allow access to such data sets to maximize the potential for research benefits.".

### SEC. 12619. CONFORMING CHANGES TO CONTROLLED SUBSTANCES ACT.

(a) IN GENERAL.—Section 102(16) of the Controlled Substances Act (21 U.S.C. 802(16)) is amended—

(1) by striking "(16) The" and inserting "(16)(A) Subject to subparagraph (B), the"; and

(2) by striking "Such term does not include the" and inserting the following:

"(B) The term 'marihuana' does not include—

"(i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946; or

"(ii) the".

(b) TETRAHYDROCANNABINOL.—Schedule I, as set forth in section 202(c) of the Controlled Substances Act (21 U.S.C. 812(c)), is amended in subsection (c)(17) by inserting after "Tetrahydrocannabinols" the following: ", except for tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946)".

Approved December 20, 2018.

---

LEGISLATIVE HISTORY—H.R. 2:

HOUSE REPORTS: Nos. 115–661 (Comm. on Agriculture) and 115–1072 (Comm. of Conference).
CONGRESSIONAL RECORD, Vol. 164 (2018):
        May 16–18, considered and failed House.
        June 21, considered and passed House.
        June 27, 28, considered and passed Senate, amended.
        Dec. 11, Senate agreed to the conference report.
        Dec. 12, House agreed to the conference report.
DAILY COMPILATION OF PRESIDENTIAL DOCUMENTS (2018):
        Dec. 20, Presidential remarks and statement.

O:\RYA\RYA18A16.xml [file 2 of 13]                    S.L.C.

| 115TH CONGRESS<br>*2d Session* | HOUSE OF REPRESENTATIVES | REPORT<br>115–_____ |
|---|---|---|

## AGRICULTURE IMPROVEMENT ACT OF 2018

_____

_____.—Ordered to be printed

_____

Mr. Conaway, from the committee of conference,
submitted the following

## CONFERENCE REPORT

[To accompany H. R. 2]

The committee of conference on the disagreeing votes of the
two Houses on the amendment of the Senate to the bill (H. R. 2),
to provide for the reform and continuation of agricultural and other
programs of the Department of Agriculture through fiscal year
2023, and for other purposes, having met, after full and free con-
ference, have agreed to recommend and do recommend to their re-
spective Houses as follows:

That the House recede from its disagreement to the amend-
ment of the Senate and agree to the same with an amendment as
follows:

In lieu of the matter proposed to be inserted by the Senate
amendment, insert the following:

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

*(a) SHORT TITLE.—This Act may be cited as the "Agriculture
Improvement Act of 2018".*

*(b) TABLE OF CONTENTS.—The table of contents for this Act is
as follows:*

Sec. 1. Short title; table of contents.
Sec. 2. Definition of Secretary.

### TITLE I—COMMODITIES

#### Subtitle A—Commodity Policy

Sec. 1101. Definition of effective reference price.
Sec. 1102. Base acres.
Sec. 1103. Payment yields.
Sec. 1104. Payment acres.
Sec. 1105. Producer election.
Sec. 1106. Price loss coverage.
Sec. 1107. Agriculture risk coverage.
Sec. 1108. Repeal of transition assistance for producers of upland cotton.

EXHIBIT
2

O:\RYA\RYA18A16.xml [file 2 of 13]                          S.L.C.

2

### Subtitle B—Marketing Loans

Sec. 1201. Extensions.
Sec. 1202. Loan rates for nonrecourse marketing assistance loans.
Sec. 1203. Economic adjustment assistance for textile mills.
Sec. 1204. Special competitive provisions for extra long staple cotton.
Sec. 1205. Availability of recourse loans.

### Subtitle C—Sugar

Sec. 1301. Sugar policy.

### Subtitle D—Dairy Margin Coverage and Other Dairy Related Provisions

Sec. 1401. Dairy margin coverage.
Sec. 1402. Reauthorizations.
Sec. 1403. Class I skim milk price.
Sec. 1404. Dairy product donation.

### Subtitle E—Supplemental Agricultural Disaster Assistance

Sec. 1501. Supplemental agricultural disaster assistance.

### Subtitle F—Noninsured Crop Assistance

Sec. 1601. Noninsured crop assistance program.

### Subtitle G—Administration

Sec. 1701. Regulations.
Sec. 1702. Suspension of permanent price support authority.
Sec. 1703. Payment limitations.
Sec. 1704. Adjusted gross income limitations.
Sec. 1705. Farm Service Agency accountability.
Sec. 1706. Implementation.
Sec. 1707. Exemption from certain reporting requirements for certain producers.

### TITLE II—CONSERVATION

### Subtitle A—Wetland Conservation

Sec. 2101. Wetland conversion.
Sec. 2102. Wetland conservation.
Sec. 2103. Mitigation banking.

### Subtitle B—Conservation Reserve Program

Sec. 2201. Conservation reserve.
Sec. 2202. Conservation reserve enhancement program.
Sec. 2203. Farmable wetland program.
Sec. 2204. Pilot programs.
Sec. 2205. Duties of owners and operators.
Sec. 2206. Duties of the Secretary.
Sec. 2207. Payments.
Sec. 2208. Contracts.
Sec. 2209. Eligible land; State law requirements.

### Subtitle C—Environmental Quality Incentives Program and Conservation Stewardship Program

Sec. 2301. Repeal of conservation programs.
Sec. 2302. Purposes of environmental quality incentives program.
Sec. 2303. Definitions under environmental quality incentives program.
Sec. 2304. Establishment and administration of environmental quality incentives program.
Sec. 2305. Environmental quality incentives program plan.
Sec. 2306. Limitation on payments under environmental quality incentives program.
Sec. 2307. Conservation innovation grants and payments.
Sec. 2308. Conservation stewardship program.
Sec. 2309. Grassland conservation initiative.

### Subtitle D—Other Conservation Programs

Sec. 2401. Watershed protection and flood prevention.
Sec. 2402. Soil and water resources conservation.
Sec. 2403. Emergency conservation program.
Sec. 2404. Conservation of private grazing land.

O:\RYA\RYA18A16.xml [file 2 of 13]                                    S.L.C.

3

Sec. 2405. Grassroots source water protection program.
Sec. 2406. Voluntary public access and habitat incentive program.
Sec. 2407. Wildlife management.
Sec. 2408. Feral swine eradication and control pilot program.
Sec. 2409. Report on small wetlands.
Sec. 2410. Sense of Congress relating to increased watershed-based collaboration.

Subtitle E—Funding and Administration

Sec. 2501. Commodity Credit Corporation.
Sec. 2502. Delivery of technical assistance.
Sec. 2503. Administrative requirements for conservation programs.
Sec. 2504. Temporary administration of conservation programs.

Subtitle F—Agricultural Conservation Easement Program

Sec. 2601. Establishment and purposes.
Sec. 2602. Definitions.
Sec. 2603. Agricultural land easements.
Sec. 2604. Wetland reserve easements.
Sec. 2605. Administration.

Subtitle G—Regional Conservation Partnership Program

Sec. 2701. Establishment and purposes.
Sec. 2702. Definitions.
Sec. 2703. Regional conservation partnerships.
Sec. 2704. Assistance to producers.
Sec. 2705. Funding.
Sec. 2706. Administration.
Sec. 2707. Critical conservation areas.

Subtitle H—Repeals and Technical Amendments

PART I—REPEALS

Sec. 2811. Repeal of Conservation Corridor Demonstration Program.
Sec. 2812. Repeal of cranberry acreage reserve program.
Sec. 2813. Repeal of National Natural Resources Foundation.
Sec. 2814. Repeal of flood risk reduction.
Sec. 2815. Repeal of study of land use for expiring contracts and extension of au-
         thority.
Sec. 2816. Repeal of Integrated Farm Management Program Option.
Sec. 2817. Repeal of clarification of definition of agricultural lands.

PART II—TECHNICAL AMENDMENTS

Sec. 2821. Technical amendments.
Sec. 2822. State technical committees.

TITLE III—TRADE

Subtitle A—Food for Peace Act

Sec. 3101. Labeling requirements.
Sec. 3102. Food aid quality assurance.
Sec. 3103. Local sale and barter of commodities.
Sec. 3104. Minimum levels of assistance.
Sec. 3105. Food aid consultative group.
Sec. 3106. Issuance of regulations.
Sec. 3107. Oversight, monitoring, and evaluation.
Sec. 3108. Assistance for stockpiling and rapid transportation, delivery, and dis-
         tribution of shelf-stable prepackaged foods.
Sec. 3109. Consideration of impact of provision of agricultural commodities and
         other assistance on local farmers and economy.
Sec. 3110. Allowance for distribution costs.
Sec. 3111. Prepositioning of agricultural commodities.
Sec. 3112. Annual report regarding food aid programs and activities.
Sec. 3113. Deadline for agreements to finance sales or to provide other assistance.
Sec. 3114. Minimum level of nonemergency food assistance.
Sec. 3115. Termination date for micronutrient fortification programs.
Sec. 3116. John Ogonowski and Doug Bereuter Farmer-to-Farmer program.

O:\RYA\RYA18A16.xml [file 2 of 13]                          S.L.C.

4

*Subtitle B—Agricultural Trade Act of 1978*

Sec. 3201. Agricultural trade promotion and facilitation.

*Subtitle C—Other Agricultural Trade Laws*

Sec. 3301. Growing American Food Exports.
Sec. 3302. Food for Progress Act of 1985.
Sec. 3303. Bill Emerson Humanitarian Trust Act.
Sec. 3304. Promotion of agricultural exports to emerging markets.
Sec. 3305. Cochran fellowship program.
Sec. 3306. Borlaug International Agricultural Science and Technology Fellowship program.
Sec. 3307. International Agricultural Education Fellowship program.
Sec. 3308. International food security technical assistance.
Sec. 3309. McGovern-Dole International Food for Education and Child Nutrition program.
Sec. 3310. Global Crop Diversity Trust.
Sec. 3311. Local and regional food aid procurement projects.
Sec. 3312. Foreign trade missions.

*TITLE IV—NUTRITION*

*Subtitle A—Supplemental Nutrition Assistance Program*

Sec. 4001. Requirements for online acceptance of benefits.
Sec. 4002. Re-evaluation of thrifty food plan.
Sec. 4003. Food distribution program on Indian reservations.
Sec. 4004. Simplified homeless housing costs.
Sec. 4005. Employment and training for supplemental nutrition assistance program.
Sec. 4006. Improvements to electronic benefit transfer system.
Sec. 4007. Review of supplemental nutrition assistance program operations.
Sec. 4008. Retail incentives.
Sec. 4009. Required action on data match information.
Sec. 4010. Incentivizing technology modernization.
Sec. 4011. Interstate data matching to prevent multiple issuances.
Sec. 4012. Requirement of live-production environments for certain pilot projects relating to cost sharing for computerization.
Sec. 4013. Quality control improvements.
Sec. 4014. Evaluation of child support enforcement cooperation requirements.
Sec. 4015. Longitudinal data for research.
Sec. 4016. Authorization of appropriations.
Sec. 4017. Assistance for community food projects.
Sec. 4018. Emergency food assistance program.
Sec. 4019. Nutrition education.
Sec. 4020. Retail food store and recipient trafficking.
Sec. 4021. Public-private partnerships.
Sec. 4022. Technical corrections.

*Subtitle B—Commodity Distribution Programs*

Sec. 4101. Commodity distribution program.
Sec. 4102. Commodity supplemental food program.
Sec. 4103. Distribution of surplus commodities to special nutrition projects.
Sec. 4104. Food donation standards.

*Subtitle C—Miscellaneous*

Sec. 4201. Seniors farmers' market nutrition program.
Sec. 4202. Purchase of fresh fruits and vegetables for distribution to schools and service institutions.
Sec. 4203. Service of traditional foods in public facilities.
Sec. 4204. Healthy food financing initiative.
Sec. 4205. The Gus Schumacher nutrition incentive program.
Sec. 4206. Micro-grants for food security.
Sec. 4207. Buy American requirements.
Sec. 4208. Healthy fluid milk incentives projects.

*TITLE V—CREDIT*

*Subtitle A—Farm Ownership Loans*

Sec. 5101. Modification of the 3-year experience eligibility requirement for farm ownership loans.

O:\RYA\RYA18A16.xml [file 2 of 13]                    S.L.C.

