Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
NOT ORIGINAL DOCUMENT
03/17/2022 04:43:35 PM
89824

**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**DIVISION I**
**CASE NO. 21-CI-00836**

**KENTUCKY HEMP ASSOCIATION**, *et al.*,                    **PLAINTIFFS**

**VS.**

**RYAN QUARLES,** *In His Official Capacity*
*As Kentucky Commissioner of Agriculture*, *et al.*,          **DEFENDANTS**

## ORDER

This matter is before the Court on Plaintiffs' Motion for Temporary Injunction, concerning which the Court conducted an evidentiary hearing on December 16, 2021. Hon. Christopher D. Wiest and Hon. Thomas Bruns appeared for Plaintiffs. Hon. Olivia F. Amlung and Hon. Marc Manley appeared for Kentucky Commissioner of Agriculture Ryan Quarles; and Hon. Lauren Lewis and Hon. Samantha Bevins appeared for Commissioner of the Kentucky State Police, Phillip Burnett, Jr. At the hearing, Plaintiff presented testimony from Mitchell Tate Hall, Vice President and prior President of the Kentucky Hemp Association, Doris Hamilton, the party representative for the Kentucky Department of Agriculture (as if on cross-examination), Rose Seeger, owner of Ky Hemp Girl, LLC, and Dr. Lewis Jackson, Ph.D. Commissioner Quarles presented testimony from Eric Wang, chief executive officer of a company relating to hemp, Dr. Christopher Hudalla, Dr. Peter Akpunonu, Jennifer Padgett, and Sgt. Chris Weber, with the Boone County Sheriff's Department and Northern Kentucky Drug Strike Force.

## HISTORICAL BACKGROUND

The history of hemp production is not only a fascinating tale, one that predates the founding of our country, but also one in which Kentucky has played a significant part. Prior to

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000001 of 000019

EXHIBIT 2

Entered         21-CI-00836      02/28/2022       David Martin, Boone Circuit Clerk
                                                  NOT ORIGINAL DOCUMENT
                                                  03/17/2022 04:43:35 PM
                                                  89824

colonialization, Native Americans raised hemp for many uses, including clothing and food.[1] Settlers at Jamestown grew hemp in the early-1600s, and hemp farming continued throughout the development of the colonies to become a vital commodity for not only North America but England as well.[2] In addition to other uses, including enduring parchment, nothing compared with the durability of hemp fibers for making sails, cords and rope. Hemp became so integral for Britain's navy that colonial farmers were required to farm it.[3] For example, more than 120,000 pounds of hemp was needed to rig the 44-gun USS Constitution, not including that required for canvas and sails.[4] And, reportedly, Thomas Jefferson wrote the first drafts of the Declaration of Independence on paper made from hemp.[5]

Following the Revolutionary War and until the late 1800s, most of the hemp produced in America was grown by Kentucky farmers.[6] But as steam ships gained ascendency on the seas, demand for hemp decreased.[7] By World War I, Kentucky was the only state raising or producing hemp of any significance, and the nation's primary producer of hemp seed.[8]

Hemp is from the cannabis family of plants as is marijuana.[9] Variations within the cannabis family of plants have different characteristics, much like there are differences between apple varieties.[10] The stalks of cannabis plants contain fiber valuable for production of a wide

---

[1] Kenneth Titus and Stephanie Murray, *Industrial Hemp*, Journal of the Kansas Bar Association, 90-APR J. Kan. B.A. 24, 25 (March/April, 2021).
[2] *Id.*, citing Oscar H. Will III, *The Forgotten History of Hemp Cultivation in America*, FARM COLLECTOR (Nov. 2004), https://www.farmcollector.com/farm-life/strategic-fibers.
[3] Michelle R.E. Donovan, Jason Canvasser and Danielle M. Hazeltine, *The Evolving CBD and Hemp Market*, Michigan Bar Journal, 100-JUN Mich. B.J. 38, 39 (June, 2021), citing, Will, *The Forgotten History of Hemp Cultivation in America*, Farm Collector < https://www.farmcollector.com/farm-life/strategic-fibers/>.
[4] *Id.*
[5] Vanessa Rogers *The Future of Hemp in Kentucky*, 4 Ky. J. Equine, Agric. & Nat. Resources L. 479, 480 (2012).
[6] Oscar H. Will, *supra*, note 2.
[7] *Id.*
[8] *Id.*
[9] Donovan, *et al.*, 100-JUN Mich. B.J., at 39.
[10] *Id.*

