IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BIO GEN, LLC,** *et al.*                                                                       **PLAINTIFFS**

v.                                          4:23-CV-00718-BRW

**SARAH HUCKABEE SANDERS,** *et al.*                                       **DEFENDANTS**

## ORDER

Pending are Plaintiffs' Motion for Preliminary Injunction (Doc. No. 2) and Defendants' Motion to Dismiss (Doc. No. 38). The issues have been fully briefed. After hearing arguments and reviewing the evidence presented during the hearing on August 23, 2023, I am fully advised in the premises. For the reasons set out below, the Plaintiffs' motion is GRANTED and Defendants' motion is DENIED.

**I.      BACKGROUND**

   **A.      2014 Farm Bill**

On February 7, 2014, President Obama signed into law the Agricultural Act of 2014 ("2014 Farm Bill")[1], which permitted states to grow "industrial hemp" under certain conditions. "Industrial hemp" was defined in the 2014 Farm Bill as the plant Cannabis sativa L., or any part of such plant, "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."[2] The 2014 Farm Bill did not remove industrial hemp from federal controlled substances schedules.

In 2017, the Arkansas General Assembly passed Act 981 which allowed the state to develop a hemp research program.

---

[1] Pub. L. No. 113-79.

[2] 7 U.S.C. § 5940(b).

1

B.     **2018 Farm Bill**

On December 20, 2018, President Trump signed into law the Agriculture Improvement Act of 2018[3] ("2018 Farm Bill"), which removed hemp from the federal schedule of controlled substances and amended the Agricultural Marketing Act of 1946 "to allow States to regulate hemp production based on a state or tribal plan."[4] The 2018 Farm Bill also expanded the 2014 Farm Bill's definition of hemp to include "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and *all derivatives*, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis."[5]

The 2018 Farm Bill explicitly states that "No Preemption" is intended of any law of a state or Indian tribe that "regulates the production of hemp" and "is more stringent" than federal law.[6] However, the 2018 Farm Bill prohibited states from restricting the transportation of hemp in interstate commerce:

> (a) RULE OF CONSTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113) or hemp products.
>
> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No state or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.[7]

---

[3] Pub. L. No. 115-334.

[4] H.R. Rep. No. 115- at 738 (2018).

[5] 7 U.S.C. § 1639o(1) (emphasis added).

[6] 2018 Farm Bill § 10113.

[7] *Id.* § 10114.

The Conference Report for the 2018 Farm Bill states that, "[w]hile states and Indian tribes may limit the production and sale of hemp and hemp products within their borders, . . . such states and Indian tribes [are not permitted] to limit the transportation or shipment of hemp or hemp products through the state or Indian territory."[8] Additionally, the Conference Report explains that "state and Tribal governments are authorized to put more restrictive parameters on the production of hemp, but are not authorized to alter the definition of hemp or put in place policies that are less restrictive."[9]

In 2019, Arkansas passed Act 504 which distinguished hemp from marijuana by removing hemp as defined in the 2018 Farm Bill from the state's Uniform Controlled Substances Act. Then, in 2021, the Arkansas legislature removed the requirement that a research plan be provided in order to obtain a hemp license.[10]

C.    Act 629

During the 2023 legislative session, the 94th General Assembly passed Senate Bill 358 amending the law "concerning certain Delta THC substances; to prohibit the growth, processing, sale, transfer, or possession of industrial hemp that contains certain Delta THC substances; to include Delta-8, Delta-9, and Delta-10 THC in the list of Schedule VI controlled substances; to declare an emergency; and for other purposes."[11]  On April 11, 2023, the bill was signed into law by Governor Sanders as Act 629.

---

[8]Conf. Rep. at 739.

[9]*Id.* at 738.

[10]2021 Arkansas Laws Act 565 (H.B. 1640).

[11]2023 Arkansas Laws Act 629 (S.B. 358).

