# United States Court of Appeals
### For The Eighth Circuit
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

4:23-cv-00718-BRW

June 24, 2025

```
FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
Jun 24, 2025
Tammy H. Downs, Clerk
By: JohnHibbs D.C.
                    DEP CLERK
```

Asher Steinberg
ATTORNEY GENERAL'S OFFICE
101 W. Capitol Avenue
Little Rock, AR  72201-0000

      RE:  23-3237  Bio Gen LLC, et al v. Sarah Huckabee Sanders, et al

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

      Susan E. Bindler
      Clerk of Court

CRJ

Enclosure(s)

cc:     Jordan Broyles
      Clerk, U.S. District Court, Eastern District of Arkansas
      Lee Curry
      Seth Goldberg
      William R. Heaston
      Abtin Mehdizadegan
      Robert M. Palumbos
      Allison Lynn Tschiemer Scott
      Joseph Charles Stepina
      Justin Swanson
      Paul D. Vink

District Court/Agency Case Number(s):   4:23-cv-00718-BRW

**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Susan E. Bindler**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 24, 2025

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE: 23-3237  Bio Gen LLC, et al v. Sarah Huckabee Sanders, et al

Dear Sir or Madam:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellants and appeared on the appellants' brief, was Asher Steinberg, Senior Assistant Solicitor General, of Little Rock, AR.

     Counsel who presented argument on behalf of the appellees and appeared on the appellees' brief, was Abtin Mehdizadegan, of Little Rock, AR. The following attorney(s) also appeared on the appellees' brief;  Allison Lynn Tschiemer Scott, of Little Rock, AR.,  Joseph Charles Stepina, of Little Rock, AR.,  Justin Swanson, of Indianapolis, IN.,  Paul D. Vink, of Indianapolis, IN.

     The following attorney(s) appeared on the amicus brief of American Trade Association for Cannabis and Hemp;  Robert M. Palumbos, of Philadelphia, PA.,  Seth Goldberg, of Philadelphia, PA.,  William R. Heaston, of Philadelphia, PA.

     The following attorney(s) appeared on the amicus brief of Hemp Industries Association; Lee Curry, of Little Rock, AR..

     The judge who heard the case in the district court was Honorable Billy Roy Wilson.

     If you have any questions concerning this case, please call this office.

                                          Susan E. Bindler
                                          Clerk of Court

CRJ

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):   4:23-cv-00718-BRW

# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3237

_____

Bio Gen LLC; Drippers Vape Shop LLC; Cigarette Store LLC, doing business as Smoker Friendly; Sky Marketing Corporation, doing business as Hometown Hero

*Plaintiffs - Appellees*

v.

Sarah Huckabee Sanders, Governor; in her official capacity; Tim Griffin, Attorney General; in his official capacity; Todd Murray, in his official capacity as prosecuting attorney for the State of Arkansas; Sonia Eileen Fonticiella, in her official capacity as prosecuting attorney for the State of Arkansas; Devon Holder, in his official capacity as prosecuting attorney for the State of Arkansas; Matt Durrett, in his official capacity as prosecuting attorney for the State of Arkansas; Jeff Phillips, in his official capacity as prosecuting attorney for the State of Arkansas; Will Jones, in his official capacity as prosecuting attorney for the State of Arkansas; Teresa Howell, in her official capacity as prosecuting attorney for the State of Arkansas; Ben Hale, in his official capacity as prosecuting attorney for the State of Arkansas; Connie Mitchell, in her official capacity as prosecuting attorney for the State of Arkansas; Dan Turner, in his official capacity as prosecuting attorney for the State of Arkansas; Jana Bradford, in her official capacity as prosecuting attorney for the State of Arkansas; Frank Spain, in his official capacity as prosecuting attorney for the State of Arkansas; Tim Blair, in his official capacity as prosecuting attorney for the State of Arkansas; Kyle Hunter, in his official capacity as prosecuting attorney for the State of Arkansas; Daniel Shue, in his official capacity as prosecuting attorney for the State of Arkansas; Jeff Rogers, in his official capacity as prosecuting attorney for the State of Arkansas; David Ethredge, in his official capacity as prosecuting attorney for the State of Arkansas; Tom Tatum, II, in his official capacity as prosecuting attorney for the State of Arkansas; Drew Smith, in his official capacity as prosecuting attorney for the State of Arkansas; Rebecca Reed McCoy, in her official capacity as prosecuting attorney for the State of Arkansas; Michelle Lawrence, in her official capacity as prosecuting attorney for the State of Arkansas; Debra Buschman, in her official