5

Sec. 5102. *Conservation loan and loan guarantee program.*
Sec. 5103. *Limitations on amount of farm ownership loans.*
Sec. 5104. *Relending program to resolve ownership and succession on farmland.*

### Subtitle B—Operating Loans

Sec. 5201. *Limitations on amount of operating loans.*
Sec. 5202. *Microloans.*
Sec. 5203. *Cooperative lending pilot projects.*

### Subtitle C—Administrative Provisions

Sec. 5301. *Beginning farmer and rancher individual development accounts pilot program.*
Sec. 5302. *Loan authorization levels.*
Sec. 5303. *Loan fund set-asides.*
Sec. 5304. *Use of additional funds for direct operating microloans under certain conditions.*
Sec. 5305. *Equitable relief.*
Sec. 5306. *Socially disadvantaged farmers and ranchers; qualified beginning farmers and ranchers.*
Sec. 5307. *Emergency loan eligibility.*

### Subtitle D—Miscellaneous

Sec. 5401. *Technical corrections to the Consolidated Farm and Rural Development Act.*
Sec. 5402. *State agricultural mediation programs.*
Sec. 5403. *Compensation of bank directors.*
Sec. 5404. *Sharing of privileged and confidential information.*
Sec. 5405. *Facility headquarters.*
Sec. 5406. *Removal and prohibition authority; industry-wide prohibition.*
Sec. 5407. *Jurisdiction over institution-affiliated parties.*
Sec. 5408. *Definition of institution-affiliated party.*
Sec. 5409. *Prohibition on use of funds.*
Sec. 5410. *Expansion of acreage exception to loan amount limitation.*
Sec. 5411. *Repeal of obsolete provisions; technical corrections.*
Sec. 5412. *Corporation as conservator or receiver; certain other powers.*
Sec. 5413. *Reporting.*
Sec. 5414. *Study on loan risk.*
Sec. 5415. *GAO report on ability of the Farm Credit System to meet the agricultural credit needs of Indian tribes and their members.*
Sec. 5416. *GAO report on credit service to socially disadvantaged farmers and ranchers.*

## TITLE VI—RURAL DEVELOPMENT

### Subtitle A—Improving Health Outcomes in Rural America

Sec. 6101. *Combating substance use disorder in rural America; prioritizations.*
Sec. 6102. *Distance learning and telemedicine.*
Sec. 6103. *Refinancing of certain rural hospital debt.*

### Subtitle B—Connecting Rural Americans to High Speed Broadband

Sec. 6201. *Access to broadband telecommunications services in rural areas.*
Sec. 6202. *Expansion of middle mile infrastructure into rural areas.*
Sec. 6203. *Modifications to the Rural Gigabit Program.*
Sec. 6204. *Community Connect Grant Program.*
Sec. 6205. *Outdated broadband systems.*
Sec. 6206. *Default and deobligation; deferral.*
Sec. 6207. *Public notice, assessments, and reporting requirements.*
Sec. 6208. *Environmental reviews.*
Sec. 6209. *Use of loan proceeds to refinance loans for deployment of broadband service.*
Sec. 6210. *Smart utility authority for broadband.*
Sec. 6211. *Refinancing of telephone loans.*
Sec. 6212. *Federal broadband program coordination.*
Sec. 6213. *Transition rule.*
Sec. 6214. *Rural broadband integration working group.*

### Subtitle C—Miscellaneous

Sec. 6301. *Exclusion of certain populations from definition of rural area.*

O:\RYA\RYA18A16.xml [file 2 of 13]                    S.L.C.

6

Sec. 6302. Establishment of technical assistance program.
Sec. 6303. Rural energy savings program.
Sec. 6304. Northern Border Regional Commission reauthorization.
Sec. 6305. Definition of rural area for purposes of the Housing Act of 1949.
Sec. 6306. Council on Rural Community Innovation and Economic Development.

Subtitle D—Additional Amendments to the Consolidated Farm and Rural
Development Act

Sec. 6401. Strategic economic and community development.
Sec. 6402. Expanding access to credit for rural communities.
Sec. 6403. Water, waste disposal, and wastewater facility grants.
Sec. 6404. Rural water and wastewater technical assistance and training programs.
Sec. 6405. Rural water and wastewater circuit rider program.
Sec. 6406. Tribal college and university essential community facilities.
Sec. 6407. Emergency and imminent community water assistance grant program.
Sec. 6408. Water systems for rural and native villages in Alaska.
Sec. 6409. Rural decentralized water systems.
Sec. 6410. Solid waste management grants.
Sec. 6411. Rural business development grants.
Sec. 6412. Rural cooperative development grants.
Sec. 6413. Locally or regionally produced agricultural food products.
Sec. 6414. Appropriate technology transfer for rural areas program.
Sec. 6415. Rural economic area partnership zones.
Sec. 6416. Intemediary relending program.
Sec. 6417. Access to information to verify income for participants in certain rural
housing programs.
Sec. 6418. Providing for additional fees for guaranteed loans under the Consoli-
dated Farm and Rural Development Act.
Sec. 6419. Rural Business-Cooperative Service programs technical assistance and
training.
Sec. 6420. National Rural Development Partnership.
Sec. 6421. Grants for NOAA weather radio transmitters.
Sec. 6422. Rural microentrepreneur assistance program.
Sec. 6423. Health care services.
Sec. 6424. Rural innovation stronger economy grant program.
Sec. 6425. Delta Regional Authority.
Sec. 6426. Rural business investment program.
Sec. 6427. Rural business investment program.

Subtitle E—Additional Amendments to the Rural Electrification Act of 1936

Sec. 6501. Amendments to section 2 of the Rural Electrification Act of 1936.
Sec. 6502. Loans for telephone service.
Sec. 6503. Cushion of credit payments program.
Sec. 6504. Extension of the rural economic development loan and grant program.
Sec. 6505. Guarantees for bonds and notes issued for electrification or telephone
purposes.
Sec. 6506. Expansion of 911 access.
Sec. 6507. Cybersecurity and grid security improvements.

Subtitle F—Program Repeals

Sec. 6601. Elimination of unfunded programs.
Sec. 6602. Repeal of Rural Telephone Bank.
Sec. 6603. Amendments to LOCAL TV Act.

Subtitle G—Technical Corrections

Sec. 6701. Corrections relating to the Consolidated Farm and Rural Development
Act.
Sec. 6702. Corrections relating to the Rural Electrification Act of 1936.

TITLE VII—RESEARCH, EXTENSION, AND RELATED MATTERS

Subtitle A—National Agricultural Research, Extension, and Teaching Policy Act of
1977

Sec. 7101. Purposes of agricultural research, extension, and education.
Sec. 7102. Matters related to certain school designations and declarations.
Sec. 7103. National Agricultural Research, Extension, Education, and Economics
Advisory Board.
Sec. 7104. Specialty crop committee.

Sec.  7105.  Renewable energy committee discontinued.
Sec.  7106.  Veterinary services grant program.
Sec.  7107.  Grants and fellowships for food and agriculture sciences education.
Sec.  7108.  Agricultural and food policy research centers.
Sec.  7109.  Education grants to Alaska Native serving institutions and Native Ha-
             waiian serving institutions.
Sec.  7110.  Next generation agriculture technology challenge.
Sec.  7111.  Land-grant designation.
Sec.  7112.  Nutrition education program.
Sec.  7113.  Continuing animal health and disease research programs.
Sec.  7114.  Carryover of funds for extension at 1890 land-grant colleges, including
             Tuskegee University.
Sec.  7115.  Extension and agricultural research at 1890 land-grant colleges, includ-
             ing Tuskegee University.
Sec.  7116.  Reports on disbursement of funds for agricultural research and extension
             at 1862 and 1890 land-grant colleges, including Tuskegee University.
Sec.  7117.  Scholarships for students at 1890 institutions.
Sec.  7118.  Grants to upgrade agricultural and food sciences facilities at 1890 land-
             grant colleges, including Tuskegee University.
Sec.  7119.  Grants to upgrade agriculture and food sciences facilities and equipment
             at insular area land-grant institutions.
Sec.  7120.  New Beginning for Tribal Students.
Sec.  7121.  Hispanic-serving institutions.
Sec.  7122.  Binational agricultural research and development.
Sec.  7123.  Partnerships to build capacity in international agricultural research, ex-
             tension, and teaching.
Sec.  7124.  Competitive grants for international agricultural science and education
             programs.
Sec.  7125.  Limitation on indirect costs for agricultural research, education, and ex-
             tension programs.
Sec.  7126.  Research equipment grants.
Sec.  7127.  University research.
Sec.  7128.  Extension service.
Sec.  7129.  Supplemental and alternative crops; hemp.
Sec.  7130.  New Era Rural Technology program.
Sec.  7131.  Capacity building grants for NLGCA Institutions.
Sec.  7132.  Agriculture advanced research and development authority pilot.
Sec.  7133.  Aquaculture assistance programs.
Sec.  7134.  Rangeland research programs.
Sec.  7135.  Special authorization for biosecurity planning and response.
Sec.  7136.  Distance education and resident instruction grants program for insular
             area institutions of higher education.

            Subtitle B—Food, Agriculture, Conservation, and Trade Act of 1990

Sec.  7201.  Best utilization of biological applications.
Sec.  7202.  Integrated management systems.
Sec.  7203.  Sustainable agriculture technology development and transfer program.
Sec.  7204.  National training program.
Sec.  7205.  National strategic germplasm and cultivar collection assessment and uti-
             lization plan.
Sec.  7206.  National Genetics Resources Program.
Sec.  7207.  National Agricultural Weather Information System.
Sec.  7208.  Agricultural genome to phenome initiative.
Sec.  7209.  High-priority research and extension initiatives.
Sec.  7210.  Organic agriculture research and extension initiative.
Sec.  7211.  Farm business management.
Sec.  7212.  Urban, indoor, and other emerging agricultural production research, edu-
             cation, and extension initiative.
Sec.  7213.  Centers of excellence at 1890 Institutions.
Sec.  7214.  Clarification of veteran eligibility for assistive technology program for
             farmers with disabilities.
Sec.  7215.  National Rural Information Center Clearinghouse.

            Subtitle C—Agricultural Research, Extension, and Education Reform Act of 1998

Sec.  7301.  National food safety training, education, extension, outreach, and tech-
             nical assistance program.
Sec.  7302.  Integrated research, education, and extension competitive grants pro-
             gram.

O:\RYA\RYA18A16.xml [file 2 of 13]                    S.L.C.

8

Sec. 7303. Support for research regarding diseases of wheat, triticale, and barley caused by Fusarium graminearum or by Tilletia indica.
Sec. 7304. Grants for youth organizations.
Sec. 7305. Specialty crop research initiative.
Sec. 7306. Food Animal Residue Avoidance Database program.
Sec. 7307. Office of Pest Management Policy.
Sec. 7308. Forestry products advanced utilization research.

*Subtitle D—Food, Conservation, and Energy Act of 2008*

PART I—AGRICULTURAL SECURITY

Sec. 7401. Agricultural biosecurity communication center.
Sec. 7402. Assistance to build local capacity in agricultural biosecurity planning, preparation, and response.
Sec. 7403. Research and development of agricultural countermeasures.
Sec. 7404. Agricultural biosecurity grant program.

PART II—MISCELLANEOUS

Sec. 7411. Grazinglands research laboratory.
Sec. 7412. Farm and Ranch Stress Assistance Network.
Sec. 7413. Natural products research program.
Sec. 7414. Sun grant program.

*Subtitle E—Amendments to Other Laws*

Sec. 7501. Critical Agricultural Materials Act.
Sec. 7502. Equity in Educational Land-Grant Status Act of 1994.
Sec. 7503. Research Facilities Act.
Sec. 7504. Agriculture and Food Research Initiative.
Sec. 7505. Extension design and demonstration initiative.
Sec. 7506. Repeal of review of agricultural research service.
Sec. 7507. Biomass research and development.
Sec. 7508. Reinstatement of matching requirement for Federal funds used in extension work at the University of the District of Columbia.
Sec. 7509. Renewable Resources Extension Act of 1978.
Sec. 7510. National Aquaculture Act of 1980.
Sec. 7511. Federal agriculture research facilities.

*Subtitle F—Other Matters*

Sec. 7601. Enhanced use lease authority program.
Sec. 7602. Transfer of administrative jurisdiction over portion of Henry A. Wallace Beltsville Agricultural Research Center, Beltsville, Maryland.
Sec. 7603. Foundation for food and agriculture research.
Sec. 7604. Assistance for forestry research under the McIntire-Stennis Cooperative Forestry Act.
Sec. 7605. Legitimacy of industrial hemp research.
Sec. 7606. Collection of data relating to barley area planted and harvested.
Sec. 7607. Collection of data relating to the size and location of dairy farms.
Sec. 7608. Agriculture innovation center demonstration program.
Sec. 7609. Smith-Lever community extension program.
Sec. 7610. Mechanization and automation for specialty crops.
Sec. 7611. Experienced services program.
Sec. 7612. Simplified plan of work.
Sec. 7613. Review of land-grant time and effort reporting requirements.
Sec. 7614. Matching funds requirement.

*TITLE VIII—FORESTRY*

*Subtitle A—Cooperative Forestry Assistance Act of 1978*

Sec. 8101. Support for State assessments and strategies for forest resources.
Sec. 8102. State and private forest landscape-scale restoration program.

*Subtitle B—Forest and Rangeland Renewable Resources Research Act of 1978*

Sec. 8201. Repeal of recycling research.
Sec. 8202. Repeal of forestry student grant program.