2

Entered         21-CI-00836      02/28/2022       David Martin, Boone Circuit Clerk

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
                                                  NOT ORIGINAL DOCUMENT
                                                  03/17/2022 04:43:35 PM
                                                  89824

range of materials, including paper, rope, canvas, building materials and cosmetics.[11] The plant also contains flowers, seeds and oil, concerning which many extol as providing health benefits and affording natural relief from adverse medical conditions.[12] Cannabis contains cannabinoids in quantities that vary depending upon the specific variety of cannabis plant. And cannabinoids are comprised of hundreds of natural compounds.[13] Among these are tetrahydrocannabinol ("THC"), the component having psychoactive properties that can produce feelings of euphoria or a "high," and cannabidiol ("CBD"), which is popular for treating pain, anxiety and other disorders, including neurological diseases.[14]

The federal government began discouraging hemp production beginning with the 1937 Marihuana Tax Act, which taxed the sale of all forms of cannabis. Except for a brief interlude during World War II involving the "Hemp for Victory" campaign, punitive taxation and availability of synthetic fiber stifled the production of hemp. In 1970, Congress passed the Controlled Substances Act, making all cannabis a Schedule I illegal drug—the same designation as narcotics like heroin. Consequently, even hemp production or possession became illegal under federal law.[15] Proponents of hemp have long fought its antagonists to reverse this. That battle still rages.

Proponents of hemp gained ground with the Agricultural Act of 2014 and, later, the Hemp Farming Act of 2018, which removed hemp from the Controlled Substances Act and allows hemp to be farmed agriculturally. Congress did this by codifying an exemption for industrial hemp, under which cannabis plants may not contain more than 0.3 percent of delta-9-THC ("Delta-9"). Kentucky, which had lost significant agriculture following tobacco's fall from

---

[11] Titus, *et al.*, 90-APR J. Kan. B.A., at 25.
[12] *Id.*
[13] Donovan, *et al.*, 100-JUN Mich. B.J., at 39.
[14] *Id.*
[15] Titus, *et al.*, 90-APR J. Kan. B.A., at 25.

3

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000003 of 000019

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
                                                                NOT ORIGINAL DOCUMENT
                                                                03/17/2022 04:43:35 PM
                                                                89824

grace, was at the forefront of this development and the General Assembly enacted statutes tracking the federal exemption for hemp. Following the exemption, various products have been produced from hemp, including CBD oil. Through further processing, a form of THC identified as delta-8 ("Delta-8") can be derived from CBD. According to testimony, products containing Delta-8 are in demand.

On April 19, 2021, the Kentucky Department of Agriculture issued a letter stating Delta-8 is a Schedule I controlled substance, thus illegal, and warned that any manufacturing or distribution of products containing Delta-8 could result in hemp license revocation and criminal prosecution. Plaintiffs point to subsequent criminal enforcement actions by the Kentucky State Police, including raids and arrests, relating to distribution of Delta-8.

## ARGUMENTS PRESENTED

Plaintiffs insist that Delta-8 is a derivative of hemp and, therefore, not a controlled substance but exempt. For this premise, Plaintiffs reference the statutory exemption of hemp in 7 U.S.C. § 1639o, and also K.R.S. 260.850. Plaintiffs insist that, because the actions of Defendants are contrary to these statutes, they are acting unlawfully and violating their rights. As to Commissioner Quarles, Plaintiffs argue that he has threatened licensees with revocation of their license and criminal prosecution for engaging in lawful production of Delta-8. Further, at the hearing, they show that police relied upon the April 19, 2021 letter by the Kentucky Department of Agriculture in an affidavit in order to secure a search warrant. And, with regard to the Kentucky State Police, Plaintiffs point to the raids and arrests relating to the same. Plaintiffs argue that, because the production and distribution of Delta-8 by licensees is a lawful activity, Defendants' actions are or will cause irreparable harm and, thus, should be temporarily enjoined pending final decision on the merits.

4

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000004 of 000019

Entered   21-CI-00836   02/28/2022   David Martin, Boone Circuit Clerk
NOT ORIGINAL DOCUMENT
03/17/2022 04:43:35 PM
89824

In response, Defendant Burnett, Commissioner of the Kentucky State Police, argues that Delta-8 is not exempt under the hemp legislation. For this premise, he points to a chart on the Website of the United States Drug Enforcement Agency ("DEA") where it identifies Delta-8 as being another name for THC, a Schedule I controlled substance. He also references a health advisory published by the Centers for Disease Control warning against the use of products containing Delta-8. Additionally, Commissioner Burnett argues that injunctive relief would be improper on other grounds, namely, because the only harm to Plaintiffs is monetary, that there already has been sufficient delay in Plaintiffs' case to undermine their claims of immediate or imminent irreparable harm, and that equity supports denying injunctive relief because of the public's interest that the criminal statutes be enforced.