Act 629 excluded hemp derived-cannabinoid products from the definition of marijuana, but criminalized all hemp products "produced as a result of a synthetic chemical process" and "[a]ny other psychoactive substance derived therein."[12]

Act 629 attempts to address interstate transportation issues with the following provisions:

> This section does not prohibit the continuous transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths percent (0.3%) on a dry weight basis, produced in accordance with 7 U.S.C. § 20 1639o et seq.[13]

> This subchapter does not prohibit in any form the continuous transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total delta-9trahydrocannabinol concentration of not more than three-tenths percent (0.3%) on a dry weight basis, from one licensed hemp producer in another state to a licensed hemp handler in another state.[14]

On July 31, 2023, Plaintiffs filed their Complaint for Declaratory and Injunctive Relief[15] and, on that same day, Plaintiffs filed a Motion for TRO and Preliminary Injunction.[16] Plaintiffs contend that Act 629 is preempted by the 2018 Farm Bill, violates the Commerce Clause, is a regulatory taking in violation of the Fifth Amendment, and is unconstitutionally vague.

On August 8, 2023, Defendants filed their Response to Plaintiffs' motion and included a motion to dismiss certain named Defendants based on sovereign immunity.[17] On August 15,

---

[12] Ark. Code Ann. §§ 5–64–215(i)-(j).

[13] Act 629 § 7.

[14] *Id.* at Section 10.

[15] Doc. No. 1.

[16] Doc. No. 2.

[17] Doc. No. 38.

4

2023, Plaintiffs filed an Amended Complaint.[18]  The Amended Complaint removed the State of Arkansas as a Defendant and identified Jim Hudson, in his official capacity as director of the Arkansas Department of Finance and Administration; Greg Sled, in his official capacity as director of the Arkansas Tobacco Control Board; Wes Ward, in his official capacity as secretary of the Arkansas Department of Agriculture; and Matthew Marsh, in his official capacity as director of the Arkansas State Plant Board, as party Defendants, which they contend mooted Defendants' motion to dismiss.  Defendants disagree and argue that Governor Sanders and Attorney General Griffin are entitled to sovereign immunity and should be dismissed.[19]

## II.    APPLICABLE LAW

### A.    Sovereign Immunity and Standing

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies."[20]  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement."[21]  To establish standing, a plaintiff must show that he has suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and will likely be redressed by a favorable decision.[22]  Plaintiffs must establish standing for declaratory and injunctive relief.[23]

---

[18]Doc. No. 51.

[19]Doc. No. 57.

[20]*Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015) (citation omitted).

[21]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[22]*Id.* at 560–61.

[23]*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); see *Mosby v. Ligon*, 418 F.3d 927, 932–33 (8th Cir. 2005).

"The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." The Eleventh Amendment also bars suits brought against state officials if "the state is the real, substantial party in interest."[24] In *Ex Parte Young*, the Supreme Court established a significant exception to this immunity.[25] The Court held that a suit to enjoin a state official's enforcement of state legislation on the ground that the official's action would violate the Constitution is not a suit against the State, and is thus not barred by the Eleventh Amendment, so long as the official has "some connection with the enforcement of the act."[26] The Court reasoned that unconstitutional state legislation is "void," and that a state official's enforcement of that legislation therefore "is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity."[27] Enforcement of unconstitutional legislation "is simply an illegal act upon the part of [the] state official," and the State may not immunize officials from suit for such violations of the Constitution.[28]

If state officials have "some connection with the enforcement" of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III is satisfied.[29]

---

[24]*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted).

[25]*Ex parte Young*, 209 U.S. 123 (1908).

[26]*Id.* at 155–60; see *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011).

[27]*Ex Parte Young*, 209 U.S. at 159.

[28]*Id.* at 159–60.

[29]*Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006).

### B. Private Right of Action Under the 2018 Farm Bill

Other jurisdictions that have addressed the preemption of state laws attempting to regulate "industrial hemp" under the 2018 Farm Bill, considered whether the 2018 Farm Bill created a private right of action for a Section 1983 claim.[30] Neither party initially raised the issue, so I directed the parties to brief it. Defendants seized on this opportunity and argue that I should dismiss Plaintiffs' claims because the 2018 Farm Act does not support a cause of action under Section 1983. Plaintiffs contend that a private right of action is not required under the facts of this case, but encourage me to find that one does exist. Based on the parties' briefs and the arguments made during the hearing, I am inclined to agree that a private right of action under the 2018 Farm Bill is not required in this case.