capacity as prosecuting attorney for the State of Arkansas; Tony Rogers, in his official capacity as prosecuting attorney for the State of Arkansas; Nathan Smith, in his official capacity as prosecuting attorney for the State of Arkansas; Carol Crews, in her official capacity as prosecuting attorney for the State of Arkansas; Kevin Holmes, in his official capacity as prosecuting attorney for the State of Arkansas; Chris Walton, in his official capacity as prosecuting attorney for the State of Arkansas; Chuck Graham, in his official capacity as prosecuting attorney for the State of Arkansas; Jim Hudson, in his official capacity as director of the Arkansas Department of Finance and Administration (originally named as Arkansas Department of Finance and Administration); Greg Sled, in his official capacity as director of the Arkansas Tobacco Control Board (originally named as Arkansas Tobacco Control Board); Wes Ward, in his official capacity as secretary of the Arkansas Department of Agriculture (originally named as Arkansas Department of Agriculture); Matthew Marsh, in his official capacity as chair of the Arkansas State Plant Board (originally named as Arkansas State Plant Board)

*Defendants - Appellants*

------------------------------

American Trade Association for Cannabis and Hemp

*Amicus on Behalf of Appellant(s)*

Hemp Industries Association

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: September 24, 2024
Filed: June 24, 2025

_____

Before COLLOTON, Chief Judge, LOKEN and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Arkansas Act 629 made much of Arkansas's previously legal hemp industry illegal. A coalition of affected businesses (Bio Gen) sued state officers in their official capacities (collectively, Arkansas), alleging that Act 629 is unconstitutional. The district court granted Bio Gen's motion for a preliminary injunction and denied Arkansas's motion to dismiss the Governor and the Attorney General. We reverse.

I.

A.

The Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490, 4908–14, 5018 (2018), (codified at 7 U.S.C. §§ 1639o–1639s) (2018 Farm Bill),[1] legalizes hemp at the federal level. *See* § 1639o(1) (defining hemp); *see also* 2018 Farm Bill § 12619 (codified at 21 U.S.C. § 802(16)(B)(i)) (exempting hemp from the definition of "marihuana" in the federal Controlled Substances Act). States may take primary regulatory authority over hemp production after they apply for and receive permission from the United States Department of Agriculture. § 1639p.

Two clauses define the contours of this federal-state relationship. First, the anti-preemption clause:

> Nothing in this subsection [(relating to state submitted plans)] preempts or limits any law of a State or Indian tribe that—
>     (i)   regulates the production of hemp; and
>     (ii)  is more stringent than this subchapter.

7 U.S.C. § 1639p(a)(3)(A). Second, the anti-preemption clause is subject to an express preemption clause:

---

[1]All citations to Title VII of the United States Code, unless otherwise noted, are to the provisions as amended by the 2018 Farm Bill § 10113.

-3-

(a) RULE OF CONSTRUCTION.—Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

(b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS.—No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114.

Arkansas applied for and received USDA approval to assume primary regulatory authority over in-state hemp production. *See* USDA, *Status of State and Tribal Hemp Production Plans for USDA Approval*, https://www.ams.usda.gov/rules-regulations/hemp/state-and-tribal-plan-review (last visited June 18, 2025). In 2019, the state legislature enacted the approved plan into state law. *See* 2019 Ark. Acts 504.

B.