*Subtitle C—Global Climate Change Prevention Act of 1990*

Sec. 8301. Repeals relating to biomass.

O:\RYA\RYA18A16.xml [file 2 of 13]                         S.L.C.

9

*Subtitle D—Healthy Forests Restoration Act of 2003*

Sec. 8401. Promoting cross-boundary wildfire mitigation.
Sec. 8402. Authorization of appropriations for hazardous fuel reduction on Federal land.
Sec. 8403. Repeal of biomass commercial utilization grant program.
Sec. 8404. Water Source Protection Program.
Sec. 8405. Watershed Condition Framework.
Sec. 8406. Authorization of appropriations to combat insect infestations and related diseases.
Sec. 8407. Healthy Forests Restoration Act of 2003 amendments.
Sec. 8408. Authorization of appropriations for designation of treatment areas.

*Subtitle E—Repeal or Reauthorization of Miscellaneous Forestry Programs*

Sec. 8501. Repeal of revision of strategic plan for forest inventory and analysis.
Sec. 8502. Semiarid agroforestry research center.
Sec. 8503. National Forest Foundation Act.
Sec. 8504. Conveyance of Forest Service administrative sites.

*Subtitle F—Forest Management*

Sec. 8601. Definition of National Forest System.

PART I—EXPEDITED ENVIRONMENTAL ANALYSIS AND AVAILABILITY OF CATEGORICAL EXCLUSIONS TO EXPEDITE FOREST MANAGEMENT ACTIVITIES

Sec. 8611. Categorical exclusion for greater sage-grouse and mule deer habitat.

PART II—MISCELLANEOUS FOREST MANAGEMENT ACTIVITIES

Sec. 8621. Additional authority for sale or exchange of small parcels of National Forest System land.
Sec. 8622. Forest Service participation in ACES program.
Sec. 8623. Authorization for lease of Forest Service sites.
Sec. 8624. Good neighbor authority.
Sec. 8625. Chattahoochee-Oconee National Forest land adjustment.
Sec. 8626. Tennessee wilderness.
Sec. 8627. Kisatchie National Forest land conveyance.
Sec. 8628. Purchase of Natural Resources Conservation Service property, Riverside County, California.
Sec. 8629. Collaborative Forest Landscape Restoration Program.
Sec. 8630. Utility infrastructure rights-of-way vegetation management pilot program.
Sec. 8631. Okhissa Lake rural economic development land conveyance.
Sec. 8632. Remote sensing technologies.

PART III—TIMBER INNOVATION

Sec. 8641. Definitions.
Sec. 8642. Clarification of research and development program for wood building construction.
Sec. 8643. Wood innovation grant program.
Sec. 8644. Community wood energy and wood innovation program.

*Subtitle G—Other Matters*

Sec. 8701. Rural revitalization technologies.
Sec. 8702. Resource Advisory Committees.
Sec. 8703. Tribal forest management demonstration project.
Sec. 8704. Technical corrections.
Sec. 8705. Streamlining the Forest Service process for consideration of communications facility location applications.
Sec. 8706. Report on wildfire, insect infestation, and disease prevention on Federal land.
Sec. 8707. West Fork Fire Station.
Sec. 8708. Competitive forestry, natural resources, and environmental grants program.

TITLE IX—ENERGY

Sec. 9001. Definitions.
Sec. 9002. Biobased markets program.
Sec. 9003. Biorefinery assistance.
Sec. 9004. Repowering assistance program.

O:\RYA\RYA18A16.xml [file 2 of 13]                    S.L.C.

10

Sec. 9005.  Bioenergy program for advanced biofuels.
Sec. 9006.  Biodiesel fuel education program.
Sec. 9007.  Rural Energy for America Program.
Sec. 9008.  Rural Energy Self-Sufficiency Initiative.
Sec. 9009.  Feedstock flexibility.
Sec. 9010.  Biomass Crop Assistance Program.
Sec. 9011.  Carbon utilization and biogas education program.

### TITLE X—HORTICULTURE

Sec. 10101.  Specialty crops market news allocation.
Sec. 10102.  Local agriculture market program.
Sec. 10103.  Organic production and market data initiatives.
Sec. 10104.  Organic certification.
Sec. 10105.  National organic certification cost-share program.
Sec. 10106.  Food safety education initiatives.
Sec. 10107.  Specialty crop block grants.
Sec. 10108.  Amendments to the Plant Variety Protection Act.
Sec. 10109.  Multiple crop and pesticide use survey.
Sec. 10110.  Report on the arrival in the United States of forest pests through restrictions on the importation of certain plants for planting.
Sec. 10111.  Report on plant biostimulants.
Sec. 10112.  Clarification of use of funds for technical assistance.
Sec. 10113.  Hemp production.
Sec. 10114.  Interstate commerce.
Sec. 10115.  FIFRA interagency working group.
Sec. 10116.  Study on methyl bromide use in response to an emergency event.

### TITLE XI—CROP INSURANCE

Sec. 11101.  Definitions.
Sec. 11102.  Data collection.
Sec. 11103.  Sharing of records.
Sec. 11104.  Use of resources.
Sec. 11105.  Specialty crops.
Sec. 11106.  Insurance period.
Sec. 11107.  Cover crops.
Sec. 11108.  Underserved producers.
Sec. 11109.  Treatment of forage and grazing.
Sec. 11110.  Administrative basic fee.
Sec. 11111.  Enterprise units.
Sec. 11112.  Continued authority.
Sec. 11113.  Submission of policies and materials to board.
Sec. 11114.  Crop production on native sod.
Sec. 11115.  Use of national agricultural statistics service data to combat waste, fraud, and abuse.
Sec. 11116.  Submission of information to corporation.
Sec. 11117.  Continuing education for loss adjusters and agents.
Sec. 11118.  Program administration.
Sec. 11119.  Agricultural commodity.
Sec. 11120.  Maintenance of policies.
Sec. 11121.  Reimbursement of research, development, and maintenance costs.
Sec. 11122.  Research and development authority.
Sec. 11123.  Funding for research and development.
Sec. 11124.  Technical amendment to pilot programs.
Sec. 11125.  Education and risk management assistance.
Sec. 11126.  Repeal of cropland report annual updates.

### TITLE XII—MISCELLANEOUS

#### Subtitle A—Livestock

Sec. 12101.  Animal disease prevention and management.
Sec. 12102.  Sheep production and marketing grant program.
Sec. 12103.  Feasibility study on livestock dealer statutory trust.
Sec. 12104.  Definition of livestock.
Sec. 12105.  National Aquatic Animal Health Plan.
Sec. 12106.  Veterinary training.
Sec. 12107.  Report on FSIS guidance and outreach to small meat processors.
Sec. 12108.  Regional Cattle and Carcass Grading Correlation and Training Centers.

O:\RYA\RYA18A16.xml [file 2 of 13]                                                S.L.C.

11

*Subtitle B—Agriculture and Food Defense*

Sec. 12201. Repeal of Office of Homeland Security.
Sec. 12202. Office of Homeland Security.
Sec. 12203. Agriculture and food defense.
Sec. 12204. Biological agents and toxins list.
Sec. 12205. Authorization of appropriations.

*Subtitle C—Historically Underserved Producers*

Sec. 12301. Farming opportunities training and outreach.
Sec. 12302. Urban agriculture.
Sec. 12303. Tribal Advisory Committee.
Sec. 12304. Beginning farmer and rancher coordination.
Sec. 12305. Agricultural youth organization coordinator.
Sec. 12306. Availability of Department of Agriculture programs for veteran farmers
           and ranchers.

*Subtitle D—Department of Agriculture Reorganization Act of 1994 Amendments*

Sec. 12401. Office of Congressional Relations and Intergovernmental Affairs.
Sec. 12402. Military Veterans Agricultural Liaison.
Sec. 12403. Civil rights analyses.
Sec. 12404. Farm Service Agency.
Sec. 12405. Under Secretary of Agriculture for Farm Production and Conservation.
Sec. 12406. Office of Partnerships and Public Engagement.
Sec. 12407. Under Secretary of Agriculture for Rural Development.
Sec. 12408. Administrator of the Rural Utilities Service.
Sec. 12409. Rural Health Liaison.
Sec. 12410. Natural Resources Conservation Service.
Sec. 12411. Office of the Chief Scientist.
Sec. 12412. Appointment of national appeals division hearing officers.
Sec. 12413. Trade and foreign agricultural affairs.
Sec. 12414. Repeals.
Sec. 12415. Technical corrections.
Sec. 12416. Termination of authority.

*Subtitle E—Other Miscellaneous Provisions*

PART I—MISCELLANEOUS AGRICULTURE PROVISIONS

Sec. 12501. Acer access and development program.
Sec. 12502. Protecting animals with shelter.
Sec. 12503. Marketing orders.
Sec. 12504. Establishment of food loss and waste reduction liaison.
Sec. 12505. Report on business centers.
Sec. 12506. Report on personnel.
Sec. 12507. Report on absent landlords.
Sec. 12508. Century farms program.
Sec. 12509. Report on importation of live dogs.
Sec. 12510. Tribal Promise Zones.
Sec. 12511. Precision agriculture connectivity.
Sec. 12512. Improvements to United States Drought Monitor.
Sec. 12513. Dairy business innovation initiatives.
Sec. 12514. Report on funding for the National Institute of Food and Agriculture
           and other extension programs.
Sec. 12515. Prohibition on slaughter of dogs and cats for human consumption.
Sec. 12516. Labeling exemption for single ingredient foods and products.
Sec. 12517. South Carolina inclusion in Virginia/Carolina peanut producing re-
           gion.
Sec. 12518. Forest Service hire authority.
Sec. 12519. Conversion authority.
Sec. 12520. Authorization of protection operations for the Secretary of Agriculture
           and others.

PART II—NATIONAL OILHEAT RESEARCH ALLIANCE

Sec. 12531. National oilheat research alliance.

*Subtitle F—General Provisions*

Sec. 12601. Baiting of migratory game birds.
Sec. 12602. Pima agriculture cotton trust fund.
Sec. 12603. Agriculture wool apparel manufacturers trust fund.

O:\RYA\RYA18A16.xml [file 2 of 13]                           S.L.C.

12

Sec. 12604. Wool research and promotion.
Sec. 12605. Emergency Citrus Disease Research and Development Trust Fund.
Sec. 12606. Extension of merchandise processing fees.
Sec. 12607. Reports on land access and farmland ownership data collection.
Sec. 12608. Reauthorization of rural emergency medical services training and equipment assistance program.
Sec. 12609. Commission on Farm Transitions—Needs for 2050.
Sec. 12610. Exceptions under United States Grain Standards Act.
Sec. 12611. Conference report requirement threshold.
Sec. 12612. National agriculture imagery program.
Sec. 12613. Report on inclusion of natural stone products in Commodity Promotion, Research, and Information Act of 1996.
Sec. 12614. Establishment of food access liaison.
Sec. 12615. Eligibility for operators on heirs property land to obtain a farm number.
Sec. 12616. Extending prohibition on animal fighting to the territories.
Sec. 12617. Exemption of exportation of certain echinoderms from permission and licensing requirements.
Sec. 12618. Data on conservation practices.
Sec. 12619. Conforming changes to Controlled Substances Act.

**SEC. 2. DEFINITION OF SECRETARY.**

In this Act, the term "Secretary" means the Secretary of Agriculture.

# TITLE I—COMMODITIES

## Subtitle A—Commodity Policy

**SEC. 1101. DEFINITION OF EFFECTIVE REFERENCE PRICE.**

Section 1111 of the Agricultural Act of 2014 (7 U.S.C. 9011) is amended—

(1) by redesignating paragraphs (8) through (25) as paragraphs (9) through (26), respectively; and

(2) by inserting after paragraph (7) the following:

"(8) EFFECTIVE REFERENCE PRICE.—The term 'effective reference price', with respect to a covered commodity for a crop year, means the lesser of the following:

"(A) An amount equal to 115 percent of the reference price for such covered commodity.

"(B) An amount equal to the greater of—

"(i) the reference price for such covered commodity; or

"(ii) 85 percent of the average of the marketing year average price of the covered commodity for the most recent 5 crop years, excluding each of the crop years with the highest and lowest marketing year average price.".

**SEC. 1102. BASE ACRES.**

(a) TECHNICAL CORRECTIONS.—Section 1112(c)(2) of the Agricultural Act of 2014 (7 U.S.C. 9012(c)(2)) is amended by striking subparagraph (A) and inserting the following:

"(A) Any acreage on the farm enrolled in—

"(i) the conservation reserve program established under subchapter B of chapter 1 of subtitle D of title XII of the Food Security Act of 1985 (16 U.S.C. 3831 et seq.); or

total of the Federal funds provided does not exceed the 30 percent limitation. (Section 7120)

      The Senate amendment contains no comparable provision.