Defendant Quarles responds that the Kentucky Department of Agriculture neither enforces the criminal laws nor regulates Delta-8, and that the April 19, 2021 letter was merely offered guidance. Consequently, he argues, an injunction would be inappropriate as to either him or his Department. Defendant Quarles initially incorporated[16] arguments from his motion to dismiss, namely, that the harms Plaintiffs alleged to be threatened could be challenged in criminal enforcement proceedings, that hemp license revocation could be challenged through an administrative hearing process, that Plaintiffs failed to allege sufficient injury or controversy and, thus, they lack standing.

Commissioner Quarles also argues that the question is more complicated than the statutory exemption language appears. Defendant Quarles explains that, although the THC in Delta-8 results in a milder high than Delta-9 THC, it is otherwise similar. According to

---

[16] However, Commissioner Quarles withdrew his motion to dismiss that, prior to that withdrawal, sought incorporation of the arguments therein by reference. In his notice of withdrawal, Commissioner Quarles indicates the intention to litigate the issues to preserve "the integrity and future prospects" of the hemp program from the dangers of "court-sanctioned" Delta-8.

5

Entered   21-CI-00836   02/28/2022   David Martin, Boone Circuit Clerk

OO : 000005 of 000019

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
NOT ORIGINAL DOCUMENT
03/17/2022 04:43:35 PM
89824

Defendant Quarles, Delta-8 should be considered more of a synthetic creation than a derivative of hemp. Accordingly, he indicates it is otherwise prohibited under K.R.S. Chapter 218A. Further, Quarles contends that because Plaintiffs' loss from complying would be merely monetary, it cannot constitute irreparable harm. Nor, he argues, would an injunction be equitable. As to this he asserts that, "[u]nlike its commonly known counterpart, Delta-8 THC is largely unregulated by federal and Kentucky law," thus, a "court order prospectively blessing the sale of unregulated, untested, and psychoactive drugs to the public, including children, is not in the public interest."[17]

In Reply to Commissioner Burnett, Plaintiffs argue that statements on the DEA's Website cannot supersede the law and, in support, point to the DEA's official promulgations in the Federal Register, at 21 CFR 1308.11(31)(ii), that: "(ii) Tetrahydrocannabinols does not include any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639o." Contra the argument concerning delay in filing, Plaintiffs explain that they did not file until actual enforcement actions began, such as raids and arrests. Additionally, Plaintiffs assert that Defendant should not be heard to complain that Plaintiffs waited until parties were served and attorneys entered appearances before moving for injunctive relief.

As to Defendants' argument that monetary loss cannot equate to irreparable harm, Plaintiffs point to various federal precedent stating that, because government actors are typically immune from liability for monetary damages, those losses are irreparable. Contra Quarles' arguments, pointing to the April 19, 2021 letter, Plaintiffs point out that the Department has statutory authority to revoke or suspend licenses, and that he has expressly threatened to do so over the very issue in dispute. Further, Plaintiffs point to statutes and precedent to support its

---

[17] Commissioner Quarles' Resp., pp. 15-16.

6

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000006 of 000019

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
NOT ORIGINAL DOCUMENT
03/17/2022 04:43:35 PM
89824

position that the controversy here meets standing requirements and, more specifically, grounds for injunctive relief. According to Plaintiffs, the statutory exemption enacted by both the United States Congress, and the Kentucky General Assembly, is clear. Thus, Plaintiffs insist, Delta-8 is exempt and the actions by an agency (or individual officers thereof) to punish licensees for producing it, and raids and arrests of citizens by the Commonwealth's police on those grounds, violates the Kentucky and United States Constitution, thereby constituting irreparable harm.

## ANALYSIS

CR 65.04(1) provides the standard the Court is to apply on a Motion for injunctive relief:

> A temporary injunction may be granted during the pendency of an action on motion if it is clearly shown by verified complaint, affidavit, or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action, or the acts of the adverse party will tend to render such final judgment ineffectual.