There are important differences between this case and the *Dines* and *Serna* cases.[31] In those cases, the plaintiffs did not allege that the state laws were different from the 2018 Farm Bill.[32] In fact, the state and federal laws were identical.[33] Instead, the claims arose from interpretations of the state and federal laws by state officials and property that had been confiscated by the state officials. Those circumstances would require a finding that the 2018 Farm Bill provided a private right for the possession of the hemp products at issue in those cases.

---

[30]Compare *Dines v. Kelly*, No. 222CV02248KHVGEB, 2022 WL 16762903, at *1 (D. Kan. Nov. 8, 2022) and *Serna v. Denver Police Dep't*, No. 21-CV-00789-WJM-MEH, 2021 WL 6503753, at *5 (D. Colo. June 9, 2021), report and recommendation adopted, No. 21-CV-0789-WJM-MEH, 2021 WL 5768993 (D. Colo. Dec. 6, 2021), *aff'd*, 58 F.4th 1167 (10th Cir. 2023) with *Duke's Invs. LLC v. Char*, No. CV 22-00385 LEK-RT, 2022 WL 17128976, at *4 (D. Haw. Nov. 22, 2022).

[31]*Dines*, 2022 WL 16762903, at 1; *Serna v. Denver Police Dep't*, 2021 WL 6503753, at 5.

[32]*Id.*

[33]*Id.*

7

Here, Plaintiffs allege the Arkansas law itself is unconstitutional because Act 629 differs from the 2018 Farm Bill. Accordingly, this is not an appropriate case to decide the private right of action issue.

### C. Preliminary Injunction Standard

Plaintiffs' claims must be analyzed under the *Dataphase* factors to determine if a preliminary injunction is warranted.[34] The factors are: "(1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest."[35] In balancing these equities no single factor is determinative but an "absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction."[36]

## III. DISCUSSION

### A. Sovereign Immunity and Standing

Defendants assert that Governor Sanders and Attorney General Griffin are not proper defendants because they have no specific statutory or constitutional duty to enforce the challenged Arkansas laws. Clearly, the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of the law. Here, the Governor has a responsibility as chief executive for the enforcement of the criminal laws of the state, which are implicated here,[37]

---

[34] *Dataphase Systems, Inc., v. C L Systems, Inc.*, 640 F.2d 109, 112 (8th Cir. 1981).

[35] *Id.*

[36] *Id.* at 114.

[37] See Ark. Const. art. VI, § 2.

and the attorney general has a specific role in Act 629.[38] Accordingly, Governor Sanders and Attorney General Griffin are proper defendants in this case. Defendants' motion is denied.

### B. Preliminary Injunction

#### 1. Merits

##### a. Preemption

The federal preemption doctrine stems from the Constitution's Supremacy Clause, which states that laws of the United States made under the Constitution are the "supreme law of the land."[39] "[S]tate laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid," or preempted.[40] "Whether a particular federal statute preempts state law depends upon congressional purpose."[41] In analyzing the issue of preemption, the Supreme Court is highly deferential to state law in areas traditionally regulated by the states.[42]

The Eighth Circuit has stated that "there are three primary ways that federal law may preempt state law."[43] First, federal law may preempt state law where Congress has expressly

---

[38]See Ark. Code Ann. §§ 20-56-405, 413 "Sections 6-14 of this act shall become effective only upon the certification of the Arkansas Attorney General that the State of Arkansas is currently enjoined from enforcing Sections 2-5 of this act relating to delta-8 tetrahydrocannabinol and delta-10 tetrahyrdocannabinol, but no earlier than August 1, 2023."

[39]U.S. Const. Art. VI, cl. 2.

[40]*Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991).

[41]*In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 791 (8th Cir. 2010).

[42]*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995).

[43]*N. Natural Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 821 (8th Cir. 2004).

stated that it intends to prohibit state regulation in a particular area.[44] Second, federal law may preempt state law where Congress has implicitly preempted state regulation by the "occupation of a field."[45] A field is occupied when the federal regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."[46] Finally, even if Congress has not completely precluded the ability of states to regulate in a field, state regulations are preempted if they conflict with federal law.[47] Such a conflict exists "when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress."[48] To determine Congressional intent, courts "may consider the statute itself and any regulations enacted pursuant to the statute's authority."[49] Plaintiffs bear the burden of proving preemption.[50] Plaintiffs do not make an implied preemption claim, so I will only consider conflict and express preemption.