In 2023, Arkansas Governor Sarah Huckabee Sanders signed Act 629 into law, criminalizing many previously legal hemp products. Act 629 narrows the scope of legal hemp production and distribution by lowering the legal limit of delta-9 tetra-hydro-cannabinol (THC) concentration[2] and carving out any substance explicitly

---

[2]Specifically, § 2 changes the detonator of the 0.3 percent delta-9 THC concentration calculation from (a) the whole plant or product on a dry weight basis to (b) only the hemp-derived cannabidiol (CBD) measured within the plant or product. *Compare* Ark. Code Ann. § 2-15-503(5) (2022), *with* Ark. Code Ann. § 2-15-503(5) (as amended by Act 629 § 2); *see also* Act 629 § 6 (stating the concentration of delta-9 THC is as measured "*in* the hemp-derived [CBD]." (emphasis added)).

-4-

identified in Arkansas's Uniform Controlled Substances Act. § 2. Act 629 correspondingly expands the scope of illegal marijuana by adding to Arkansas's Uniform Controlled Substances Act, all THC products with "more than three-tenths of one percent (0.3%) of delta-9 [THC] *in* the hemp-derived [CBD]" and several other THC-like compounds which are illegal regardless of concentration. § 5 (emphasis added); *see also* § 6.

Act 629 has two more notable features. First, § 7 contains a savings clause related to how Arkansas's new, more restrictive, Uniform Controlled Substances Act interfaces with interstate commerce:

> (d) This section [of Arkansas's Uniform Controlled Substances Act relating to marijuana] does not prohibit the continuous transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths percent (0.3%) on a dry weight basis, produced in accordance with 7 U.S.C. § 1639o et seq.

(amending Ark. Code Ann. § 5-64-215 (concerning "additional substances" on the Arkansas Uniform Controlled Substances Act)).

Second, Act 629 includes a complete set of alternative secondary provisions which becomes effective only if the Arkansas Attorney General certifies that a court has enjoined the primary set of provisions.[3] Act 629 § 17. The text of this certification clause, as signed by Governor Sanders, says that §§ 2–5 are the primary provisions, and §§ 6–14 are the alternative provisions. During the codification process, the Arkansas Code Revision Commission decided § 17's original text was a scrivener's error. *See* Ark. Code Ann. § 1-2-303(d)(1)(E). So, the Revision Commission changed the text of § 17 and codified it to read that §§ 2–7 are the

---

[3]No certification has occurred.

-5-

primary provisions and §§ 8–16 are the alternative provisions. *See* A.C.R.C. Notes to Ark. Code Ann. § 5-64-101 (2024).

C.

Bio Gen sued Arkansas's Governor, Attorney General, prosecuting attorneys, and other officers in their official capacities, seeking to enjoin Act 629 because, they allege, it violates the Supremacy Clause, the Due Process Clause, the Takings Clause, and the Commerce Clause of the United States Constitution.

The district court denied Arkansas's motion to dismiss the Governor and Attorney General, finding that they were not entitled to sovereign immunity because they were sufficiently connected to the enforcement of Act 629 to make them proper defendants under *Ex parte Young*, 209 U.S. 123, 157 (1908). After considering the *Dataphase* factors, the court also entered an order preliminarily enjoining the state officials from enforcing Act 629. The court concluded that Bio Gen was likely to succeed on the merits of its Supremacy Clause claim because the 2018 Farm Bill likely preempted Act 629 and its due process claim because Act 629 was likely void for vagueness. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

II.

"Our review of a preliminary injunction is layered: we apply clear error to fact findings, *de novo* review to legal conclusions, and abuse of discretion to the ultimate decision to grant the injunction." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Dataphase*, 640 F.2d at 113. When seeking to enjoin the implementation of a state statute, the plaintiff must show "more than just a 'fair

-6-

chance' that it will succeed on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–32 (8th Cir. 2008) (en banc). It must show that it "is likely to prevail on the merits." *Id.* at 732 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).

A.

1.

We first consider whether the 2018 Farm Bill expressly preempts Act 629. "In determining the meaning of an express pre-emption provision, we apply no presumption against pre-emption, and we 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Watson v. Air Methods Corp.*, 870 F.3d 812, 817 (8th Cir. 2017) (cleaned up) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)).