      The Conference substitute adopts the House provision.  (Section 7125)

*(16) Supplemental and alternative crops*

      The House bill amends section 1473D of NARETPA to reauthorize appropriations through fiscal year 2023 for the competitive grants program to develop supplemental and alternative crops.  It amends the program to include canola and alternative crops "for agronomic rotational purposes and for use as a habitat for honey bees and other pollinators". (Section 7124)

      The Senate amendment is substantially similar to the House bill and also provides that the Secretary may award grants and enter into agreement or other arrangements to conduct research related to the development of industrial hemp as well as the development of new and emerging commercial products derived from hemp. (Section 7125)

      The Conference substitute adopts the Senate provision with an amendment to increase the authorization of appropriations to $2 million for each of fiscal years 2019 through 2023.  (Section 7129)

*(17) New era rural technology program*

      The Senate amendment amends section 1473E of NARETPA to reauthorize the New Era Rural Technology Program for fiscal years 2019 through 2023 and adds precision agriculture to the areas of technology development, applied research, and training supported under the program. (Section 7126)

      The House bill contains no comparable provision.

      The Conference substitute adopts the Senate provision.  (Section 7130)

*(18) Agriculture advanced research and development authority pilot (AGARDA)*

      The Senate amendment adds a new section 1473H to NARETPA to establish the Agriculture Advanced Research and Development Authority (AGARDA) under the Office of Chief Scientist. "Advanced research and development" is defined as activities to overcome long-term and high-risk research challenges in agriculture and food through acceleration of innovative agricultural research or the development of qualified products and projects or agricultural technologies.  The Senate amendment directs the Secretary to develop a strategic plan for AGARDA and disseminate the information in the plan to those who can best contribute to the activities described in the strategic plan. It permits the Secretary to use "other transaction authority" to expedite awarding grants and entering into contracts. The provision permits the Secretary to appoint highly qualified individuals without regard to certain sections of the U.S. Code governing appointments in the competitive service and without regard to the General Schedule pay rates and authorizes establishment of the AGARDA Fund in the U.S. Treasury administered by the Chief Scientist to carry out this section. The provision permits the Secretary to accept and deposit monies received from cost recovery or contribution into the AGARDA Fund. The authority under this new section terminates on September 30, 2023. (Section 7128)

      The House bill contains no comparable provision.

      The Conference substitute adopts the Senate provision with amendments that (1)

Similar to the House bill, the Senate amendment expands the specialty crop research and extension initiative to include additional production practices and technologies. (Section 7305)

The Conference substitute adopts the Senate provision. (Section 7305)

The Managers recognize that the funding for research programs for specialty crops should generally be made available to all specialty crops and not include carve-outs or set-asides for any one particular specialty crop. The Managers also acknowledge the unique challenges presently facing the citrus industry in the United States with respect to HLB and the Asian Citrus Psyllid vector. In direct response to a joint request from the leadership of the citrus industry and other specialty crop stakeholders, the Managers have agreed to establish a Citrus Trust Fund to support the Emergency Citrus Disease Research and Extension Program for one additional five-year period. The Managers intend for this program to address this challenge at this particular time and do not intend for such program to continue in perpetuity.

The Managers are aware of concerns that prioritizing grants that are multi-state, multi-institutional, or multi-disciplinary disproportionately impacts the funding success of projects for certain commodities grown only in one state. The Managers encourage the Secretary to take appropriate steps to ensure that meritorious proposals are not denied solely because they lack one of the enumerated priorities.

*(35) Critical agricultural materials act*

The House bill reauthorizes appropriations for fiscal years 2019 through 2023. (Section 7501)

The Senate amendment specifies that hemp, as defined in section 297A of the Agricultural Marketing Act of 1946, is eligible for funding under the Critical Agricultural Materials Act. The Secretary shall conduct, sponsor, promote, and coordinate basic and applied research for the development of critical agricultural materials from agricultural crops having strategic and industrial importance, including for hemp. The Senate amendment also reauthorizes appropriations for fiscal years 2019 through FY 2023. (Section 7401)

The Conference substitute adopts the Senate provision.  (Section 7501)

*(36) Equity in Educational Land-Grant Status Act of 1994*

The House bill amends section 532 of the Equity in Educational Land-Grant Status Act of 1994 to add to and update the defined list of 36 tribal colleges as "1994 Institutions." The House bill reauthorizes endowment funding, capacity-building grants, and research grants for the 36 tribal colleges for fiscal years 2019 through 2023. (Section 7502)

The Senate amendment is substantially similar to the House bill with technical differences.

The Conference substitute adopts the House provision with an amendment specifying that the effective date for the updated list shall be the date of enactment. (Section 7502)

*(37) Research Facilities Act*

*(5) Plant variety protection*

The House bill defines the term "asexually reproduced", adds asexual multiplication as an act constituting infringement of plant variety protection, and protects asexual reproducible plant material from certain acts in connection with sale, offering for sale or advertising. (Section 9005)

The Senate amendment is identical to section 9005(b) of the House bill. (Section 10108)

The Conference substitute adopts the House provision. (Section 10108)

The Managers recognize the importance of expanding the scope of the Plant Variety Protection Act to provide the same rights and protections provided to breeders of asexually propagated plants. The Managers expect the Department of Agriculture to promulgate the necessary rules and guidance to implement these amendments to the Plant Variety Protection Act no later than 1 year after the date of enactment of this Act.

*(6) Multiple crop and pesticide use survey*

The Senate amendment authorizes a multiple crop and pesticide use survey. (Section 10109)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment with modification to include $500,000 of CCC funding for FY 2019, to remain available until expended. (Section 10109)

The Managers recognize the importance of crop protection tools as crucial technologies for helping farmers prevent, manage, and eradicate pests and plant diseases that threaten crop production yields. The Managers intend for the Secretary of Agriculture, acting through the Office of Pest Management Policy, to conduct crop and pesticide use surveys for a variety of crops for the use of risk assessment modeling and mitigation for active ingredients. The Managers intend for the multiple crop and pesticide use surveys to be conducted frequently and in a timely manner to allow the Office of Pest Management Policy sufficient time to respond to the Environmental Protection Agency's 60-day comment periods related to pesticide registrations. The Managers direct the Secretary of Agriculture to work with the Office of Management & Budget (OMB) to gain approval of a generic clearance for the purposes of this provision to meet the requirements of information collection review under the Paperwork Reduction Act (and as outlined in an April 7, 2010, OMB Memorandum for the Heads of Executive Departments and Agencies, and Independent Regulatory Agencies regarding information collection under the Paperwork Reduction Act). The generic clearance is necessary for the Department of Agriculture to gather and accurately communicate to the Environmental Protection Agency information regarding the agricultural community's actual use patterns and mitigations in order for the Environmental Protection Agency's final decisions to be more probabilistic and therefore more accurate and data based.

*(7) Clarification of use of funds for technical assistance*

The Senate amendment excludes technical assistance under this title of the 2018 farm bill from section 111 CCC cap. (Section 10110)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment. (Section 10112)

*(8) Hemp production*

The Senate amendment provision amends the Agricultural Marketing Act of 1946 to allow States to regulate hemp production based on a state or tribal plan. The amendment requires that such plan includes information on locations of hemp production, testing for THC concentration, disposal of plants that are out of compliance, and negligence or other violations of the state or tribal plan. It requires the Secretary to establish a plan, in consultation with the U.S. Attorney General, for States and tribes without USDA approved plans to monitor and regulate hemp production. The section clarifies that nothing in this subtitle affects or modifies the Federal Food, Drug, and Cosmetic Act or authorities of the HHS Secretary and FDA Commissioner and clarifies that nothing in this title authorizes interference with the interstate commerce of hemp. (Sections 10111 & 10112)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision with amendment, including auditing authority and a grandfather clause regarding program participation. (Sections 10113 and 10114)

In Sec. 297A, the Managers intend to clarify, within the hemp production subtitle, that hemp is defined as the plant cannabis sativa L, or any part of that plant, including seeds, derivatives, and extracts, with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis.

In Sec. 297B, the Managers intend to authorize states and tribal governments to submit a state plan to the Secretary for approval to have primary regulatory authority over the growing and production of hemp. The Managers do not intend to limit what states and tribal governments include in their state or tribal plan, as long as it is consistent with this subtitle. For example, states and tribal governments are authorized to put more restrictive parameters on the production of hemp, but are not authorized to alter the definition of hemp or put in place policies that are less restrictive than this title.

Within 60 days of receiving a state or tribal plan, the Secretary must approve or deny the plan. The Secretary is required to consult with the Attorney General regarding the approval or denial of state plans, but the Managers intend for the final decision to be made by the Secretary. The consultation with the Attorney General should not alter the 60 day requirement to approve or deny a plan.

The Managers authorized the Secretary to audit state and tribal compliance with an approved plan and take corrective action, including revoking approval, based on a state or tribal government's noncompliance, as appropriate. The Managers intend to allow state and tribal governments to appeal decisions by the Secretary pertaining to a state or tribal plan for hemp production and do not intend to preclude a state or tribal government from resubmitting a new state or tribal plan for consideration at a later date. If a state or tribal plan is denied or revoked, the Managers intend for hemp production in that state or tribal area to fall under the Secretary's jurisdiction as authorized in section 297C.

The Secretary is authorized to provide technical assistance to states and Indian tribes to aid in the development of a state or tribal plan.

The Managers define negligent and other types of producer violations that require enforcement under a state or tribal plan. The Managers also set limits on who may participate in state or tribal plans. Any person convicted of a felony relating to a controlled substance shall be ineligible to participate under the state or tribal plan for a

10-year period following the date of the conviction. However, this prohibition shall not apply to producers who have been lawfully participating in a state hemp pilot program as authorized by the Agricultural Act of 2014, prior to enactment of this subtitle. Subsequent felony convictions after the date of enactment of this subtitle will trigger a 10-year nonparticipation period regardless of whether the producer participated in the pilot program authorized in 2014. Additionally, anyone who materially falsifies any information in their application to participate in hemp production through a state, tribal, or USDA plan shall be ineligible.

In Sec. 297C, the Managers intend to require the Secretary to develop a USDA plan or plans to be implemented in states and tribal territories that forego developing and submitting a state or tribal hemp production plan. The Managers expect the USDA plan or plans to meet the same content requirements as state and tribal plans in Sec. 297B. The USDA plan may contain, as determined by the Secretary, additional practices and procedures that are otherwise consistent with this subtitle. It is the Managers intent that the Secretary have discretion regarding the appropriate number of plans, one or more than one, needed to implement Sec. 297C.

The Managers require the Secretary to collect, maintain, and make accessible to Federal, state, territorial, and local law enforcement, real-time information regarding the status of a license or other authorization for all hemp producers, whether participating under a state, tribal, or USDA plan. The Managers encourage the Secretary to develop a memorandum of understanding with Federal law enforcement agencies to define the parameters of this system and to potentially share the costs of such information sharing system.

In Sec. 297D, the Managers clarify that the Secretary has the sole authority to issue guidelines and regulations regarding the production of hemp. However, nothing in this subtitle shall affect or modify the authority granted to the Food and Drug Administration and the Secretary of Health and Human Services under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.) or section 351 of the Public Health Service Act (42 U.S.C. 262), including for hemp-derived products. The Secretary is required to consult with the Attorney General on the promulgation of regulations, but ultimately, the regulations shall only be issued by the Secretary of Agriculture. To ensure that the Secretary moves forward with issuing regulations in as timely a fashion as possible, the Secretary shall periodically report to Congress with updates regarding implementation of this title.

While states and Indian tribes may limit the production and sale of hemp and hemp products within their borders, the Managers, in Sec. 10112, agreed to not allow such states and Indian tribes to limit the transportation or shipment of hemp or hemp products through the state or Indian territory.

*(9) Recognition and role of State lead agencies*

The House bill amends section 2(aa) of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") to include a definition of "State lead agency" for the purposes of FIFRA. It amends section 22(b) of FIFRA by limiting regulations to those promulgated by the EPA or within the authority of a State lead agency. The subsection further amends section 23(a)(1) of FIFRA to authorize States or Tribes to establish and maintain uniform regulation of pesticide through cooperative agreement with the Administrator of the EPA ("Administrator"). The section further amends section 24(a) of

the FIFRA to restrict the authority of a political subdivision of a State to regulate a pesticide beyond the Federal limits. Additionally the House bill amends section 25(a)(2) of FIFRA by requiring the Administrator to publish any comments regarding prescribed regulations promulgated pursuant to FIFRA from the Secretary or any State lead agency in the *Federal Register,* including any response to the comments, if such comments are received within 30 days of receipt of a copy of any such regulation. The section further allows for the Secretary or a State lead agency to request that any comments sent to the Administrator regarding prescribed regulations promulgated pursuant to FIFRA within 15 days of receipt of a copy of the regulation, including any responses to the comments, be published in the *Federal Register.* (Section 9101)

The Senate amendment contains no comparable provision.

The Conference substitute deletes the House provision.