The purpose of this rule "is to insure that the injunction issues only where absolutely necessary to preserve a party's rights pending the trial of the merits." *Maupin v. Stansbury*, 575 S.W.2d 695, 698 (Ky. App. 1978). In *Maupin*, the Kentucky Court of Appeals established a three-part test for issuance of a temporary injunction. First, Plaintiff must show that, without the temporary injunction, he will suffer immediate and irreparable injury to his rights pending trial. *Id.* at 699. Second, the Court must weigh any equities that may be involved. *Id.* Third, the Court should determine whether a substantial question on the merits has been shown. *Id.* "If the party requesting relief has shown a probability of irreparable injury, presented a substantial question as to the merits, and the equities are in favor of issuance, the temporary injunction should be awarded." *Id.* If one or more of these criteria are not satisfied, the temporary injunction should be denied. *Sturgeon Min. Co., Inc. v. Whymore Coal Co., Inc.*, 892 S.W.2d 591 (Ky. 1995).

7

Entered         21-CI-00836        02/28/2022         David Martin, Boone Circuit Clerk
                                                                  NOT ORIGINAL DOCUMENT
                                                                  03/17/2022 04:43:35 PM
                                                                  89824

Among Plaintiffs are the Kentucky Hemp Association, whose members are comprised of licensees under Kentucky's hemp program administrated by the Kentucky Department of Agriculture. Plaintiffs also include a hemp producer licensed under that program, and a retailer who is neither a producer nor licensed as such. The evidence entered at the hearing demonstrates—and Defendants do not dispute—that the Kentucky State Police has conducted raids and arrests in Kentucky to prevent distribution of products containing Delta-8. What is in dispute is whether that constitutes irreparable harm. The answer to that question turns, first and foremost, upon whether the raids and arrests are performed according to law. And that answer, in the main, largely centers upon whether Delta-8 is prohibited or exempted under the statutes at issue. If prohibited by law, then no further analysis is needed.

The evidence further demonstrates—concerning which there is also no dispute—that the prohibition of products containing Delta-8 results in economic loss to those who farm, produce and sell it. It is further uncontested that Delta-8 is sold at retail in the states surrounding Kentucky, including Indiana, Tennessee, West Virginia, and Ohio. Plaintiffs also demonstrated at the hearing that law enforcement agents relied upon the April 19, 2021 letter from the Kentucky Department of Agriculture in an affidavit to show the criminality of Delta-8 to obtain search warrant(s).[18] Again, the dispute is whether there are grounds for injunctive relief. And, again, that answer first depends upon the legality of the prohibition. Consequently, in actions where, as here, the central issue is the constitutionality of government action, the third element of the *Maupin* test becomes the threshold question.

---

[18] Plaintiff's Hearing Exh. No. 7.

Entered         21-CI-00836        02/28/2022         David Martin, Boone Circuit Clerk

OO : 000008 of 000019

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
                                                                NOT ORIGINAL DOCUMENT
                                                                03/17/2022 04:43:35 PM
                                                                89824

### A. Substantial Question on Merits

In the Hemp Farming Act, part of the Farm Bill enacted in 2018, Congress exempted hemp from the Controlled Substances Act. In doing so, Congress defined hemp as follows:

> The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.[19]

Kentucky, through its General Assembly, enacted statutes exempting hemp with a definition using nearly identical language. KRS 260.850 provides, in relevant part, as follows:

> (5) "Hemp" or "industrial hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis;
>
> (6) "Hemp products" or "industrial hemp products" means products derived from, or made by, processing hemp plants or plant parts; . . . .

At the hearing, Dr. Lewis Jackson testified as an expert for Plaintiffs. Dr. Jackson holds a B.A. and Ph.D. in Chemistry and has experience in the cannabis industry. Dr. Jackson explained the process involved in producing Delta-8. The process of extraction, he explained, is performed through chemical reactions. He testified that the first step in producing Delta-8 is to extract CBD. This is done by separating the flower, drying it, grinding it and applying an organic solvent (such as oil) to solubilize the cannabinoids for extraction from the plant material. Then, from resulting CBD, whether as a crude extract or isolate, the CBD is solubilized again with what he termed a friendly organic solvent to liquify the material and induce further reactions to derive or extract Delta-8. Dr. Jackson testified that the resulting Delta-8 is a

---

[19] 7 U.S.C. 1639o(1).