I. **Conflict Preemption**

Plaintiffs argue the 2018 Farm Bill unambiguously defined hemp with no limitation that the THC be a percentage of the cannabidiol, which it contends "is not even feasible to grow."[51] Additionally, Plaintiffs point to the fact that there is no distinction in the federal law between

---

[44] *Id.* (citing *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)).

[45] *Id.*

[46] *Id.* (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

[47] *Id.* (citing *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248 (1984)).

[48] *Id.*

[49] *Aurora Dairy*, 621 F.3d at 792.

[50] *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 967 (8th Cir. 2021) (citing *Williams v. Nat'l Football League*, 582 F.3d 863, 880 (8th Cir. 2009).

[51] Doc. No. 3, p. 10.

Delta-8 THC and Delta-9 THC, nor synthetic or non-synthetic hemp.[52] Plaintiffs contend that Act 629 makes hemp production impossible and unconstitutionally "places federally protected hemp back on the controlled substance list."[53] Plaintiffs assert that since the "2018 Farm Bill controls the definition of hemp and removes it from the list of controlled substances – and because Act 629 does precisely the opposite – federal law preempts Act 629."[54] Defendants contend that Act 629's definition is essentially the same as the federal definition and any differences are consistent with federal law.[55]

> Section 2 of Act 629 provides:
>
> "Industrial hemp" means the plant Cannabis sativa and any part of the plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total delta-9 tetra-hydrocannabinol concentration of no more than three-tenths of one percent (0.3%) of the hemp-derived *cannabidiol* on a dry weight basis, *unless specifically controlled under the Uniform Controlled Substances Act, § 5-64-101 et seq.*[56]
>
> The federal definition provides:
>
> The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydro-cannabinol concentration of not more than 0.3 percent on a dry weight basis.[57]

---

[52]*Id.*

[53]*Id.*

[54]*Id.*

[55]Doc. No. 38, p. 25.

[56]Ark. Code Ann. § 2-15-503(5) (emphasis added).

[57]7 U.S.C. 1639o(1).  I note that the Drug Enforcement Administration has incorporated the 2018 Farm Bill's definition into its regulations. The entry for tetrahydrocannabinols on the DEA's regulatory schedule I exempts "any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. [§] 1639o."

11

While the two definitions seem similar at first glance, they are not. Importantly, Act 629's definition limits hemp to products with a Delta-9 THC concentration that is a percentage concentration of a different cannabinoid, cannabidiol, which is absent from the 2018 Farm Bill's definition. Plaintiffs' expert, Dr. Mark Krause, persuasively explained the difference at the injunction hearing. Defendants' response from its expert, Mr. Adam Hargis, did nothing to contradict Plaintiffs' position.

Additionally, Act 629's definition references the Arkansas Uniform Controlled Substances Act, which, after the additions from Section 6 of Act 629, in relevant part provides:

> (5) Synthetic substances, derivatives, or their isomers in the chemical structural classes described below in subdivisions (a)(5)(A)-(J) of this section and also specific unclassified substances in subdivision (a)(5)(K) of this section. Compounds of the structures described in this subdivision (a)(5), regardless of numerical designation of atomic positions, are included in this subdivision (a)(5). The synthetic substances, derivatives, or their isomers included in this subdivision (a)(5) are:
> (A) (I) Tetrahydrocannabinols, including without limitation the following:
> (a) Delta-1 cis or trans tetrahydrocannabinol, otherwise known as a delta-9 cis or trans tetrahydrocannabinol, and its optical isomers;
> (b) Delta-6 cis or trans tetrahydrocannabinol, otherwise known as a delta-8 cis or trans tetrahydrocannabinol, and its optical isomers;
> (c) Delta-3,4 cis or trans tetrahydrocannabinol, otherwise known as a delta-6a,10a cis or trans tetrahydrocannabinol, and its optical isomers;
> (d) Delta-10 cis or trans tetrahydrocannabinol, and its optical isomers;
> (e) Delta-8 tetrahydrocannabinol acetate ester;
> (f) Delta-9 tetrahydrocannabinol acetate ester;
> (g) Delta-6a,10a tetrahydrocannabinol acetate ester;
> (h) Delta-10 tetrahydrocannabinol acetate ester;
> (I) A product derived from industrial hemp that was produced as a result of a synthetic chemical process that converted the industrial hemp or a substance contained in the industrial hemp into delta-8, delta-9, delta-6a,10a, or delta-10 tetrahydrocannabinol including their respective acetate esters; and
> (j) Any other psychoactive substance derived therein.[58]

The THC substances listed above are likely legal under the 2018 Farm Bill. The relevant portion of the 2018 Farm Bill removes "hemp" from the definition of marijuana in the Controlled

---

[58] Ark. Code Ann. § 5-64-215(a).