The plain meaning of § 10114 shows Congress intended to forbid Arkansas from prohibiting the transportation or shipment through Arkansas of hemp legally produced in another state as allowed by the 2018 Farm Bill. The plain text of Act 629 would do exactly that. *See* §§ 2–6. So we must decide whether the savings clause prevents Act 629 from contravening Congress's express preemption.

i.

Bio Gen argues that the savings clause, as written and signed into law, is not in effect. It argues that the Revision Commission exceeded its authority by making "change[s] in the substance or meaning of any provision of the Arkansas Code or any act of the General Assembly." Ark. Code Ann. § 1-2-303(d)(1) (flush language). Bio Gen claims that by changing the cross references in § 17, the Revision Commission changed the substance of Act 629.

-7-

Arkansas responds that the Revision Commission validly exercised its authority to correct "manifest errors in refences to laws and other documents." Ark. Code Ann. § 1-2-303(d)(1)(D). Specifically, the Revision Commission's codification notes identify that House Amendment 1 to Act 629 added two new sections (§§ 4–5) shifting every subsequent section back two sections, which includes the savings clause shifting from § 5 to § 7. *See* S.B. 358, H.R. Amend. 1, 94th Gen. Assemb., Reg. Sess. (Ark. 2023). Arkansas maintains that the legislature always intended for the savings clause to be a part of the primary set of provisions, not the secondary provisions requiring certification by the Attorney General to be effective. It was only by a scrivener's error that House Amendment 1 did not update the cross reference in what eventually became § 17.[4]

Under Arkansas law, the text as codified controls unless the Revision Commission exceeded its authority—then the text as enacted controls. *Porter v. Ark. Dep't of Health & Hum. Servs.*, 286 S.W.3d 686, 691–92 (Ark. 2008). Because "there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the same issue before us." *Church v. Missouri*, 913 F.3d 736, 745 (8th Cir. 2019) (cleaned up).

We predict that the Arkansas Supreme Court would hold that the savings clause is in effect because the actions of the Revision Commission did not amount to a "change in the substance or meaning of any provision of the Arkansas Code or any act of the General Assembly." Ark. Code Ann. § 1-2-303(d)(1) (flush language). The action here is consistent with prior cross reference corrections. *See* Vincent C. Henderson, II, *The Creation of the Arkansas Code of 1987 Annotated*, 11 U. Ark. Little Rock L. J. 21, 36 n.67 (1988) (explaining a correction to a scrivener's error with cross references to another session law). And the Revision Commission's actions here are not like other times where the Arkansas Supreme Court held that revisions changed the substance or meaning. *See Ortho-McNeil-Janssen Pharms.*,

---

[4]Subsequent Senate Amendments to Act 629 updated some cross references, but did not update the references in § 17. *See* S.B. 358, S. Amend. 1, 94th Gen. Assemb., Reg. Sess. (Ark. 2023).

*Inc. v. State*, 432 S.W.3d 563, 573–74 (Ark. 2014) (rejecting the Revision Commission's splitting of a subsection "into two separate stand-alone provisions-subsections"); *Porter v. Ark. Dep't of Health & Hum. Servs.*, 286 S.W.3d 686, 691–92 (Ark. 2008) (rejecting the Revision Commission's removal of the word "not"); *Harrell v. State*, 2012 Ark. 421, 421 (2012) (switching the order of interjectory clauses).

Bio Gen's argument would make much of the Revision Commission's corrective authority surplusage. Underlying Bio Gen's argument is that the "substance or meaning" is the facial meaning of the text of an act. This argument would subsume the Revision Commission's authority to correct any of the mistakes it is otherwise authorized to correct under Ark. Code Ann. § 1-2-303(d)(1). Arkansas law permits the Revision Commission to correct "manifest errors in internal reference numbers" and we believe that the Arkansas Supreme Court would find that's what the Commission did here. Ark. Code Ann. § 1-2-303(d)(1)(E); *see also Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1267–69 (8th Cir. 1997) (analyzing a novel question of state law using the state Supreme Court's rules of construction).

ii.