### *(10) Pesticide registration and use*

The House bill amends section 3(c)(5) of the FIFRA to require the Administrator of the EPA to register a pesticide if the Administrator determines that the pesticide, when used in accordance with widespread and commonly recognized practices, is not likely to jeopardize the survival of a federally listed threatened or endangered species or to alter habitat critical for the survival or recovery of such species. It further amends section 3 to require the Administrator to use the best scientific and commercial information available, which may include species and habitat information from the Secretary of Interior or Secretary of Commerce, and consider all restrictions on use when considering the criteria for the registration of a pesticide. The Administrator shall not be required to consult or communicate with the Secretary of the Interior or the Secretary of Commerce under the authority of any other statute when making such determination, unless otherwise petitioned by the registrant of the pesticide. The House bill amends section 3(c)(7) of FIFRA to require the Administrator to conditionally register or amend the registration of a pesticide under special circumstances if the Administrator determines that the pesticide, when used in accordance with widespread and commonly recognized practices, is not likely to jeopardize the survival of a federally listed threatened or endangered species or to alter habitat critical for the survival or recovery of such species. The House bill amends section 3(g)(1)(A) of FIFRA to require the Administrator to complete the determination, and subsequent periodic reviews, that a pesticide, when used in accordance with widespread and commonly recognized practices, is not likely to jeopardize the survival of a federally listed threatened or endangered species or to alter habitat critical for the survival or recovery of such species, over the following schedule: by October 1, 2026 for an active ingredient first registered on or before October 1, 2007; by October 1, 2033 for an active ingredient first registered between October 1, 2007 and the day before enactment; and not later than 48 months after the effective date of registration for an active ingredient registered on or after the date of enactment. The House bill amends section 5(a) of FIFRA to require the Administrator, when issuing an experimental use permit for a pesticide, to determine that the pesticide, when used in accordance with widespread and commonly recognized practices, is not likely to jeopardize the survival of a federally listed threatened or endangered species or to alter habitat critical for the survival or recovery of such species. The House bill amends section 6(b) of FIFRA to require the Administrator, when issuing a notice to cancel or change the classification of a pesticide, to determine that the pesticide, when used in

The House bill contains no comparable provision.

The Conference substitute deletes the Senate amendment.

*(25) Program administration*

The House bill reduces the amount that FCIC may use under section 516(b)(2)(C)(i) to not more than $7 million per fiscal year. (Section 11119)

The Senate amendment contains no comparable provision.

The Conference substitute adopts the House provision. (Section 11118)

*(26) Agricultural commodity*

The Senate amendment adds hemp to the list of commodities enumerated in section 518. (Section 11120)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment. (Section 11119)

The Managers expect that in determining the insurability of a crop of hemp under the Act, and in providing insurance options to hemp producers, RMA will collaborate with the appropriate USDA, state, or tribal authorities as necessary to do so consistent with the regulations and guidelines established in subtitle G of the Agricultural Marketing Act of 1946. The Managers note that USDA or the appropriate state or tribal authority, and not AIPs, agents, or loss adjusters, bear the responsibility of determining that a crop grown as hemp complies with the applicable regulations and guidelines under Subtitle G.

The Managers also intend for "aquacultural species" to include algae species as determined appropriate by the Board.

*(27) Maintenance of policies; Reimbursement of research, development, and maintenance costs*

House bill section 10007(a) amends section 522(b) of the Act to—

(1) allow for reimbursement of "reasonable and actual research and development costs" for policies that have been approved by the FCIC Board;

(2) require that costs of the applicant shall be considered "reasonable and actual costs" if the costs are based on—

(A) wage rates equal to 2 times the hourly wage rate plus benefits, as provided by the Bureau of Labor Statistics; or

(B) actual documented costs incurred by the applicant;

(3) designate the applicant (as opposed to the AIP) authority to determine whether to maintain a policy, and to establish the fee to be paid for maintenance of the policy;

(4) require the FCIC Board to approve the amount of a fee unless the Board determines, based on substantial evidence in the record, that the amount of the fee unnecessarily inhibits the use of the policy; and

(5) prohibit the FCIC Board from disapproving a user fee based on its comparison to a maintenance fee, or on the potential for the fee to result in a financial gain or loss to the applicant.

The House bill also provides that the amendments shall apply to reimbursement requests made on or after October 1, 2016, and that requests for reimbursement previously denied between October 1, 2016, and the date of enactment of this Act may be resubmitted. (Section 10007).

The Senate amendment contains no comparable provision.

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision. (Section 12606)

*(65) Conforming changes to controlled substances act*

The Senate amendment amends the existing exemptions to include hemp as defined in section 297A of the Agricultural Marketing Act of 1946 and tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946). (Section 12608)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision. (Section 12619)

*(66) National flood insurance program reauthorization*

The Senate amendment extends financing authority of the program through January 31, 2019 and extends the program through January 31, 2019. (Section 12609)

The House bill contains no comparable provision.

The Conference substitute does not adopt the Senate provision.

*(67) Eligibility for operators on heirs property land to obtain a farm number*

The Senate amendment defines "eligible documentation" to include: (1) in states that have adopted the Uniform Partition of Heirs Property Act, a court order verifying the land meets the definition of heirs property or certification from the local recorder of deeds that the recorded landowner is deceased and not less than one heir has initiated a procedure to retitle the land; (2) a tenancy-in-common agreement that sets out ownership rights and responsibilities among all of the land owners; (3) tax returns for the preceding five years; (4) self-certification that the farm operator has control of the land; and (5) any other documentation identified by the Secretary as an alternative form of eligible documentation.

The Senate provision also requires the Secretary to provide for the assignment of a farm number to any farm operator who provides an form of eligible documentation, for purposes of demonstrating that the farm operator has control of the land for purpose of defining that land as a farm, and requires the Secretary to identify alternative forms of eligible documentation that a farm operator may provide in seeking the assignment of a farm number. (Section 12623)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision. (Section 12615)

The Managers recognize that farm operators on land that has been passed down through multiple generations without formal probate proceedings may not have clear title to the land. The Managers intend for this section to ensure operators of such land, commonly referred to as heirs' property, who provide certain documentation to the Secretary are eligible to receive farm numbers for the purposes of accessing programs offered by the Farm Service Agency, Natural Resources Conservation Service, and Risk Management Agency. In determining States that have enacted or adopted the Uniform Partition of Heirs Property Act, the Managers intend that USDA consider "State" to mean any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands of the United States, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, Republic of Palau, Federated States of Micronesia, and the Republic of the Marshall Islands.



| United States | Office of the | Washington, |
|---|---|---|
| **Department of** | **General** | **D.C.** |
| **Agriculture** | **Counsel** | **20250-1400** |

**STEPHEN ALEXANDER VADEN**

**GENERAL COUNSEL**

May 28, 2019

MEMORANDUM

SUBJECT:         EXECUTIVE SUMMARY OF NEW HEMP AUTHORITIES

On December 20, 2018, President Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. 115-334 (2018 Farm Bill). The 2018 Farm Bill legalized hemp production for all purposes within the parameters laid out in the statute.

The Office of the General Counsel (OGC) has issued the attached legal opinion to address questions regarding several of the hemp-related provisions of the 2018 Farm Bill, including: a phase-out of the industrial hemp pilot authority in the Agricultural Act of 2014 (2014 Farm Bill) **(Section 7605)**; an amendment to the Agricultural Marketing Act of 1946 to allow States and Indian tribes to regulate hemp production or follow a Department of Agriculture (USDA) plan regulating hemp production **(Section 10113)**; a provision ensuring the free flow of hemp in interstate commerce **(Section 10114)**; and the removal of hemp from the Controlled Substances Act **(Section 12619)**.

The key conclusions of the OGC legal opinion are the following:

1. As of the enactment of the 2018 Farm Bill on December 20, 2018, hemp has been removed from schedule I of the Controlled Substances Act and is no longer a controlled substance.

2. After USDA publishes regulations implementing the new hemp production provisions of the 2018 Farm Bill contained in the Agricultural Marketing Act of 1946, States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under a State or Tribal plan or under a license issued under the USDA plan.

3. States and Indian tribes also may not prohibit the interstate transportation or shipment of hemp lawfully produced under the 2014 Farm Bill.

4. A person with a State or Federal felony conviction relating to a controlled substance is subject to a 10-year ineligibility restriction on producing hemp under the Agricultural Marketing Act of 1946. An exception applies to a person who was lawfully growing hemp under the 2014 Farm Bill **before December 20, 2018**, and whose conviction also occurred before that date.

**EXHIBIT**

3

MEMORANDUM
May 28, 2019
Page 2

With the enactment of the 2018 Farm Bill, hemp may be grown only (1) with a valid USDA-issued license, (2) under a USDA-approved State or Tribal plan, or (3) under the 2014 Farm Bill industrial hemp pilot authority. That pilot authority will expire one year after USDA establishes a plan for issuing USDA licenses under the provisions of the 2018 Farm Bill.

It is important for the public to recognize that the 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the **production** of hemp that are more stringent than Federal law. Thus, while a State or an Indian tribe cannot block the shipment of hemp through that State or Tribal territory, it may continue to enforce State or Tribal laws prohibiting the growing of hemp in that State or Tribal territory.

It is also important to emphasize that the 2018 Farm Bill does not affect or modify the authority of the Secretary of Health and Human Services or Commissioner of Food and Drugs to regulate hemp under applicable U.S. Food and Drug Administration (FDA) laws.

USDA expects to issue regulations implementing the new hemp production authorities in 2019.

Attachment



| United States | Office of the | Washington, |
| Department of | General | D.C. |
| Agriculture | Counsel | 20250-1400 |

**STEPHEN ALEXANDER VADEN**
**GENERAL COUNSEL**

May 28, 2019

MEMORANDUM FOR SONNY PERDUE
                    SECRETARY OF AGRICULTURE

SUBJECT:        LEGAL OPINION ON CERTAIN PROVISIONS OF THE
                    AGRICULTURE IMPROVEMENT ACT OF 2018 RELATING TO
                    HEMP

This memorandum provides my legal opinion on certain provisions of the Agriculture
Improvement Act of 2018 ("2018 Farm Bill"), Pub. L. No. 115-334, relating to hemp.

As explained below, this memorandum concludes the following:

1.  As of the enactment of the 2018 Farm Bill on December 20, 2018, hemp has been
    removed from schedule I of the Controlled Substances Act ("CSA") and is no longer a
    controlled substance.  Hemp is defined under the 2018 Farm Bill to include any cannabis
    plant, or derivative thereof, that contains not more than 0.3 percent delta-9
    tetrahydrocannabinol ("THC") on a dry-weight basis.

2.  After the Department of Agriculture ("USDA" or "Department") publishes regulations
    implementing the hemp production provisions of the 2018 Farm Bill contained in subtitle
    G of the Agricultural Marketing Act of 1946 ("AMA"), States and Indian tribes may not
    prohibit the interstate transportation or shipment of hemp lawfully produced under a State
    or Tribal plan or under a license issued under the Departmental plan.

3.  States and Indian tribes may not prohibit the interstate transportation or shipment of
    hemp lawfully produced under the Agricultural Act of 2014 ("2014 Farm Bill").

4.  A person with a State or Federal felony conviction relating to a controlled substance is
    subject to a 10-year ineligibility restriction on producing hemp under subtitle G of the
    AMA.  An exception applies to a person who was lawfully growing hemp under the 2014
    Farm Bill before December 20, 2018, and whose conviction also occurred before that
    date.

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 2

This memorandum also emphasizes two important aspects of the 2018 Farm Bill provisions relating to hemp. First, the 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the **production** (but not the interstate transportation or shipment) of hemp that are more stringent than Federal law. For example, a State law prohibiting the growth or cultivation of hemp may continue to be enforced by that State. Second, the 2018 Farm Bill does not affect or modify the authority of the Secretary of Health and Human Services or Commissioner of Food and Drugs under applicable U.S. Food and Drug Administration laws.

## I.    BACKGROUND

The 2018 Farm Bill, Pub. L. No. 115-334, enacted on December 20, 2018, includes several provisions relating to hemp.[1] This legal opinion focuses on sections 7605, 10113, 10114, and 12619, summarized below.

- **Section 7605** amends section 7606 of the 2014 Farm Bill (7 U.S.C. § 5940), which authorizes institutions of higher education or State departments of agriculture to grow or cultivate industrial hemp under certain conditions — namely, if the hemp is grown or cultivated for research purposes in a State that allows hemp production. Among other things, section 7605 amends 2014 Farm Bill § 7606 to require the Secretary of Agriculture ("Secretary") to conduct a study of these hemp research programs and submit a report to Congress. Section 7605 also repeals 2014 Farm Bill § 7606, effective one year after the date on which the Secretary establishes a plan under section 297C of the AMA.[2]

- **Section 10113** amends the AMA by adding a new subtitle G (sections 297A through 297E) (7 U.S.C. §§ 1639o – 1639s) relating to hemp production. Under this new authority, a State or Indian tribe that wishes to have primary regulatory authority over the production of hemp in that State or territory of that Indian tribe may submit, for the approval of the Secretary, a plan concerning the monitoring and regulation of such hemp production. *See* AMA § 297B. For States or Indian tribes that do not have approved plans, the Secretary is directed to establish a Departmental plan concerning the monitoring and regulation of hemp production in those areas. *See* AMA § 297C. The

---

[1] The 2014 Farm Bill defines **"industrial hemp"** as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(a)(2). The 2018 Farm Bill added a new, slightly different definition of **"hemp"** in section 297A of the AMA, defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Both definitions require a THC concentration of not more than 0.3 percent for a Cannabis sativa L. plant to be considered hemp versus marijuana. For purposes of this legal opinion, I use the terms **"hemp"** and **"industrial hemp"** interchangeably.