9

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
                                                                NOT ORIGINAL DOCUMENT
                                                                03/17/2022 04:43:35 PM
                                                                89824

derivative of CBD, which is a derivative of hemp. Dr. Jackson testified that Delta-8 is not Delta-9 and that, in fact, Delta-8 can contain concentrations of Delta-9 THC. The concentrations may be greater or less than 0.3% Delta-9 THC, which is what determines whether it is exempt under the statute.

Defendant Quarles argues that Delta-8 should not be deemed a derivative of hemp but a synthetic creation from chemical processes that is otherwise prohibited under KRS Chapter 218A. The first problem with this argument, however, is that the statutory prohibitions of synthetic marijuana were repealed—perhaps in conjunction with the legalization of hemp.

The next issue with this argument is the text of the hemp statutes itself, which exempts hemp from "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and *all* derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths of one percent . . . ."[20] And, further, KRS 260.858(1) provides that: "***Notwithstanding any other provision of law to the contrary***, it is lawful for a licensee, or his or her agent, to cultivate, handle, or process hemp or hemp products in the Commonwealth."[21] Clearly, the definition of hemp includes derivatives, extracts and isomers.

As the evidence shows, the extraction of derivatives, and the isolation of isomers, involve chemical processes. However, the statute exempts "*all* derivatives, extracts, cannabinoids, isomers" so long as it contains less than three percent Delta-9 THC on a dry weight basis.

The Court agrees with Commissioner Quarles that it is not the province of this Court to establish policy, or to make, change or repeal law. That is **solely** the role of the legislative branch. Courts adjudicate based upon the law. Thus, if only natural hemp (unadulterated by any

---

[20] Emphasis added.
[21] Emphasis added.

10

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000010 of 000019

Entered         21-CI-00836       02/28/2022       David Martin, Boone Circuit Clerk
NOT ORIGINAL DOCUMENT
03/17/2022 04:43:35 PM
89824

chemical) is worthy of exemption, then Congress, and the General Assembly, could have made their statutes say so. They did not. Likewise, if the extraction or production of derivatives using non-hemp solvents should have remained a controlled substance, then the legislators could have, by statute, said so. They did not. Nor did the legislative body choose to limit Delta-8 concentrations as it did with Delta-9. Again, they could have but did not. Courts "cannot question the wisdom or policy of the general assembly" but, rather, "must follow the plain provisions of its enactment . . . ." *Boyd v. Land*, 97 Ky. 379, 30 S.W. 1019, 1020 (1895). In applying the law, courts must "look first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson v. Louisville/Jefferson Cty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008). Where intent is suggested that is contrary to the language of the statute, "legislative intent is at best a nebulous will-o'-the-wisp." *Gateway Const. Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky. 1962).

Defendants, however, contend that Delta-8 is nonetheless prohibited as a controlled substance. For this, they point to a chart on the DEA's Website and to guidance by the CDC. Executive agencies may promulgate regulations but only within the scope of the statute enabling their existence. Otherwise, an agency has no constitutional authority to enact law. Administrative agencies are creatures of statute. Consequently, they may not promulgate rules that contradict statute. As explained by the United States Supreme Court in *Dixon v. United States*:

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law * * * but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.

*Dixon v. United States*, 381 U.S. 68, 74 (U.S. 1965), internal quotes and citations omitted.

11

Entered         21-CI-00836       02/28/2022       David Martin, Boone Circuit Clerk

OO : 000011 of 000019

Entered         21-CI-00836      02/28/2022      David Martin, Boone Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        03/17/2022 04:43:35 PM
                                                        89824

The same was also explained by Kentucky's (formerly) highest court concerning the limits on the authority of government agencies and boards (in a case involving the Kentucky Alcoholic Beverage Control Board):

> True, the Legislature . . . vested the Board with certain regulatory and administrative powers, but this does not give the Board authority to adopt regulations extending beyond the scope of the statute which it attempts to administer. . . . [A] public administrative board 'may not, by its rules and regulations, amend, alter, enlarge, or limit the terms of a legislative enactment.'

*Roppel v. Shearer*, 321 S.W.2d 36, 39 (Ky. 1959), internal citations omitted. *Roppel* has never been overruled.

Moreover, as Plaintiffs point out, the DEA's chart reference to Delta-8 does not coincide with the regulations promulgated and published in the Federal Register at 21 CFR 1308.11(31)(ii). If agencies may not promulgate regulations beyond statutory authority, much less may they do so by explanatory statements or charts on a Website. Plaintiffs have demonstrated a substantial question on the merits.