Substances Act.[59]  Under the 2018 Farm Bill's standard, the only way to distinguish controlled marijuana from legal hemp is the Delta-9 THC concentration level.  Additionally, the definition extends beyond just the plant to "all derivatives, extracts, [and] cannabinoids."[60]  The definition covers downstream products and substances, if their Delta-9 THC concentration does not exceed the statutory threshold.

    Plaintiffs' expert, Dr. Krause, testified that in the chemistry context, the terms in the 2018 Farm Bill's definition of hemp capture a wide variety of potential substances and products.  Dr. Krause testified, for instance, that Delta-8 THC is one of many cannabinoids produced naturally by the cannabis plant with no way to determine whether a product is derived from hemp or not.  This indicates that the products are properly understood as a derivative, extract, or cannabinoid originating from the cannabis plant and containing "not more than 0.3 percent" Delta-9 THC.  Defendants assert that "[b]]ecause Delta-9-THCO and Delta-8-THCO do not occur naturally in the cannabis plant and can only be obtained synthetically, and therefore do not fall under the definition of hemp."  However, Defendants' expert provided no testimony on this issue or rebuttal to Plaintiffs' position.

    Relying on the DEA's explanation of its implementing regulations.[61]  Defendants contend that the products at issue here are Schedule I substances because they are "synthetic."  However, the 2018 Farm Bill's definition of hemp does not limit its application to method "derivatives, extracts, [and] cannabinoids" are produced.  Instead, the definition covers all downstream products if they do not cross the 0.3 percent Delta-9 THC threshold.  Additionally, Dr. Krause

---

[59] Pub. L. No. 91-513, 84 Stat. 1242 (1970).

[60] 7 U.S.C. § 1639o(1).

[61] 21 CFR § 1308.11(d)(31).

13

testified that there is no way to determine whether these substance are derived from a hemp plant or through a completely synthetic process because the substances are molecularly the same. Again, Defendants' expert failed to rebut this assertion.

Congress realized potential benefits with hemp as it defined it, and allowed states to participate in its research and development. Once, at least some benefits were recognized, Congress took steps to legalize hemp nationally. Arkansas apparently saw some benefits as well, and got onboard with the federal program. Now, after realizing some potential negative implications with its participation, the Arkansas legislature has attempted take a step back. Clearly, under the 2018 Farm Bill, Arkansas can regulate hemp production and even ban it outright if it is so inclined. The legislature seems to have tried to keep the parts of the program it likes (purely industrial uses) and eliminate the parts it doesn't (human consumption).[62] That may very well be an acceptable distinction as it applies to the state's criminal code, but changing definitions in a federal program, which it has already fully joined, is not a constitutionally valid way to do it. Accordingly, Plaintiffs have shown they are likely to succeed on their conflict preemption claim.

## ii.   Express Preemption

The 2018 Farm Bill explicitly provides that "No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable."[63]

---

[62] 2023 Arkansas Laws Act 629 § 1.

[63] 2018 Farm Bill § 10114.

Act 629 contains Section 7 that takes effect if any part of Sections 1-5 are enjoined, which attempts to address the interstate commerce issue. It provides:

> This section does not prohibit the *continuous* transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis, produced in accordance with 7 U.S.C. § 1639o *et seq*.[64]

"Continuous transportation" is not defined or explained in Act 629 or elsewhere, which makes this attempt ineffective. As Plaintiffs point out, "Would an employee from a state like Tennessee that regulates and taxes hemp products like delta-8 THC be subject to criminal liability when stopping for gas or staying overnight before reaching the final destination outside of Arkansas?"[65] I can't answer that question. Based on testimony at the hearing, Plaintiffs do not know, and I don't think anyone can know based on Act 629 as written.