Having decided that the savings clause is in effect, we next consider whether it prevents Act 629 from contravening Congress's express preemption. Act 629 carves out the "continuous transportation through Arkansas" of hemp from Arkansas's Controlled Substances Act. § 7. The district court found the term "continuous transportation" ambiguous because it is unclear if Act 629 would "subject" an out of state teamster "to criminal liability when stopping for gas or staying overnight before reaching the final destination outside of Arkansas." So, it concluded "Arkansas law criminalizes hemp-derived products without an effective exemption for interstate commerce."

-9-

But "continuous transportation" as used in § 7 is well-defined in federal constitutional case law. The United States Supreme Court has said that a "temporary pause" does not remove a shipment from continuous interstate commerce: as long as there is a "practical continuity of movement" the goods remain in the stream of interstate transportation. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943). Similarly, we have said that a shipment with a "temporary stopover" is continuous. *Century Indem. Co. v. Carlson*, 133 F.3d 591, 599 (8th Cir. 1998). And we need not decide the outer edges of "continuous transportation" in this facial challenge to Act 629.

We predict the Arkansas Supreme Court would adopt our understanding of the phrase "continuous transportation." Any more of a restrictive understanding would mean that Act 629 would violate the 2018 Farm Bill's Express Preemption Clause. So, we predict the Arkansas Supreme Court would interpret "continuous transportation" consistent with our federal constitutional case law to avoid interpreting Act 629 in a way that would contravene the scope of Congress's express preemption. *See Booker v. State*, 984 S.W.2d 16, 21 (Ark. 1998) ("The first and most important rule of statutory interpretation is that a statute is presumed constitutional and all doubts are resolved in favor of constitutionality.").

Because § 7 is not ambiguous, it saves Act 629 and Bio Gen cannot show that it is likely to succeed on its claim that § 10114 of the 2018 Farm Bill expressly preempts Act 629.

2.

Bio Gen also argues that Act 629 conflicts with the 2018 Farm Bill's purpose of legalizing hemp production. A state statute is conflict preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *WinRed, Inc. v. Ellison*, 59 F.4th 934, 944 (8th Cir. 2023) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). To decide if the state statute presents an obstacle, we must first determine Congress's intent. *E.g., R.J. Reynolds*

-10-

*Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1178 (8th Cir. 2021) (per curiam). If Congress's intent cannot support Bio Gen's position, we don't continue the analysis. *See id.* (terminating the analysis when the court determined the challenger's interpretation of Congress's intent was wrong). To decipher Congress's intent, we "consider the statute itself and any regulations enacted pursuant to the statute's authority." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, 621 F.3d 781, 792 (8th Cir. 2010) (citation omitted). And because this case "implicates the States' traditional use of [their] police power, we must assume that the [2018 Farm Bill] does not preempt that authority unless it was the 'clear and manifest purpose of Congress.'" *R.J. Reynolds Tobacco Co.*, 60 F.4th at 1178 (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008)).

The text of the 2018 Farm Bill shows only that Congress wanted to facilitate state legalization of hemp, if a state wants to. Congress allows states to legalize hemp by removing the biggest hurdle—federal criminalization. 2018 Farm Bill § 12619. Congress then created a system for states to apply for and receive primary regulatory authority over in-state hemp production. *See* 7 U.S.C. §§ 1639p, 1639q. Congress requires only that states maintain certain practices and procedures and certify that they are able to carry out those practices and procedures. *See* § 1639p. And to ensure other states do not become a hurdle to an in-state hemp industry (if the state chooses to legalize hemp), the 2018 Farm Bill prevents other states from interfering with the interstate commerce of hemp. *See* 2018 Farm Bill § 10114(b).

The text does not support Bio Gen's claim that Congress intended to "federally protect[] hemp" and coercively mandate nationwide legality. States may obtain primary regulatory authority over hemp *production*. And with that primary regulatory authority, states may "regulate[] the production of hemp" in any manner "more stringent than [the 2018 Farm Bill]." 7 U.S.C. § 1639p(a)(3)(A). We would expect a different statute if Congress intended to mandate nationwide legalization—for example an express preemption clause explicitly displacing state authority. *Cf.* 29 U.S.C. § 1144(a) (declaring federal ERISA law "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan").

-11-

Instead, just because states may legalize hemp under the 2018 Farm Bill does not mean they must.

Nor does Congress facilitating state legalization of hemp mean, as Bio Gen argues, that the states must use the federal definition of hemp. Bio Gen concedes that the regulatory result of Act 629 is permissible but argues that the means of achieving it by changing the definition of hemp is not. There is no support for this argument in the text or structure of the 2018 Farm Bill. *See Aurora Dairy Corp.*, 621 F.3d at 792. This argument also fails under its own terms. Act 629 does use the same definition—where relevant. It uses the federal definition of hemp wherever Act 629's effects might conflict with 2018 Farm Bill's effects. *See, e.g.*, Act 629 § 7 (spelling out the federal definition of hemp for the savings clause instead of incorporating Act 629 § 2's definition).

Because the text and structure do not support Bio Gen's conception of Congress's intent for the 2018 Farm Bill, Bio Gen's arguments for conflict preemption are unsupported, and we do not continue our analysis.

B.

We also conclude Act 629 is not unconstitutionally vague and the district court abused its discretion when it issued a preliminary injunction based on the statute being void for vagueness. The Government violates the Due Process clause when it takes "away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Fair notice is lacking where the statute "forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir. 1997) (cleaned up) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

-12-

The district court found several terms in the criminal provisions of Act 629 unconstitutionally vague, including, as relevant here: "continuous transportation," "synthetic substance," and "psychoactive substances." The term "continuous transportation" is not ambiguous, let alone vague, as discussed above.

Neither are the terms "synthetic substance" or "psychoactive substances." Synthetic substance is defined by the exhaustive list within Ark. Code Ann. § 5-64-215(a)(5) (as amended by Act 629 § 6), which also gives sufficient meaning to the term "psychoactive substances." *See, e.g.*, *Cir. City Stores v. Adams*, 532 U.S. 105, 138 (2001) (Souter, J., dissenting) ("Like those other courts, this Court sees the sequence as an occasion to apply the interpretive maxim of *ejusdem generis*, that is, when specific terms are followed by a general one, the latter is meant to cover only examples of the same sort as the preceding specifics."). Because the statute gives sufficient notice of the proscribed activity and does not invite arbitrary enforcement, it is not unconstitutionally vague. *United States v. Birbragher*, 603 F.3d 478, 488–89 (8th Cir. 2010).

### III.

Finally, we conclude that the Governor and the Attorney General are entitled to sovereign immunity because neither has a sufficient connection to the enforcement of Act 629 to fall within the *Ex parte Young* exception to sovereign immunity.

We review questions of sovereign immunity *de novo*. *Church*, 913 F.3d at 742. States generally enjoy sovereign immunity in federal courts from suits brought by citizens of other states and their own citizens. *See* U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1 (1890). Claims against state officials acting in their official capacities are considered claims against the State and therefore subject to sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *Ex parte Young* permits some actions for prospective injunctive relief against state officials acting in their official capacities, so long as the official has "some connection with

-13-

the enforcement" of the challenged law.  *Ex parte Young*, 209 U.S. at 157–59; *Monroe v. Ark. St. Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).

For a sufficient connection to the enforcement of the challenged law, an officer must have "*methods* of enforcement" for the challenged law at its disposal. *Church*, 913 F.3d at 749.  The method of enforcement can arise out of "the general law" or be "specially created by the act itself."  *Ex parte Young*, 209 U.S. at 157.  It need not be a primary authority to enforce the challenged law.  *E.g.*, *Mo. Prot. & Advoc. Servs. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007).  But plaintiffs must identify a method of enforcement that the officer has the authority to wield.  *See, e.g.*, *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (enjoining the attorney general would not prevent the complained vehicle inspections by highway patrol); *Digit. Recognition Network, Inc.*, 803 F.3d 952, 960–64 (8th Cir. 2015) (analyzing *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859 (8th Cir. 2006)) (the Nebraska governor "may direct the attorney general to file suit"); *Church*, 913 F.3d at 749–51 (appointing members to the Missouri State Public Defenders commission is an insufficient connection to the enforcement mechanism relating alleged violations of the Sixth Amendment right to adequate representation).

Turning first to the Governor, the district court held that she was a proper *Ex parte Young* defendant because she "has a responsibility as chief executive for the enforcement of the criminal laws of the state, which are implicated here."  But this general take care responsibility is not a sufficiently specific method of enforcement. Only local prosecuting attorneys can institute criminal suits under Act 629.  *See* Ark. Const. amend. XXI, §§ 1, 20.  Bio Gen has not identified the specific actions the Governor could take that link her to the criminal enforcement of Act 629, such as the ability to direct subordinates to institute suit.  *See Citizens for Equal Prot.*, 455 F.3d at 864, *abrogated on other grounds*, *Obergefell v. Hodges*, 576 U.S. 677 (2015).  So this "general executive responsibility is an insufficient connection to the enforcement of [this] statute" and cannot support an *Ex parte Young* claim.  *Calzone*, 866 F.3d at 870 (citing *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)).

-14-

Bio Gen argues that the Governor's connection to the enforcement of Act 629 arises from her "control and direction" over the three administrative agencies responsible for permitting and licensing under the statutory scheme that Act 629 amends. But Bio Gen has not identified the specific actions the Governor could take that link her to the administrative enforcement of Act 629. Bio Gen misunderstands the phrase "the general law" in *Ex parte Young*. 209 U.S. at 157. In our modern case law, it does not mean general principles of law alone can provide a requisite connection to the enforcement of Act 629, but merely delineates *where* the enforcement mechanism that provides the connection can be located—either within the complained act or elsewhere in the law. *See id.* ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."); *see also Church*, 913 F.3d at 749 (stating that prior "decisions mean that a governor's general-enforcement authority is 'some connection' if that authority gives the governor *methods* of enforcement").

Bio Gen also argues that the Governor is sufficiently connected to the enforcement of Act 629 because she is required by § 10 to assist one of the agencies—Arkansas Tobacco Control (ATC)—in its enforcement efforts. Standing alone, the requirement to assist ATC in the exercise of ATC's enforcement mechanism is not an enforcement mechanism for the Governor. *See Church*, 913 F.3d at 749 (holding a similar statutory obligation was "insufficient"). The Governor's responsibility under Act 629 is inert until ATC sets its enforcement mechanism in motion. So, it is not the Governor's enforcement mechanism but ATC's enforcement mechanism. *See Calzone*, 866 F.3d at 870 (while the attorney general can aid prosecutors in their duties "Calzone has pointed to no authority, however, suggesting that the attorney general has any role in *causing*" the complained injury (emphasis added)).

Next, the district court held the Attorney General was a proper *Ex parte Young* defendant because he "has a specific role in Act 629," citing his role under Act 629

-15-

§ 17 whereby certain provisions become effective only when the attorney general certifies to the legislature that other provisions of Act 629 are being enjoined. This certification is a ministerial task relating to the implementation of Act 629—not an act enforcing Act 629 against noncompliant persons. *See Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016) ("Selection of the execution team constitutes implementation of the statute in an administrative or ministerial sense and is not analogous to enforcing the statute's non-disclosure provision through a civil or criminal prosecution."); *see also Church*, 913 F.3d at 750. Because the certification role is not an enforcement mechanism, the Attorney General does not fall within the *Ex parte Young* exception either.

## IV.

The preliminary injunction is vacated, the order denying the motion to dismiss the Governor and Attorney General is reversed, and the case is remanded for proceedings consistent with this opinion.

_____