[2] The Conference Report accompanying the 2018 Farm Bill explains the effect of the repeal as follows: "The provision also repeals the hemp research pilot programs one year after the Secretary publishes a final regulation allowing for full-scale commercial production of hemp as provided in section 297C of the [AMA]." H.R. REP. NO. 115-1072, at 699 (2018).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 3

Secretary is also required to promulgate regulations and guidelines implementing subtitle
G. *See* AMA § 297D.  The new authority also provides definitions (*see* AMA § 297A)
and an authorization of appropriations (*see* AMA § 297E).

- **Section 10114** (7 U.S.C. § 1639o note) is a freestanding provision stating that nothing in
title X of the 2018 Farm Bill prohibits the interstate commerce of hemp or hemp
products.  Section 10114 also provides that States and Indian tribes shall not prohibit the
interstate transportation or shipment of hemp or hemp products produced in accordance
with subtitle G through the State or territory of the Indian tribe.

- **Section 12619** amends the CSA to exclude hemp from the CSA definition of marijuana.
Section 12619 also amends the CSA to exclude THC in hemp from Schedule I.[3]

In passing the 2018 Farm Bill, Congress legalized hemp production for all purposes within the
parameters of the statute but reserved to the States and Indian tribes authority to enact and
enforce more stringent laws regulating production of hemp.

## II.   ANALYSIS

### A.   As of the Enactment of the 2018 Farm Bill on December 20, 2018, Hemp Has Been Removed from Schedule I of the Controlled Substances Act and Is No Longer a Controlled Substance.

CSA § 102(6) defines "controlled substance" to mean "a drug or other substance, or immediate
precursor, included in schedule I, II, III, IV, or V of part B of this title. . . ." 21 U.S.C. § 802(6).
Marijuana[4] is a controlled substance listed in schedule I of the CSA.  *See* CSA § 202(c)(10),
schedule I (21 U.S.C. § 812(c), Schedule I (c)(10)); 21 C.F.R. § 1308.11(d)(23).

The 2018 Farm Bill amended the CSA in two ways.

- First, 2018 Farm Bill § 12619(a) amended the CSA definition of marijuana to exclude
hemp.  Before enactment of the 2018 Farm Bill, CSA § 102(16) (21 U.S.C. § 802(16))
defined marijuana as follows:

(16) The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing
or not; the seeds thereof; the resin extracted from any part of such plant; and every compound,
manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.  Such term
does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake
made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture,
or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake,

---

[3] For additional background on hemp production prior to enactment of the 2018 Farm Bill, *see* Congressional
Research Service, "Hemp as an Agricultural Commodity" (RL32725) (updated July 9, 2018), *available at*
https://crsreports.congress.gov/product/pdf/RL/RL32725.

[4] This opinion uses the common spelling of "marijuana" except when quoting the CSA, which uses the "marihuana"
spelling.

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 4

or the sterilized seed of such plant which is incapable of germination.

As amended by the 2018 Farm Bill, the CSA definition of marijuana now reads:

(A) Subject to subparagraph (B), the term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

(B) The term 'marihuana' does not include—

(i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946; or

(ii) the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

- Second, 2018 Farm Bill § 12619(b) amended the CSA to exclude THC in hemp from the term "tetrahydrocannabinols" in schedule I. As amended by the 2018 Farm Bill, CSA § 202(c)(17), schedule I (21 U.S.C. § 812(c)(17), schedule I) now reads:

Tetrahydrocannabinols, except for tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946).

By amending the definition of marijuana to exclude hemp as defined in AMA § 297A, Congress has removed hemp from schedule I and removed it entirely from the CSA. In other words, hemp is no longer a controlled substance. Also, by amending schedule I to exclude THC in hemp, Congress has likewise removed THC in hemp from the CSA.

It is important to note that this decontrolling of hemp (and THC in hemp) is self-executing. Although the CSA implementing regulations must be updated to reflect the 2018 Farm Bill amendments to the CSA, neither the publication of those updated regulations nor any other action is necessary to execute this removal.

I address here two principal objections to the view that the decontrolling of hemp is self-executing. The first objection is that, because regulations have not been published under CSA § 201, the legislative changes to schedule I regarding hemp are not effective. This objection is not valid.

The typical process for amending the CSA schedules is through rulemaking. Under CSA § 201(a), the Attorney General "may by rule" add to, remove from, or transfer between the schedules, any drugs or other substances upon the making of certain findings. 21 U.S.C. § 811(a). However, the schedules also can be amended directly by Congress through changes to the statute; and Congress has done so several times.[5]

_____

[5] See, e.g., Pub. L. 112-144, § 1152 (amending schedule I to add cannabimimetic agents); Pub. L. 101-647, § 1902(a) (amending schedule III to add anabolic steroids).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 5

The second objection is that, because the legislative changes to schedule I regarding hemp are not yet reflected in 21 C.F.R. § 1308.11, the removal is not yet effective. This objection also is not valid.

It is axiomatic that statutes trump regulations. *See Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006) ("[A] valid statute always prevails over a conflicting regulation[.]"). Congress established the five CSA schedules in statute, providing that "[s]uch schedules shall initially consist of the substances listed in this section." 21 U.S.C. § 812(a).[6] Congress further provided that "[t]he schedules established by this section shall be updated and republished on a semiannual basis during the two-year period beginning one year after October 27, 1970, and shall be updated and republished on an annual basis thereafter." 21 U.S.C. § 812(a). The requirement to update and republish the schedules, however, is not a prerequisite to the effectiveness of the schedules "established by [the statute]." *Id.* In other words, where Congress itself amends the schedules to add or remove a controlled substance, the addition or removal of that controlled substance is effective immediately on enactment (absent some other effective date in the legislation); its addition to or removal from a schedule is not dependent on rulemaking.[7]

To illustrate, Congress amended the CSA in 2012 to add "cannabimimetic agents" to schedule I. That amendment was enacted as part of the Synthetic Drug Abuse Prevention Act of 2012 (Pub. L. 112-144, title XI, subtitle D), which was signed into law on July 9, 2012. Almost six months later, the Drug Enforcement Administration ("DEA") published a final rule establishing the drug codes for the cannabimimetic agents added to schedule I by Congress and making other conforming changes to schedule I as codified in 21 C.F.R. § 1308.11. *See* 78 Fed. Reg. 664 (Jan. 4, 2013). In explaining why notice-and-comment rulemaking was unnecessary, DEA noted that "the placement of these 26 substances in Schedule I **has already been in effect since July 9, 2012.**" *Id.* at 665 (emphasis added). In other words, the legislative changes to schedule I were effective immediately upon enactment. The reflection of those changes in 21 C.F.R. § 1308.11, although required by 21 U.S.C. § 812(a), was not necessary for the execution of those changes to schedule I.

Accordingly, enactment of the 2018 Farm Bill accomplished the removal of hemp (and THC in hemp[8]) from the CSA. Conforming amendments to 21 C.F.R. § 1308.11, while required as part

---

[6] "Marihuana" and "Tetrahydrocannabinols" were both included in the initial schedule I established by Congress in 1970.

[7] *Cf. United States v. Huerta*, 547 F.2d 545, 547 (10th Cir. 1977) ("[F]ailure to publish the 'updated' schedules as required by Section 812(a) had no effect upon the validity of those substances initially listed in the five schedules."); *United States v. Monroe*, 408 F. Supp. 270, 274 (N.D. Cal. 1976) ("Thus, while section 812(a) clearly orders the controlled substance schedules to be republished, it is clear that Congress did not intend republication to serve as a reissuance of the schedules, which if done improperly would cause those schedules to lapse and expire. . . . [T]he requirement that the schedules, once 'updated,' be 'republished' was solely for the purpose of establishing one list which would reflect all substances which were currently subject to the Act's provisions. . . .").

[8] Schedule I, as published in 21 C.F.R. § 1308.11, includes a definition of "tetrahydrocannabinols" in paragraph (d)(31) that does not appear in the CSA. Notwithstanding the presence of that definition in the current regulations, I

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 6

of DEA's continuing obligation to publish updated schedules, are not necessary to execute the 2018 Farm Bill changes to schedule I.[9]

**B.**     **After the Department of Agriculture Publishes Regulations Implementing the Hemp Production Provisions of the 2018 Farm Bill Contained in Subtitle G of the Agricultural Marketing Act of 1946, States and Indian Tribes May Not Prohibit the Interstate Transportation or Shipment of Hemp Lawfully Produced Under a State or Tribal Plan or Under a License Issued Under the Departmental Plan.**

AMA § 297D(a)(1)(A) directs the Secretary to issue regulations and guidelines "as expeditiously as possible" to implement subtitle G of the AMA. 7 U.S.C. § 1639r(a)(1)(A). These regulations will address the approval of State and Tribal plans under ÅMA § 297B and the issuance of licenses under the Departmental plan under AMA § 297C. As explained below, once these regulations are published, States and Indian tribes may not prohibit the transportation or shipment of hemp (including hemp products) produced in accordance with an approved State or Tribal plan or produced under a license issued under the Departmental plan.

Transportation of hemp is addressed in 2018 Farm Bill § 10114.[10] Subsection (a) provides:

> (a) RULE OF CONSTRUCTION.—Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

7 U.S.C. § 1639o note. This provision states that nothing in title X of the 2018 Farm Bill

---

am of the opinion that THC in hemp is excluded from THC as a schedule I controlled substance under the CSA by virtue of the 2018 Farm Bill amendments.

[9] Schedule I, as reflected in 21 C.F.R. § 1308.11, includes a separate listing of "marihuana extract" in paragraph (d)(58). Marijuana extract is not reflected in schedule I in the statute because it was added after 1970 by regulation under CSA § 201. The term "marihuana extract" is defined in regulation as "an extract containing one or more cannabinoids that has been derived from any plant of the genus Cannabis, other than the separated resin (whether crude or purified) obtained from the plant." The 2018 Farm Bill amended the definition of "marihuana" to exclude hemp, but because the regulatory definition of "marihuana extract" in schedule I does not use the words "marihuana" or "tetrahydrocannabinols" to define the term, a question arises whether **hemp extract** is still considered to be listed as a schedule I controlled substance. While the issue is not further addressed in this opinion, I think that the revised statutory definition of "marihuana" has effectively removed hemp extract from schedule I, and that reflecting such in 21 C.F.R. § 1308.11(d)(58) would be merely a conforming amendment.

[10] Hemp transportation is also addressed in annual appropriations acts, which restrict Federal appropriated funds from being used to prohibit the transportation of hemp. However, those provisions are limited in scope because they address only hemp produced under the 2014 Farm Bill authority, and they address only **Federal** government actions. That is, while the provisions prohibit Federal actors from blocking the transportation of so-called "2014 Farm Bill hemp," they do not restrict State action in that regard. *See* Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2019, Pub. L. 116-6, div. B, § 728 (prohibiting funds made available by that Act or any other Act from being used in contravention of 2014 Farm Bill § 7606 or "to prohibit the transportation, processing, sale, or use of industrial hemp, or seeds of such plant, that is grown or cultivated in accordance with [2014 Farm Bill § 7606], within or outside the State in which the industrial hemp is grown or cultivated"). *See also* Commerce, Justice, Science, and Related Agencies Appropriations Act, 2019, Pub. L. 116-6, div. C, § 536 ("None of the funds made available by this Act may be used in contravention of [2014 Farm Bill § 7606] by the Department of Justice or the Drug Enforcement Administration.").

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 7

prohibits the interstate commerce of hemp. However, this provision, standing alone, does not have the effect of sanctioning the transportation of hemp in States or Tribal areas where such transportation is prohibited under State or Tribal law.

Subsection (b), however, specifically prohibits States and Indian tribes from prohibiting the transportation of hemp through that State or Tribal territory. Subsection (b) provides:

> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS.—No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

7 U.S.C. § 1639o note. In effect, this provision preempts State law to the extent such State law prohibits the interstate transportation or shipment of hemp that has been produced in accordance with subtitle G of the AMA.

As a matter of constitutional law, "[t]he Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any [S]tate to the Contrary notwithstanding. . . .'" Under this principle, Congress has the power to preempt [S]tate law." *Arizona v. United States*, 567 U.S. 387, 398-99 (2012) (citing U.S. Const. art. VI, cl. 2). "Under the doctrine of federal preemption, a federal law supersedes or supplants an inconsistent [S]tate law or regulation." *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016).

Federal courts generally recognize three categories of preemption: (1) express preemption (where Congress "withdraw[s]" powers from the State through an "express preemption provision");[11] (2) field preemption (where States are "precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance");[12] and conflict preemption (where State laws are preempted when they conflict with Federal law, which includes situations "where 'compliance with both federal and [S]tate regulations is a physical impossibility'" or situations "where the challenged [S]tate law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'").[13] *Arizona*, 567 U.S. at 399-400 (citations omitted); *see also Zadeh*, 820 F.3d at 751.

---

[11] *See, e.g.*, 7 U.S.C. § 1639i(b) ("(b) Federal preemption.—No State or a political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food or seed in interstate commerce any requirement relating to the labeling of whether a food (including food served in a restaurant or similar establishment) or seed is genetically engineered (which shall include such other similar terms as determined by the Secretary of Agriculture) or was developed or produced using genetic engineering, including any requirement for claims that a food or seed is or contains an ingredient that was developed or produced using genetic engineering.").

[12] *See, e.g., Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 ("[T]he federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the [S]tates.").

[13] *See, e.g.*, 21 U.S.C. § 903 ("No provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 8

Section 10114(b) of the 2018 Farm Bill satisfies the definition of conflict preemption because a State law prohibiting the interstate transportation or shipment of hemp or hemp products that have been produced in accordance with subtitle G of the AMA would be in direct conflict with section 10114(b), which provides that no State may prohibit such activity.[14] Therefore, any such State law has been preempted by Congress. The same result applies to Indian tribes.[15]

In sum, once the implementing regulations are published, States and Indian tribes may not prohibit the shipment of hemp lawfully produced under an approved State or Tribal plan or under a license issued under the Departmental plan.

### C.    States and Indian Tribes May Not Prohibit the Interstate Transportation or Shipment of Hemp Lawfully Produced Under the Agricultural Act of 2014.

Because the 2018 Farm Bill does not immediately repeal the hemp pilot authority in 2014 Farm Bill § 7606 — and because the publication of regulations implementing the hemp production provisions of the 2018 Farm Bill will likely not occur until later in 2019 — the question arises whether States and Indian tribes are prohibited from blocking the interstate transportation or shipment of hemp (including hemp products) lawfully produced under the 2014 Farm Bill. The answer depends on the meaning of the phrase "in accordance with subtitle G of the Agricultural Marketing Act of 1946" in 2018 Farm Bill § 10114(b) (7 U.S.C. § 1639o note). Only hemp produced in accordance with subtitle G is covered by the preemption provision discussed above. As explained below, it is my opinion that the answer to this question is yes, by operation of AMA § 297B(f).

AMA § 297B(f) states the legal effect of the provisions authorizing States and Indian tribes to develop plans for exercising primary regulatory authority over the production of hemp within that State or territory of the Indian tribe. Specifically, section 297B(f) provides:

> (f) EFFECT.—Nothing in this section prohibits the production of hemp in a State or the territory of an Indian tribe—
>
> (1) for which a State or Tribal plan is not approved under this section, if the production of hemp is in accordance with section 297C **or other Federal laws** (including regulations); and
>
> (2) if the production of hemp is not otherwise prohibited by the State or Indian tribe.

---

a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.").

[14] Alternatively, section 10114(b) might be considered an express preemption provision because the statute expressly withdraws the power of a State to prohibit the transportation or shipment of hemp or hemp products through the State.

[15] AMA § 297B(a)(3) contains an anti-preemption provision stating that nothing in § 297B(a) "preempts or limits any law of a State or Indian tribe" that "regulates the production of hemp" and "is more stringent than [subtitle G]." 7 U.S.C. § 1639p(a)(3). However, that anti-preemption provision is limited to the **production** of hemp — not the **transportation** or shipment of hemp — and thus does not conflict with 2018 Farm Bill § 10114(b).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 9

7 U.S.C. § 1639p(f) (emphasis added).

This provision addresses the production of hemp in a State or Tribal territory for which the State or tribe does not have an approved plan under AMA § 297B. This provision acknowledges that, in such a scenario, the production of hemp in that State or Tribal territory is still permissible if it is produced **either** in accordance with the Departmental plan under AMA § 297C **or** in accordance with other Federal laws, and the State or tribe does not otherwise prohibit its production.

The plain language of subtitle G of the AMA, as added by the 2018 Farm Bill, thus clearly contemplates a scenario in which hemp is neither produced under an approved 297B plan nor under a license issued under the Department's 297C plan, but is still legally produced under "other Federal laws." It is my opinion that "other Federal laws" encompasses 2014 Farm Bill § 7606.[16]

To my knowledge, before enactment of 2014 Farm Bill § 7606, the CSA was the only Federal law that authorized the production of hemp. Indeed, the production of hemp — as the "manufacture" of a schedule I controlled substance — was generally prohibited under the CSA except to the extent authorized under a registration or waiver under the CSA. *See* 21 U.S.C. §§ 802(15), 802(22), 822, and 823; 21 C.F.R. part 1301. Given (1) the removal of hemp as a controlled substance under the CSA, (2) the delayed repeal of the 2014 Farm Bill § 7606 authority, and (3) the enactment of the new hemp production authorities in subtitle G of the AMA, it is my opinion that "other Federal laws" refers to the provisions of 2014 Farm Bill § 7606, which are still in effect. Such an interpretation gives immediate effect to the phrase "other Federal laws." It is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *See, e.g., Loughrin v. United States*, 573 U.S. 351, 358 (2014) (internal quotations and citations omitted).

Therefore, reading AMA § 297B(f) in harmony with 2018 Farm Bill § 10114(b), if the hemp is legally produced in accordance with 2014 Farm Bill § 7606 ("other Federal law"), then, by virtue of AMA § 297B(f), its production is not prohibited. Such hemp would have been produced "in accordance with subtitle G," which specifically addresses just such a scenario, as AMA § 297B(f) is part of subtitle G. Accordingly, under 2018 Farm Bill § 10114(b), a State or Indian

---

[16] That Congress envisioned such a scenario is apparent given the language in 2018 Farm Bill § 7605(b) delaying the repeal of 2014 Farm Bill § 7606 until 12 months **after** the Secretary establishes the 297C plan. Accordingly, this interpretation is not precluded by AMA § 297C(c)(1), which provides: "[i]n the case of a State or Indian tribe for which a State or Tribal plan is not approved under section 297B, it shall be unlawful to produce hemp in that State or the territory of that Indian tribe without a license issued by the Secretary under subsection (b)." Given the reference to "or other Federal laws" in AMA § 297B(f)(1) — and the fact that 2014 Farm Bill § 7606 is still in effect — it would be an absurd reading of AMA § 297C(c)(1) to conclude that hemp produced in accordance with Federal law (2014 Farm Bill § 7606) is, at the same time, unlawful without a separate license issued by the Secretary under the 297C plan. As courts have long recognized, statutory interpretations that "produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 10

tribe may not prohibit the transportation or shipment of so-called "2014 Farm Bill hemp" through that State or Tribal territory.[17]

Recent Developments

I acknowledge that this conclusion is in tension with a recent decision in a case in the District of Idaho, but it also is consistent with a recent decision in a case in the Southern District of West Virginia. Neither court addressed the "other Federal laws" language in AMA § 297B(f)(1), which I find conclusive.

In *Big Sky Scientific LLC v. Idaho State Police*, Case No. 19-CV-00040 (D. Idaho), a magistrate judge found that a shipment of Oregon hemp bound for Colorado and interdicted by Idaho State Police could not have been produced "in accordance with subtitle G" because the State of origin does not yet have an approved plan under AMA § 297B and the Secretary has not yet established a plan under AMA § 297C.[18] The magistrate acknowledged Oregon law authorizing the cultivation of hemp, noting the plaintiff's assertion that the hemp was produced by a grower licensed by the Oregon Department of Agriculture (and, thus, presumably in compliance with 2014 Farm Bill § 7606 requirements).[19] However, in denying the plaintiff's motion for a preliminary injunction, the magistrate concluded that, in enacting the 2018 Farm Bill, Congress intended to "create a regulatory framework around the production and interstate transportation of hemp for purposes of federal law, and that framework is to be contained in the federal (or compliant [S]tate or [T]ribal) plan for production of hemp found in the 2018 Farm Bill."[20] Although the 2018 Farm Bill allows hemp to be transported across State lines, the magistrate found those interstate commerce protections apply only to hemp produced under regulations promulgated under the authority of the 2018 Farm Bill.[21] Therefore, because those regulations do not yet exist, the interdicted hemp is subject to Idaho law prohibiting its transportation.

USDA is not a party in the *Big Sky* case, and this office does not concur with the reasoning of the magistrate regarding the shipment of hemp lawfully produced under the 2014 Farm Bill. In

---

[17] This conclusion seems to be supported in the legislative history as well. In explaining the effect of the preemption provision, the Conference Report states: "While [S]tates and Indian tribes may limit the production and sale of hemp and hemp products within their borders, the Managers, in Sec. 10112 [sic], agreed to not allow [S]tates and Indian tribes to limit the transportation or shipment of hemp or hemp products through the [S]tate or Indian territory." H.R. REP. NO. 115-1072, at 738 (2018). Notably, the Managers referred to hemp generally, not merely hemp produced under a plan developed under subtitle G of the AMA.

[18] *See Big Sky*, ECF Doc. #32, Memorandum Decision and Order Re: Plaintiff's Motion for Preliminary Injunction; *see also* ECF Doc. #6, Memorandum Decision and Order Re: Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Plaintiff's Motion to File Overlength Brief (*available at* 2019 WL 438336 (Feb. 2, 2019)).

[19] *Big Sky*, ECF Doc. #32, at 5, 7-8.

[20] *Id.* at 3.

[21] *Id.* at 19-26.

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 11

interpreting the statutory language, the magistrate correctly noted the well-recognized principle of statutory construction that statutes should not be interpreted "in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous."[22] However, seemingly ignoring that guiding principle of interpretation, the magistrate did not address the effect of the "other Federal laws" language in AMA § 297B(f) or attempt to give that language any meaning. The Idaho court failed to read the statute as a whole and did not consider the "other Federal laws" clause that I find conclusive. Given the preliminary nature of the magistrate's ruling, I find his opinion denying a preliminary injunction unpersuasive.[23]

Conversely, the interpretation of 2018 Farm Bill § 10114 advanced by this legal opinion is consistent with a decision issued in the Southern District of West Virginia. In *United States v. Mallory*, Case No. 18-CV-1289 (S.D. W. Va.), the Department of Justice filed a civil action to seize hemp allegedly grown in violation of the CSA and also outside the scope of the 2014 Farm Bill. At issue in that case was hemp purportedly grown by a producer licensed by the State of West Virginia under a 2014 Farm Bill § 7606 pilot program, where the hemp seeds were shipped from a Kentucky supplier licensed by the Commonwealth of Kentucky under a 2014 Farm Bill § 7606 pilot program. The court relied on a combination of laws — the 2014 Farm Bill, the appropriations acts provisions,[24] and the 2018 Farm Bill — to dissolve a preliminary injunction against the defendant[25] and to dismiss entirely the government's case.[26] In dissolving the preliminary injunction, the court permitted the defendants to transport the hemp product across State lines to Pennsylvania for processing and sale.[27]

Although the *Mallory* court did not have occasion to address any State attempts to block the transportation of hemp, the court did reference 2018 Farm Bill § 10114, noting that it "expressly allows hemp, its seeds, and hemp-derived products to be transported across State lines."[28] The district judge's opinion addressed hemp produced under 2014 Farm Bill § 7606 and not hemp produced under State, Tribal, or Departmental plans. The conclusion reached by the *Mallory* court is consistent with my interpretation that States cannot block the shipment of hemp, whether

---

[22] *Id.* at 21-22 (citing *Padash v. I.N.S.*, 258 F.3d 1161, 1170-71 (9th Cir. 2004)). The magistrate continued:

> It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. . . . It is our duty to give effect, if possible, to every clause and word of a statute.

*Id.* at 23 (internal quotations and citations omitted).

[23] Indeed, the magistrate's ruling is under appeal. *See Big Sky Sci. LLC v. Bennetts*, Case No. 19-35138 (9th Cir.).

[24] *See supra* footnote 10.

[25] *Mallory*, ECF Doc. #60, Memorandum Opinion and Order, 2019 WL 252530 (S.D. W. Va. Jan. 17, 2019).

[26] *Mallory*, ECF Doc. #72, Memorandum Opinion and Order, 2019 WL 1061677 (S.D. W. Va. Mar. 6, 2019).

[27] *Mallory*, ECF Doc. #60, 2019 WL 252530, at *3.

[28] *Mallory*, ECF Doc. #72, 2019 WL 1061677, at *6.