## B. Irreparable Harm

Plaintiffs contend that government actions that are contrary to its duly enacted law constitute irreparable harm. For this, they point primarily to *Boone Creek Props., LLC v. Lexington/Fayette Urban County Bd. of Adjustment*, 442 S.W.3d 36, 40 (Ky. 2014), and quote, in part, the following:

> For a representative government that draws its authority from the respect, good will, and consent of the people, rather than by the force of its armed police and military, the ability to promptly eliminate ongoing violations of laws enacted by the people's representatives is essential to the ability to govern and maintain order in the community.

Defendant Quarles, however, challenges the applicability of *Boone Creek* because it involved injunctive relief in favor of a governmental unit. According to Defendant Quarles, the

12

Entered         21-CI-00836      02/28/2022      David Martin, Boone Circuit Clerk

OO : 000012 of 000019

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
                                                              NOT ORIGINAL DOCUMENT
                                                              03/17/2022 04:43:35 PM
                                                              89824

proper rule is that, "when a *government* seeks to enforce the law, then an injunction against a private citizen is warranted to protect the *government's* right to enforce its laws . . . ."[22] The Court disagrees. In fact, this argument defies the very foundational principle on which our law is based: "That . . . Governments are instituted among [the people], deriving their just powers from the consent of the governed." DECLARATION OF INDEPENDENCE, ¶ 2.

Turning to the arguments concerning delay, Commissioner Burnett contends the timeline alone defeats Plaintiffs' motion because they cannot show the injury to be "immediate." A party's delay may very well undermine their claims of immediacy. By this, it appears Defendant's criticism is that Plaintiffs did not file suit immediately upon receipt of the Kentucky Department of Agriculture's April 19, 2021 letter. That would be a curious position, however, given the arguments presented in this case that Plaintiffs have not alleged sufficient threat of injury. Plaintiffs explain that they chose not to bring their challenge unless enforcement action ensued, and that they elected to serve all parties and await appearances of counsel before moving for injunctive relief. For this they cannot be faulted, especially with regard to the latter.

It remains true, however, that the most significant delay in this case is not attributable to the timing of Plaintiffs' action, but to the briefing deadlines agreed to by the parties and to the

---

[22] Commissioner Quarles' Resp., p. 13, emphasis original.

13

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000013 of 000019

Entered          21-CI-00836          02/28/2022          David Martin, Boone Circuit Clerk
                                                                        NOT ORIGINAL DOCUMENT
                                                                        03/17/2022 04:43:35 PM
                                                                        89824

scheduling limitations of this Court.[23] The Court does not agree that injunctive relief may be denied on the mere basis of delay. Moreover, here the claims of irreparable harm involve government action. Thus, delay is not as determinative because the alleged harm might be of a continuing nature.

As to Defendants' arguments that Plaintiffs' claims are merely monetary and, therefore, cannot be deemed irreparable, the Court disagrees. First, there is also the foregoing consideration concerning a citizen's ability to obtain redress. Second, as Plaintiffs point out, Defendants are shielded from having to pay Plaintiffs any damages for monetary losses. "[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and concurring in the judgment); see, *e.g., Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (holding that a company would suffer an irreparable injury

---

[23] From March 2020 to June 2021, and nearly all months in between, jury trials were prohibited in the courts of Kentucky. When this case was filed in July 2021, this Court had a backlog of cancelled jury trials that had to be reset, many of which involved persons who were being held in custody pending trial. It was during this period the Court attempted to schedule the evidentiary hearing in this matter for September 2021 which, as counsel are aware, the Court had no choice but to cancel. Given matters then pending, the earliest date available on the Court's calendar was for December 16, on which the hearing occurred. And, aside from scheduling issues concerning the hearing date, this matter has been under submission for over sixty days—a circumstance concerning which also invites explanation. In addition, the circumstances of the past two years have caused other bottlenecks aside from the backlog on trials. During the past two years, significant court resources have had to be expended for matters that heretofore were never in issue. Matters that previously required no expense of time became monumental tasks. For example, trying to arrange hearings for persons in custody on warrants in the various detention centers became a monumental task. Frequently, detention centers stated they could not accommodate remote hearings or virtual access. And aside from hearings, often counsel would seek relief from the Court for clients in custody who, due to varying protocols issued by varying persons or agencies, were being denied private meetings with their counsel. Significant Court time had to be spent in trying to alleviate those circumstances by employing various means, including, where all else failed, the issuance of transport orders to accommodate meetings at the Courthouse. There were even instances where detention centers refused to honor a transport order when deputies arrived. Scheduling remote hearings among the various detention centers to coordinate with the calendars of all concerned also required substantial time. And conducting the remote hearings (especially in the first year of the lockdown) proved a great expenditure of time. There were constant problems with bandwidth where the screen would freeze, or audio would drop, and even when the Court's system was functioning, a party or counsel's connection would drop and arrangements then had to be made for telephonic participation, or for rescheduling; or there would be a synchronization problem with the judicial audio-video recording system that threatened the record. It required far more time to do less work. Affording due process became a herculean (if not impossible) task. Thus, the timeline in this case should not be taken as a judgment by the Court that it lacks importance. The Court's submit table has grown heavy with cases, each having issues gravely important to all the parties concerned, and each crying out to be heard.