Defendants rely heavily on the fact that the 2018 Farm Bill permits states to impose stricter regulations on the "production" of hemp within state borders to support its argument that the challenged provisions of Act 629 are not expressly preempted, and, in fact, are supported by the 2018 Farm Bill's anti-preemption language.[66] However, the anti-preemption language Defendants cite specifically references more stringent in-state regulation only as to the <u>production</u> of hemp, which means that Arkansas may continue to enforce laws regarding the growing of hemp within its borders, but not its interstate transportation.

The 2018 Farm Bill clearly provides that states may not pass laws that interfere with the right to transport hemp in interstate commerce—including hemp derivatives like Plaintiffs'

---

[64]Ark. Code Ann. § 5-64-215(d) (emphasis added).

[65]Doc. No. 53, p. 9.

[66]Doc. No. 38, p. 25.

products at issue here—that have been lawfully produced under a state or Tribal plan or under a license issued under the USDA plan. Arkansas law criminalizes hemp-derived products without an effective exemption for interstate commerce. For these reasons, Plaintiffs have shown a likelihood of success on the merits of their claim that Act 629 is expressly preempted by the 2018 Farm Bill.

### b. Void for Vagueness Claim

The Due Process Clause dooms certain laws that are too vague. A law crosses that threshold when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."[67]

Act 629 contains terms that would confuse even an exceptionally intelligent reader. Specifically, "continuous transportation", "synthetic substance", and "psychoactive substances" are vague, and are not defined in the statute. Additionally, Section 10 of Act 629 provides that a hemp-derived product "shall not be combined with or contain any of the following: . . . Any amount of tetrahydrocannabinol as to create a danger of misuse, overdose, accidental overconsumption, inaccurate dosage, or other risk to the public." What is a "danger of misuse" or "other risk to the public"? How do you quantify an "overdose" or "inaccurate dosage"? These terms are paired with, at best, fuzzy standards – and record includes no explicit statutory definition – making it next to impossible for the typical person to know what to do. If the person guesses wrong, the consequences are potential criminal punishment.

Circumstances like these, could make Act 629 void for vagueness. Accordingly, Plaintiffs have shown a likelihood of success on their void for vagueness claim.[68]

---

[67] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391(1926).

[68] Plaintiffs' preemption and void for vagueness claims are the most likely to succeed, therefore I will not discuss the remaining commerce clause and takings claims.

### 2. Irreparable Harm

Plaintiffs have shown that, without the relief they seek, they will be subject to irreparable harm in the form of a credible threat of criminal sanctions. With regard to potential lost profits, I am not persuaded that Plaintiffs can be made whole with money damages, as the financial losses they stand to suffer by complying with the likely unconstitutional portions of the statute cannot be easily measured or reliably calculated, given the novelty of the hemp industry in Arkansas and the dearth of historical sales data to use as a baseline for calculating lost revenues stemming from Act 629.

Plaintiffs have shown that, in the absence of preliminary injunctive relief, they are likely to suffer irreparable harm for which they have no adequate remedy at law.

### 3. Balance of Equities

Absent an injunction, Plaintiffs will suffer the irreparable harms discussed above, namely, a credible threat of criminal prosecution that could affect Plaintiffs' ability to procure a license to grow or handle legal hemp as well as an untold amount of lost profits. Potential harm to Defendants is negligible.

### 4. Public Interest

Since Plaintiffs have shown a likelihood of prevailing on the merits of their claim that the challenged provisions of Act 629 are preempted by federal law and void for vagueness, the public interest also supports the issuance of the injunction Plaintiffs seek. The public does not have an interest in the enforcement of a statute that Plaintiffs have shown likely violates the Constitution.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction (Doc. No. 2) is GRANTED. Defendants are hereby PRELIMINARILY ENJOINED until further order of this Court from enforcing Act 629. Defendants are directed to inform forthwith all the affected Arkansas state governmental entities of this injunction. Defendants' Motion to Dismiss (Doc. No. 38) is DENIED. The case will proceed to a bench trial set for August 27, 2024 at 9:30 a.m.

IT IS SO ORDERED this 7th day of September, 2023.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE