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 12

that hemp is produced under the 2014 Farm Bill or under a State, Tribal, or Departmental plan under the 2018 Farm Bill. It is also a final judgment of the Southern District of West Virginia court, and not a preliminary ruling as with the District of Idaho magistrate's opinion.[29]

In matters of statutory interpretation, the text of the statute governs. One must read that text in its entirety and give every word meaning. The reference to "other Federal laws" must be given meaning, and that language clearly refers to the Federal law that currently authorizes the production of hemp — 2014 Farm Bill § 7606. Therefore, hemp produced under that pilot authority is hemp produced in accordance with subtitle G of the AMA. States and Indian tribes may not prohibit the transportation or shipment of such hemp through that State or Tribal territory.

## D.    The 2018 Farm Bill Places Restrictions on the Production of Hemp by Certain Felons.

The 2018 Farm Bill added a new provision addressing the ability of convicted felons to produce hemp. The 2014 Farm Bill is silent on the issue. AMA § 297B(e)(3)(B) (hereafter, "Felony provision"), as added by the 2018 Farm Bill, provides:

> (B) FELONY.—
>
> (i) IN GENERAL.—Except as provided in clause (ii), any person convicted of a felony relating to a controlled substance under State or Federal law before, on, or after the date of enactment of this subtitle shall be ineligible, during the 10-year period following the date of the conviction—
>
> (I) to participate in the program established under this section or section 297C; and
>
> (II) to produce hemp under any regulations or guidelines issued under section 297D(a).
>
> (ii) EXCEPTION.—Clause (i) shall not apply to any person growing hemp lawfully with a license, registration, or authorization under a pilot program authorized by section 7606 of the Agricultural Act of 2014 (7 U.S.C. 5940) before the date of enactment of this subtitle.

7 U.S.C. § 1639p(e)(3)(B) (emphasis added). The references to "the date of enactment of this subtitle" are to subtitle G of the AMA, as added by section 10113 of 2018 Farm Bill. Therefore, the "date of enactment of this subtitle" is the date of enactment of the 2018 Farm Bill — December 20, 2018.

In explaining the Felony provision, the Conference Report notes:

> Any person convicted of a felony relating to a controlled substance shall be ineligible to participate under the [S]tate or [T]ribal plan for a 10-year period following the date of the conviction. However, this prohibition shall not apply to producers who have been lawfully participating in a [S]tate hemp pilot program as authorized by the Agricultural Act of 2014, prior to enactment of this subtitle. Subsequent felony convictions after the date of enactment of this subtitle will trigger a 10-year

---

[29] *Mallory*, ECF Doc. #72, 2019 WL 1061677, at *9 (denying the United States' motion to amend and granting the defendants' motion to dismiss). *Big Sky*, ECF Doc. #32, at 28 (denying the plaintiff's motion for preliminary injunction and noting that the court will separately issue an order setting a scheduling conference to govern the case going forward).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 13

> nonparticipation period regardless of whether the producer participated in the pilot program
> authorized in 2014.

H.R. REP. NO. 115-1072, at 737 (2018).

In sum, a person convicted of a State or Federal felony relating to a controlled substance — regardless of when that conviction occurred — is ineligible to produce hemp under subtitle G of the AMA for a period of 10 years following the date of the conviction. An exception exists in clause (ii) of the Felony provision that applies to a person who was lawfully producing hemp under the 2014 Farm Bill **before December 20, 2018**, and who had been convicted of a felony relating to a controlled substance before that date. States and Indian tribes now have a responsibility to determine whether a person wishing to produce hemp in that State or Tribal territory has any Federal or State felony convictions relating to controlled substances that would make that person ineligible to produce hemp.

## III.  OTHER ISSUES

There are two additional important aspects of this issue that should be emphasized.

First, the 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the production of hemp that are more stringent than Federal law. *See* AMA § 297B(a)(3) (7 U.S.C. § 1639p(a)(3)) ("Nothing in this subsection preempts or limits any law of a State or Indian tribe that . . . (i) regulates the production of hemp; and (ii) is more stringent than this subtitle."). For example, a State may continue to prohibit the growth or cultivation of hemp in that State.[30] As discussed above, however, while a State or Indian tribe may prohibit the production of hemp, it may not prohibit the interstate shipment of hemp that has been produced in accordance with Federal law.

Second, the 2018 Farm Bill does not affect or modify the authority of the Secretary of Health and Human Services ("HHS Secretary") or Commissioner of Food and Drugs ("FDA Commissioner") under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq.) and section 351 of the Public Health Service Act (42 U.S.C. § 262). *See* AMA § 297D(c) (7 U.S.C. § 1639r(c)). While AMA § 297D(b) provides that the Secretary of Agriculture shall have "sole authority" to issue Federal regulations and guidelines that relate to the production of hemp, this authority is subject to the authority of the HHS Secretary and FDA Commissioner to promulgate Federal regulations and guidelines under those FDA laws. 7 U.S.C. § 1639r(b).

---

[30] Certain states continue to prohibit the cultivation of hemp. *See* National Conference of State Legislatures, "State Industrial Hemp Statutes," *available at* http://www.ncsl.org/research/agriculture-and-rural-development/state-industrial-hemp-statutes.aspx#state (updated Feb. 1, 2019).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 14

## IV.   CONCLUSION

I have analyzed the hemp provisions enacted as part of the 2018 Farm Bill and reach the following conclusions:

1. As of the enactment of the 2018 Farm Bill on December 20, 2018, hemp has been removed from schedule I of the CSA and is no longer a controlled substance.

2. After USDA publishes regulations implementing the hemp production provisions of the 2018 Farm Bill contained in subtitle G of the AMA, States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under a State or Tribal plan or under a license issued under the Departmental plan.

3. States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under the 2014 Farm Bill.

4. A person with a State or Federal felony conviction relating to a controlled substance is subject to a 10-year ineligibility restriction on producing hemp under subtitle G of the AMA. An exception applies to a person who was lawfully growing hemp under the 2014 Farm Bill before December 20, 2018, and whose conviction also occurred before that date.

The 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the production of hemp that are more stringent than Federal law. Additionally, the 2018 Farm Bill does not affect or modify the authority of the HHS Secretary or FDA Commissioner to regulate hemp under applicable FDA laws.

# Congress of the United States
## Washington, DC 20515

March 29, 2021

The Honorable Merrick Garland
Attorney General of the United States
Department of Justice
400 6ᵗʰ Street, NW
Washington, DC 20001

The Honorable Thomas J. Vilsack
Secretary of the Department of Agriculture
United States Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC  20250

Dear Mr. Attorney General and Mr. Secretary:

We are writing to you to express our concern over the serious unintended consequences that
could arise from the Drug Enforcement Agency's (DEA) Interim Final Rule (IFR) issued for
hemp on August 21, 2020.  In order to address these concerns and not cause unnecessary damage
to the hemp industry, we encourage the DEA and the U.S. Department of Agriculture (USDA) to
collaborate with the hemp industry to resolve the issues raised by the IFR, and to clarify publicly
that USDA is the primary Federal agency in charge of regulating the transportation, processing,
sale, or use of hemp and in-process hemp extract.

When Congress passed the 2018 Farm Bill, it was our intent to vest primary regulatory authority
over the production of hemp with USDA. To that end, USDA issued an Interim Final Rule for
the "Establishment of a Domestic Hemp Production Program" more than a year ago and finalized
that rule on January 15, 2021.  It is our understanding that this final rule, with an effective date of
March 22, 2021, is currently being reviewed by the Biden Administration

As leaders on agriculture policy in the U.S. House of Representatives, it is our underlying goal to
ensure that Federal regulations concerning hemp are fair, easily understood, and consistent
across agencies. When inconsistencies in regulation arise, it is our farmers who are primarily
harmed. We believe that stronger collaboration between UDSA, DOJ, other Federal agencies,
and hemp industry stakeholders could help alleviate many issues impacting our hemp producers.

Congress did not intend the 2018 Farm Bill to criminalize any stage of legal hemp processing,
and we are concerned that hemp grown in compliance with a USDA-approved plan could receive
undue scrutiny from the DEA as it is being processed into a legal consumer-facing product under
this IFR. That is why the 2018 Farm Bill's definition of hemp was broadened from the 2014
Farm Bill's version to include derivatives, extracts, and cannabinoids.  It was our intent that
derivatives, extracts, and cannabinoids would be legal if these products were in compliance will
all other Federal regulations.  To highlight our intent, the following report language was included
with H.R. 133, the Consolidated Appropriations Act of 2021.

**EXHIBIT**

4

"[t]he USDA shall develop regulations, within existing authority, that protect the transportation, processing, sale, or use of hemp and in-process hemp extract, that may temporarily exceed a delta-9 THC concentration of 0.3%, including in-process hemp extract that was: (1) produced from hemp that meets the definition of hemp under 7 USC §1639o; (2) cultivated in accordance with subtitle G of the Agricultural Marketing Act of 1946 [7 U.S.C. 1639o et seq.] (as added by section 10113 of the Agriculture Improvement Act of 2018) or section 7606 of the Agricultural Act of 2014 [7 USC 5940]; (3) not packaged as a finished product; and (4) not sold or offered for sale as a finished product to consumers.

We understand from our constituents that hemp processors have been confused about the legality of their processing operations. Because of this confusion, some processors have halted operations altogether. In addition to economic impacts, we are concerned that the lack of a uniform, risk appropriate Federal regulatory approach will stifle innovation, advancement, and product development in an industry poised for robust growth in the coming years.

To address our concerns, we would hope that your agencies would consider jointly meeting with industry stakeholders to resolve concerns with DEA's regulations. Given USDA's current review of its hemp regulations, we believe that this moment presents the best opportunity to ensure consistency across Federal agencies that will ultimately benefit our farmers and hemp-related businesses. Moving forward, we would also request proactive and continued collaboration between your agencies on any future regulatory actions that could impact hemp producers and processors. Thank you for your consideration, and our offices look forward to your timely response.

Sincerely,

David Scott
Chairman
House Agriculture Committee

Sanford D. Bishop, Jr.
Chairman
House Appropriations Subcommittee on
Agriculture, Rural Development. Food and
Drug Administration, and Related Agencies

**U.S. Department of Justice**
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia  22152

*www.dea.gov*                                    September 15, 2021

Donna C. Yeatman, R.Ph.
Executive Secretary
Alabama Board of Pharmacy
111 Village Street
Birmingham, Alabama  35242



Dear Dr. Yeatman:

This is in response to your letter dated August 19, 2021, in which you request the control status of delta-8-tetrahydrocannabinol ($\Delta^8$-THC) under the Controlled Substances Act (CSA). The Drug Enforcement Administration (DEA) reviewed the CSA and its implementing regulations with regard to the control status of this substance.

$\Delta^8$-THC is a tetrahydrocannabinol substance contained in the plant *Cannabis sativa L.* and also can be produced synthetically from non-cannabis materials.  The CSA classifies tetrahydrocannabinols as controlled in schedule I.  21 U.S.C. 812, Schedule I(c)(17); 21 CFR § 1308.11(d)(31).  Subject to limited exceptions, for the purposes of the CSA, the term "tetrahydrocannabinols" means those "naturally contained in a plant of the genus Cannabis (cannabis plant), as well as synthetic equivalents of the substances contained in the cannabis plant and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant."  21 CFR § 1308.11(d)(31).  Thus, $\Delta^8$-THC synthetically produced from non-cannabis materials is controlled under the CSA as a "tetrahydrocannabinol."

The CSA, however, excludes from control "tetrahydrocannabinols in hemp (as defined under section 1639*o* of Title 7)."  Hemp, in turn, is defined as "the plant *Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [($\Delta^9$-THC)] concentration of not more than 0.3 percent on a dry weight basis."  7 U.S.C. 1639*o*(1).

Accordingly, cannabinoids extracted from the cannabis plant that have a $\Delta^9$-THC concentration of not more than 0.3 percent on a dry weight basis meet the definition of "hemp" and thus are not controlled under the CSA.  Conversely, naturally derived cannabinoids having a $\Delta^9$-THC concentration more than 0.3 percent on a dry weight basis is controlled in schedule I under the CSA as tetrahydrocannabinols.[1]

---

[1]  The Agricultural Improvement Act of 2018 (AIA), Pub. L. 115-334, § 12619, amended the CSA to remove "tetrahydrocannabinols in hemp" from control. See 21 U.S.C. § 812, Schedule I(c)(17). As noted, however, "hemp" is defined to "mean the *plant* Cannabis sativa L. and *any part of that plant*, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9-tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. 1639o (emphasis added). Thus, only tetrahydrocannabinol in or derived from the cannabis plant—not synthetic tetrahydrocannabinol—is subject to being excluded from control as a "tetrahydrocannabinol[] in hemp."

Donna C. Yeatman, R.Ph                                                                        2

If you have any further questions, please contact the Drug and Chemical Evaluation Section at DPE@usdoj.gov or (571) 362-3249.

Sincerely,

Terrence L. Boos, Ph.D., Chief
Drug & Chemical Evaluation Section
Diversion Control Division

cc: Birmingham Office