14

Entered          21-CI-00836          02/28/2022          David Martin, Boone Circuit Clerk

Entered        21-CI-00836    02/28/2022        David Martin, Boone Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        03/17/2022 04:43:35 PM
                                                        89824

from paying allegedly unconstitutional tax because state law provided "no remedy whereby restitution of the money so paid may be enforced"). See *Sampson v. Murray*, 415 U.S. 61, 90 (U.S. 1974), explaining that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." The converse reasoning, therefore, would also hold true.

Additionally, non-compliance here entails not mere monetary fines and costs but the prospect of criminal charges. The April 19, 2021 letter has been presented as the grounds for establishing the illegality of Delta-8 in the issuance of search warrants. Indeed, at the hearing Plaintiffs presented evidence showing where persons in Kentucky have been criminally charged for possessing Delta-8.[24] "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *U. S. v. Goodwin*, 457 U.S. 368, 372 (1982). Irreparable harm is sufficiently demonstrated where it is shown there is potential for the "abrogation of a concrete personal right," and where such rights are threatened with immediate impairment. *Maupin v. Stansbury*, 575 S.W.2d 695, 698 (Ky. 1978).

Commissioner Quarles' argument that, because Plaintiffs can challenge Delta-8 enforcement when or if they are charged criminally is likewise without merit. Nor must Plaintiffs be forced to defy the Commissioner in order to challenge his Delta-8 declaration in an administrative hearing following license revocation See *Roppel v. Shearer*, 321 S.W.2d 36, 39 (Ky. 1959).

For all the foregoing reasons, the Court finds that Plaintiffs have made an adequate showing of irreparable harm.

---

[24] See Plaintiffs' Hearing Exh. 7 and 8.

Entered        21-CI-00836    02/28/2022        David Martin, Boone Circuit Clerk

OO : 000015 of 000019

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk
                                                  NOT ORIGINAL DOCUMENT
                                                  03/17/2022 04:43:35 PM
                                                  89824

## C. Balance of Equities

As part of balancing the equities between the public interest and the respective parties, courts are to consider "whether the injunction will merely preserve the status quo." *Rogers v. Lexington-Fayette Urban County Government*, 175 S.W.3d 569, 571 (Ky. 2005). On Plaintiff's side, the status quo would be to merely recognize the existing statutory definition of hemp, and the corresponding application of the statutory exemption of hemp. On Defendants' side, the status quo would be to allow criminal enforcement, or license revocation, on the grounds declared in the April 19, 2021 letter by the Kentucky Department of Agriculture despite it being contrary to the statutory exemption.

Defendants both argue the equities weigh against injunctive relief. According to Commissioner Burnett, equity favors denying the injunction because "the public has an interest in the enforcement and application of Kentucky criminal statutes by state law enforcement."[25] And Commissioner Quarles contends that "Delta-8 THC is potentially dangerous to a user's health, and is not approved for human consumption by the U.S. Food and Drug Administration," and that, although "Delta-8 THC is largely unregulated by federal and Kentucky law, . . . a court order prospectively blessing the sale of unregulated, untested, and psychoactive drugs to the public, including children, is not in the public interest."[26]

At the hearing, Defendants presented a witness who testified to adverse effects she experienced from taking two doses of a product containing Delta-8 within a period of 30 to 45 minutes. Defendants also presented testimony concerning the adverse effects Delta-8 can produce in small children, especially if taken in substantial quantities. Defendants' further

---

[25] Commissioner Burnett's Reply (deemed his Response), p. 6, fn. 2.
[26] Commissioner Quarles' Resp., pp. 15-16.

16

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000016 of 000019

Entered        21-CI-00836      02/28/2022      David Martin, Boone Circuit Clerk
                                                              NOT ORIGINAL DOCUMENT
                                                              03/17/2022 04:43:35 PM
                                                              89824

presented evidence of health care practitioners indicating that, despite warnings on packaging, there have been instances where children have obtained products containing Delta-8.

It is clear from the testimony presented that the agents and officers who testified have the best of intentions. But there are many harmful things offered to the public that may injure them physically, mentally, or morally. Regardless of that fact, however, no agency or officer can prohibit possession or distribution without legislative enactment. There is a reason our system does not allow those charged with enforcing the law to also make the law.

In *Roppel v. Shearer*, Kentucky's then highest court considered a very similar argument to the equity arguments presented by Defendants. There, the Kentucky Alcohol Control Board promulgated a regulation declaring it to be illegal for licensed retailers of malt beverages to either take orders for alcoholic beverages over the telephone or to deliver said beverages beyond the premises of the licensee. The underlying statute provided that alcohol sales must be "from the licensed premises only," not "at the license premises only." The Board argued this was sufficient to enable it to impose the regulation. The Board further argued the regulation was necessary to prevent retailers from selling alcohol to minors. The retailer sought a temporary and permanent injunction against the Board. In resolving the issue, Kentucky's then highest court held:

> **This may be a moral and laudable purpose by the Board, but** the statute cannot be construed as limiting sales by a retailer in any such manner. . . . the Board broadened the statutes and included therein matters not written into the statutes by the Legislature. **The Board cannot substitute its judgment for that of the Legislature but must accept the law as enacted by that body**. It is elementary that the Legislature cannot delegate its functions to others. . . . **Whenever the Board adopted regulations which conflicted with the statute, this court has consistently refused to sustain the regulations**.

*Roppel v. Shearer*, 321 S.W.2d 36, 39 (Ky. 1959) (emphasis added; internal citations omitted).

Entered        21-CI-00836      02/28/2022      David Martin, Boone Circuit Clerk

OO : 000017 of 000019

Entered          21-CI-00836        02/28/2022           David Martin, Boone Circuit Clerk
                                                      NOT ORIGINAL DOCUMENT
                                                      03/17/2022 04:43:35 PM
                                                      89824

As this Court already stated, it agrees with Defendants that it is not the province of the courts to establish policy. But neither is it the province of governmental agencies to contravene the enactments of the legislative branch. Among the problems with Defendants' reasoning is it would do so, resulting in placing administrative agencies over the legislative branch that created them. And in no circumstance can that be said to serve equity.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiffs' Motion for Temporary Injunction is **GRANTED** as follows:

1. That Defendant, Hon. Ryan Quarles, in his official capacity as Commissioner of the Kentucky Department of Agriculture, as well as its officers and agents are, during the pendency of this case, **ENJOINED** from instituting or continuing any license revocation or other adverse action against licensees on the basis of legally compliant Hemp (the plant Cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis), as well as any part of that plant that is compliant (that has a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis), including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, provided none of those materials have a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis; this includes any products that contain delta-8 tetrahydrocannabinol unless it contains more than 0.3 percent delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

   That Defendant Colonel Phillip Burnett, Jr., in his official capacity as Commissioner of the Kentucky State Police, as well as its officers, agents, and other persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are, during the pendency of this case, **ENJOINED** from instituting or continuing any criminal enforcement action on the basis of legally compliant Hemp (the plant Cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis), as well as any part of that plant that is compliant (that has a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis), including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, provided none of those materials have a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis; this includes any products that contain delta-8 tetrahydrocannabinol unless it contains more than 0.3 percent delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

Entered          21-CI-00836        02/28/2022           David Martin, Boone Circuit Clerk

OO : 000018 of 000019

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

NOT ORIGINAL DOCUMENT
03/17/2022 04:43:35 PM
89824

**IT IS FURTHER HEREBY ORDERED AND ADJUDGED** that Pursuant to C.R. 65.05(1), the Court finds it in the public interest to waive the bond requirement.

**IT IS SO ORDERED**.

/s/ HON. RICHARD A. BRUEGGEMANN
electronically signed
2/28/2022 5:40:11 PM ET

**JUDGE RICHARD A. BRUEGGEMANN**
**BOONE CIRCUIT COURT**

CC: ALL COUNSEL AND PARTIES OF RECORD.

Entered        21-CI-00836        02/28/2022        David Martin, Boone Circuit Clerk

OO : 000019 of 000019